IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 10x GENOMICS, INC. and PROGNOSYS BIOSCIENCES INC, | |
| *Plaintiff,* | Civil Action No. _____ |
| *v.* | **DEMAND FOR JURY TRIAL** |
| CURIO BIOSCIENCE, INC., | |
| *Defendant.* | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs 10x Genomics, Inc. ("10x") and Prognosys Biosciences, Inc. ("Prognosys") (collectively "Plaintiffs") allege in their Complaint for patent infringement against Defendant Curio Bioscience, Inc. ("Curio") as follows:

## NATURE OF THE ACTION

1.     This is an action for infringement of United States Patent Nos. 10,480,022; 10,662,468; 11,001,879; 11,549,138; and 11,761,030[1] (the "Asserted Patents") under the Patent Act, 35 U.S.C. §§ 1 *et seq*., including 35 U.S.C. § 271.

## THE PARTIES

2.     10x Genomics, Inc. is a Delaware corporation with its principal place of business in Pleasanton, California. 10x is the exclusive licensee of the Asserted Patents.

3.     Prognosys is a Delaware corporation with its principal place of business in San Diego, CA. Prognosys is the owner and licensor of the Asserted Patents.

---

[1] Exhibits A-E.

4.      Curio Bioscience, Inc. is a Delaware corporation with its principal place of business in Palo Alto, California.

## JURISDICTION AND VENUE

5.      This civil action arises under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338.

6.      This Court has personal jurisdiction over Curio, and venue is proper in this district pursuant to 28 U.S.C. § 1400(b), because Curio is a Delaware corporation and thus resides in this district.

## BACKGROUND

**A.      10x Pioneers Its Groundbreaking Spatial Transcriptomics Technology**

7.      10x is a pioneering innovator of genomics and sequencing technologies founded in 2012 in Pleasanton, California by Drs. Serge Saxonov and Benjamin Hindson. 10x is a worldwide leader in genomics, the comprehensive study of biological systems at a molecular and cellular level. Since its founding, 10x has focused on building new technologies to enable breakthrough discoveries and accelerate the understanding of biology. To date, 10x has invested hundreds of thousands of hours and over $1.5 billion in research and development to invent, design, develop, market, and sell its proprietary line of products for understanding biology at unprecedented resolution and scale.

8.      10x's award-winning Chromium platform has been essential to enabling single cell genomics—the study of gene activity on a cell-by-cell basis. The genetic code contained in a person's DNA inside the nucleus of each cell is transcribed into a nucleic acid called messenger RNA (mRNA), which is then in turn translated into the proteins that implement the cell's biological functions. The full range of mRNA expressed in a cell is known as its

"transcriptome." A cell's transcriptome can provide insight into how it is differentiated from other cells, and whether it may be cancerous or otherwise disordered. The study of cellular transcriptomes is known as transcriptomics. In contrast to prior techniques, in which genetic material from biological tissue was blended and analyzed in bulk, cell-by-cell analysis preserves the heterogeneity of cells and their transcriptomes within larger biological samples. For example, a cancer tumor can consist of a varied population of cells, some healthy and some cancerous, and the cancerous cells themselves may consist of genetically distinct subpopulations that are susceptible to different therapeutics. Prior techniques for sequencing the genomic make-up of a sample did not preserve this type of complexity, but it can be fully captured using 10x's single-cell analysis solutions such as the Chromium platform. The Chromium X, which launched in July 2021, enables the expansion of single-cell studies to experiments on the scale of a million cells and was named a Top 10 Innovation in 2021 by *The Scientist* magazine.

9.     10x is also a pioneer in the field of spatial transcriptomics, which builds upon single-cell genomics by facilitating the study of gene activity in cells within their spatial context. Spatial analysis enables researchers and clinicians to not only study the varied genetic make-up of the various cells in a sample but also map where in the tissue the different cells are found. The relationship between cells and their relative locations within tissue provides insights instrumental to helping scientists gain a better understanding of biological processes and disease. For instance, in the context of cancer tumors, understanding the arrangement of cells within the tumor allows researchers to interrogate how various cellular structures contribute to tumor development, progression, and metastasis.[2]

---

[2] R. Arora et al., *Spatial transcriptomics reveals distinct and conserved tumor core and edge architectures that predict survival and targeted therapy response*, 14 NAT. COMMS. 5029 (2023).

10.     In 2018, 10x acquired Spatial Transcriptomics AB, the first company to commercialize a product that captures the transcriptome of a tissue section. A transcriptome is a snapshot of all the RNA transcripts in a cell and provides researchers a broad account of active cellular activity. 10x built upon Spatial Transcriptomics AB's technology and, in 2019, launched its award-winning Visium Platform with the Visium Spatial Gene Expression Solution. 10x, through its Visium Platform, catalyzed the field of spatial analysis by providing the first commercial product to enable true spatial whole transcriptome single-cell analysis. In 2020, *Nature Methods* named spatially resolved transcriptomics its "Method of the Year" and featured 10x's spatial technology on the cover. *See* https://www.nature.com/articles/s41592-020-01033-y. The 10x Visium Spatial Gene Expression product was named among *The Scientist* magazine's Top 10 Innovations in 2020.

11.     The 10x Visium Spatial Gene Expression Solution preserves spatial information through the use of spatially barcoded capture probes at known locations. Once captured by those capture probes, the mRNA undergoes reverse transcription, library construction, and sequencing. *See https://pages.10xgenomics.com/rs/446-PBO-704/images/10x_LIT059_ProductSheet_VisiumSpatialGeneExpression_Letter_digital.pdf.*

12.     The sequencing data—which includes the spatially barcoded capture probe sequences—is analyzed using 10x's Space Ranger and Loupe Browser. The known locations of the spatial barcode sequences are used to create a spatial transcriptomic map, providing a holistic and visual understanding of gene expression in the tissue. *See id.*



13.    In the eight years since its first product launch in 2015, 10x's expanding suite of products has fueled a revolution in genomics, winning wide acclaim and commercial success. 10x has achieved an installed base of more than 4,600 instruments around the world, including at all the top 100 global research institutions and all the top 20 global biopharmaceutical companies. Annual sales of 10x products exceeded $516 million in 2022. Over 6,500 scientific articles have been published based on data generated from 10x products, including hundreds of articles in top journals *Cell*, *Science*, and *Nature*. This scientific work illustrates the use of 10x products to discover, for example: molecular mechanisms that lead to the brain, breast, and lung cancers; how the immune system reacts to COVID-19 infection; and a new type of lung cell that causes cystic fibrosis. The paradigm-changing nature of 10x's products has led to numerous accolades, including these products being named to *The Scientist* magazine's Top 10 Innovations List in 2015, 2017, 2018, 2019, 2020, and 2021.

14.    To enable the Visium platform offerings, 10x either owns or licenses foundational intellectual property for performing spatial transcriptomics, developed by the scientists who pioneered the techniques underpinning it. 10x is the exclusive licensee of the "Spatially Encoded Biological Assays" patent family owned by Prognosys Biosciences, Inc. and invented by its former

CEO and CSO Mark S. Chee, Ph.D. Dr. Chee is a celebrated leader in the genomics and proteomics field with more than 100 U.S. patents. He was the co-founder and former Senior Director of Advanced Research at Illumina, a global leader in sequencing and array-based technologies. He was then the Director of Genetics Research at Affymetrix and most recently is the co-founder of a protein sequencing-focused start up, Encodia.

15.     In late 2022, 10x became aware of Curio's infringing activities. On November 17, 2022, 10x sent a letter advising Curio of its patents in the field and seeking to ensure that its activities would not infringe on 10x's patent rights. On June 14, 2023, after more details of Curio's planned offering emerged, 10x sent a second letter to Curio regarding its bead-based product and again asking Curio to ensure that its activities would not infringe. In that letter, 10x specifically identified U.S. Patent Nos. 10,662,468 and 11,001,879 and further identified exemplary claims from each patent as relevant to 10x's understanding of Curio's activities. 10x received no response to either letter.

16.     On November 17, 2023, following a week-long trial, the jury in *10x Genomics, Inc. and Prognosys Biosciences, Inc. v. NanoString Technologies, Inc.*, Case No. 21-cv-653-MFK (D. Del.) ("NanoString Case") found: (1) NanoString Technologies, Inc. directly and indirectly willfully infringes U.S. Patent No. 10,472,669; U.S. Patent No. 10,961,566; U.S. Patent No. 10,983,113; U.S. Patent No. 10,996,219; U.S. Patent No. 11,001,878; U.S. Patent No. 11,008,607, and U.S. Patent No. 11,293,917 (the "Prognosys Related Patents") through its GeoMx platform and workflows; (2) the Prognosys Related Patents are valid; and (3) Plaintiffs are owed $25,611,347.20 in lost profits and $6,061,306.62 in reasonable royalties for NanoString's infringement of the Prognosys Related Patents through October 16, 2023.

17.     On information and belief, Curio has been aware of the public reporting on the jury's findings in the NanoString Case, including for example, through reporting in outlets such as GenomeWeb.

**B.     The Infringing Curio Kits and Workflow**

18.     In February 2023, more than three years after 10x launched its Visium product line, Curio announced the launch of its Curio Seeker Kit. Curio has positioned the Curio Seeker Kit to directly compete with 10x's Visium product line.

19.     According to Curio's website, the Curio Seeker Kit and workflow are designed to preserve the spatial information of the transcriptome of a tissue sample of interest. Using provided tiles and primer kits, the user captures mRNA on spatially indexed, DNA-barcoded beads and synthesizes complementary DNA (cDNA) through reverse transcription. The sample then undergoes library preparation and sequencing. The sequencing data—which includes the spatially indexed DNA barcodes—is then used to infer the location of mRNA molecules, and Curio's bioinformatics pipeline is used to create a transcriptomic map. *See https://curiobioscience.com/product/*



20.     As of the date of the filing of this Complaint, Curio offers the Curio Seeker Kit with both 3mm x 3mm and 10mm x 10mm bead arrays. *See id.* The Curio Seeker 3x3 kit includes a 3x3 Seeker Kit Bundle (8 tiles) and the Curio Seeker Dual Indexing Primer Kit V2. The Curio Seeker

10x10 kit includes a 10x10 Seeker Kit Bundle (4 tiles), a Curio Seeker Dual Indexing Primer Kit V2, and a Thermal Cycler Adapter. Both kits come with the Curio Seeker bioinformatics pipeline included. *See id.*

21.     Through webinars and other materials provided to actual and prospective customers, Curio instructs and encourages its users to use the Curio Seeker Kit as described above. *See, e.g.*, Curio Bioscience, *Introducing Curio Seeker: High-resolution spatial transcriptomics*, YOUTUBE (March 1, 2023); Curio Bioscience, *Implementation of Curio Seeker in a core facility setting*, YOUTUBE (March 1, 2023); *Product*, Curio Bioscience website, *https://curiobioscience.com/product/*; Webinar by Cristin Douglas, Senior Account Executive, Curio Bioscience, Houston Spatial Transcriptomics Webinar (Mar. 21, 2023); Curio Bioscience, *Single-cell RNA seq data analysis pipeline technology overview*, YOUTUBE (March 1, 2023).

22.     Curio has been using, making, marketing, and selling its Curio Seeker Kit and associated accessories and reagents since at least February 2023.

## THE PATENTS-IN-SUIT

23.     Curio has and continues to directly infringe, contributorily infringe, and/or induce the infringement of:

a.     U.S. Patent No. 10,480,022, entitled "Spatially encoded biological assays," Exhibit A (the "022 Patent");

b.     U.S. Patent No. 10,662,468, entitled "Spatially encoded biological assays," Exhibit B (the "468 Patent");

c.     U.S. Patent No. 11,001,879, entitled "Spatially encoded biological assays," Exhibit C (the "879 Patent");

d.     U.S. Patent No. 11,549,138, entitled "Spatially encoded biological assays," Exhibit D (the "138 Patent"); and

e.   U.S. Patent No. 11,761,030, entitled "Spatially encoded biological assays," Exhibit E (the "030 Patent").

24.   The Accused Instrumentalities are all products, components, and services that are made, used, performed, offered for sale, sold, and/or imported into the United States by or on behalf of Curio in connection with the Curio Seeker Kit. The Accused Instrumentalities include, for example and without limitation, the Curio Seeker 3x3 kit and Curio Seeker 10x10 kit, Curio Seeker bioinformatics pipeline, and all products, components, accessories, reagents, and services provided by Curio in connection with use of the Curio Seeker Kits.

## FIRST CAUSE OF ACTION

## (CURIO'S INFRINGEMENT OF U.S. PATENT NO. 10,480,022)

25.   10x incorporates each of the preceding paragraphs as if fully set forth herein.

26.   The 022 Patent issued on November 19, 2019, to Prognosys Biosciences, Inc.

27.   Prognosys is the sole legal owner of the 022 Patent. A true and correct copy of the assignment abstract and record of the 022 Patent is attached as Exhibit F. 10x is the exclusive licensee of the 022 Patent, including *inter alia* the right to sue Curio for its acts of infringement and to recover damages therefrom.

28.   On information and belief, Curio has been aware of the 022 Patent and its claims since at least June 14, 2023, if not earlier.

29.   Curio has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the 022 Patent under 35 U.S.C. § 271(a), by using, testing, and demonstrating the Accused Instrumentalities. Exhibit K provides an exemplary infringement claim chart for one asserted claim and representative Accused Instrumentalities. Curio has committed and continues to commit these acts of infringement without license or authorization.

30.     Curio has actively induced and continues to actively induce infringement, literally or under the doctrine of equivalents, of one or more claims of the 022 Patent under 35 U.S.C. § 271(b) by making and selling the Accused Instrumentalities in the United States and intentionally instructing or otherwise encouraging others, including Curio's customers and end users such as scientists working in laboratories that purchase the Accused Instrumentalities, to use the Accused Instrumentalities in the United States in a manner that infringes one or more claims of the 022 Patent. On information and belief, Curio provided this instruction and encouragement to its actual and prospective customers and end users with the knowledge and intent that doing so would result in the infringement of one or more method claims of the 022 Patent by those customers and end users. One or more of Curio's customers and end users of the Accused Instrumentalities have directly infringed and continue to directly infringe the 022 Patent by using the Accused Instrumentalities in accordance with Curio instructions and encouragement, as shown in the claim chart attached as Exhibit K. Curio has committed and continues to commit these acts of infringement without license or authorization.

31.     Curio has contributed and continues to contribute to the infringement of one or more claims under the 022 Patent under 35 U.S.C. § 271(c) by selling and/or offering to sell the Accused Instrumentalities within the United States for use by its customers and end users knowing that the Accused Instrumentalities are especially made or especially adapted for use in a manner that infringes one or more claims of the 022 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use. As a result of Curio's selling and/or offering for sale of the Accused Instrumentalities, other entities, on information and belief, use these products for their intended purpose and according to Curio's instructions with the result that such entities, such as Curio's customers and users of the Accused Instrumentalities, directly infringe

the asserted claims of the 022 Patent, literally or under the doctrine of equivalents, as shown in the claim chart attached as Exhibit K. Curio has committed and continues to commit these acts of infringement without license or authorization.

32.     The direct and indirect infringement of the 022 Patent by Curio has directly and proximately caused damage to Plaintiffs. This infringement entitles Plaintiffs to monetary relief in an amount adequate to compensate for the infringement and which, by law, cannot be less than a reasonable royalty, together with interest and costs fixed by this Court pursuant to 35 U.S.C. § 284.

33.     The infringement of the 022 Patent by Curio is willful and deliberate. At least as of June 14, 2023, if not earlier, Curio knew or should have known that its actions did and would constitute an unjustifiably high risk of infringement of the 022 Patent. Such conduct constitutes, at minimum, willful infringement of the 022 Patent, justifying an award of treble damages pursuant to 35 U.S.C. § 284.

34.     Unless Curio is enjoined from infringing the 022 Patent, 10x will suffer irreparable injury for which damages are an inadequate remedy.

## SECOND CAUSE OF ACTION

### (CURIO'S INFRINGEMENT OF U.S. PATENT NO. 10,662,468)

35.     10x incorporates each of the preceding paragraphs as if fully set forth herein.

36.     The 468 Patent issued on May 26, 2020, to Prognosys Biosciences, Inc.

37.     Prognosys is the sole legal owner of the 468 Patent. A true and correct copy of the assignment abstract and record of the 468 Patent is attached as Exhibit G. 10x is the exclusive licensee of the 468 Patent, including *inter alia* the right to sue Curio for its acts of infringement and to recover damages therefrom.

38.     Curio has been on notice of the 468 Patent and its claims since at least on or around June 14, 2023.

39.     Curio has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the 468 Patent under 35 U.S.C. § 271(a), by using testing, and demonstrating the Accused Instrumentalities. Exhibit L provides an exemplary infringement claim chart for one asserted claim and representative Accused Instrumentalities. Curio has committed and continues to commit these acts of infringement without license or authorization.

40.     Curio has actively induced and continues to actively induce infringement, literally or under the doctrine of equivalents, of one or more claims of the 468 Patent under 35 U.S.C. § 271(b) by making and selling the Accused Instrumentalities in the United States and intentionally instructing or otherwise encouraging others, including Curio's customers and end users such as scientists working in laboratories that purchase the Accused Instrumentalities, to use the Accused Instrumentalities in the United States in a manner that infringes one or more claims of the 468 Patent. On information and belief, Curio provided this instruction and encouragement to its actual and prospective customers and end users with the knowledge and intent that doing so would result in the infringement of one or more method claims of the 468 Patent by those customers and end users. One or more of Curio's customers and end users of the Accused Instrumentalities have directly infringed and continue to directly infringe the 468 Patent by using the Accused Instrumentalities in accordance with Curio instructions and encouragement, as shown in the claim chart attached as Exhibit L. Curio has committed and continues to commit these acts of infringement without license or authorization.

41.     Curio has contributed and continues to contribute to the infringement of one or more claims under the 468 Patent under 35 U.S.C. § 271(c) by selling and/or offering to sell the Accused Instrumentalities within the United States for use by its customers and end users knowing

that the Accused Instrumentalities are especially made or especially adapted for use in a manner that infringes one or more claims of the 468 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use. As a result of Curio's selling and/or offering for sale of the Accused Instrumentalities, other entities, on information and belief, use these products for their intended purpose and according to Curio's instructions with the result that such entities, such as Curio's customers and users of the Accused Instrumentalities, directly infringe the asserted claims of the 468 Patent, literally or under the doctrine of equivalents, as shown in the claim chart attached as Exhibit L. Curio has committed and continues to commit these acts of infringement without license or authorization.

42.     The direct and indirect infringement of the 468 Patent by Curio has directly and proximally caused damage to Plaintiffs. This infringement entitles Plaintiffs to monetary relief in an amount adequate to compensate for the infringement and which, by law, cannot be less than a reasonable royalty, together with interest and costs fixed by this Court pursuant to 35 U.S.C. § 284.

43.     The infringement of the 468 Patent by Curio is willful and deliberate. At least as of June 14, 2023, if not earlier, Curio knew or should have known that its actions did and would constitute an unjustifiably high risk of infringement of the 468 Patent. Such conduct constitutes, at minimum, willful infringement of the 468 Patent, justifying an award of treble damages pursuant to 35 U.S.C. § 284.

44.     Unless Curio is enjoined from infringing the 468 Patent, 10x will suffer irreparable injury for which damages are an inadequate remedy.

### THIRD CAUSE OF ACTION

### (CURIO'S INFRINGEMENT OF U.S. PATENT NO. 11,001,879)

45.     10x incorporates each of the preceding paragraphs as if fully set forth herein.

46.     The 879 Patent issued on May 11, 2021, to Prognosys Biosciences, Inc.

47.     Prognosys is the sole legal owner of the 879 Patent. A true and correct copy of the assignment abstract and record of the 879 Patent is attached as Exhibit H. 10x is the exclusive licensee of the 879 Patent, including *inter alia* the right to sue Curio for its acts of infringement and to recover damages therefrom.

48.     Curio has been on notice of the 879 Patent and its claims since at least on or around June 14, 2023.

49.     Curio has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the 879 Patent under 35 U.S.C. § 271(a), by using, testing, and demonstrating, and/or importing into the United States the Accused Instrumentalities. Exhibit M provides an exemplary infringement claim chart for one asserted claim and representative Accused Instrumentalities. Curio has committed and continues to commit these acts of infringement without license or authorization.

50.     Curio has actively induced and continues to actively induce infringement, literally or under the doctrine of equivalents, of one or more claims of the 879 Patent under 35 U.S.C. § 271(b) by making and selling the Accused Instrumentalities in the United States and intentionally instructing or otherwise encouraging others, including Curio's customers and end users such as scientists working in laboratories that purchase the Accused Instrumentalities, to use the Accused Instrumentalities in the United States in a manner that infringes one or more claims of the 879 Patent. On information and belief, Curio provided this instruction and encouragement to its actual and prospective customers and end users with the knowledge and intent that doing so would result in the infringement of one or more method claims of the 879 Patent by those customers and end users. One or more of Curio's customers and end users of the Accused Instrumentalities have directly infringed and continue to directly infringe the 879 Patent by using the Accused

14

Instrumentalities in accordance with Curio instructions and encouragement, as shown in the claim chart attached as Exhibit M. Curio has committed and continues to commit these acts of infringement without license or authorization.

51.     Curio has contributed and continues to contribute to the infringement of one or more claims under the 879 Patent under 35 U.S.C. § 271(c) by selling and/or offering to sell the Accused Instrumentalities within the United States for use by its customers and end users knowing that the Accused Instrumentalities are especially made or especially adapted for use in a manner that infringes one or more claims of the 879 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use. As a result of Curio's selling and/or offering for sale of the Accused Instrumentalities, other entities, on information and belief, use these products for their intended purpose and according to Curio's instructions with the result that such entities, such as Curio's customers and users of the Accused Instrumentalities, directly infringe the asserted claims of the 879 Patent, literally or under the doctrine of equivalents, as shown in the claim chart attached as Exhibit M. Curio has committed and continues to commit these acts of infringement without license or authorization.

52.     The direct and indirect infringement of the 879 Patent by Curio has directly and proximally caused damage to Plaintiffs. This infringement entitles Plaintiffs to monetary relief in an amount adequate to compensate for the infringement and which, by law, cannot be less than a reasonable royalty, together with interest and costs fixed by this Court pursuant to 35 U.S.C. § 284.

53.     The infringement of the 879 Patent by Curio is willful and deliberate. At least as of June 14, 2023, if not earlier, Curio knew or should have known that its actions did and would constitute an unjustifiably high risk of infringement of the 879 Patent. Such conduct constitutes,

at minimum, willful infringement of the 879 Patent, justifying an award of treble damages pursuant to 35 U.S.C. § 284.

54.     Unless Curio is enjoined from infringing the 879 Patent, 10x will suffer irreparable injury for which damages are an inadequate remedy.

<strong>FOURTH CAUSE OF ACTION</strong>

<strong>(CURIO'S INFRINGEMENT OF U.S. PATENT NO. 11,549,138)</strong>

55.     10x incorporates each of the preceding paragraphs as if fully set forth herein.

56.     The 138 Patent issued on January 10, 2023, to Prognosys Biosciences, Inc.

57.     Prognosys is the sole legal owner of the 138 Patent. A true and correct copy of the assignment abstract and record of the 138 Patent is attached as Exhibit I. 10x is the exclusive licensee of the 138 Patent, including *inter alia* the right to sue Curio for its acts of infringement and to recover damages therefrom.

58.     On information and belief, Curio has been aware of the 138 Patent and its claims since at least June 14, 2023, if not earlier.

59.     Curio has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the 138 Patent under 35 U.S.C. § 271(a), by using, testing, and demonstrating, and/or importing into the United States the Accused Instrumentalities. Exhibit N provides an exemplary infringement claim chart for one asserted claim and representative Accused Instrumentalities. Curio has committed and continues to commit these acts of infringement without license or authorization.

60.     Curio has actively induced and continues to actively induce infringement, literally or under the doctrine of equivalents, of one or more claims of the 138 Patent under 35 U.S.C. § 271(b) by making and selling the Accused Instrumentalities in the United States and intentionally instructing or otherwise encouraging others, including Curio's customers and end users such as

scientists working in laboratories that purchase the Accused Instrumentalities, to use the Accused Instrumentalities in the United States in a manner that infringes one or more claims of the 138 Patent. On information and belief, Curio provided this instruction and encouragement to its actual and prospective customers and end users with the knowledge and intent that doing so would result in the infringement of one or more method claims of the 138 Patent by those customers and end users. One or more of Curio's customers and end users of the Accused Instrumentalities have directly infringed and continue to directly infringe the 138 Patent by using the Accused Instrumentalities in accordance with Curio instructions and encouragement, as shown in the claim chart attached as Exhibit N. Curio has committed and continues to commit these acts of infringement without license or authorization.

61.     Curio has contributed and continues to contribute to the infringement of one or more claims under the 138 Patent under 35 U.S.C. § 271(c) by selling and/or offering to sell the Accused Instrumentalities within the United States for use by its customers and end users knowing that the Accused Instrumentalities are especially made or especially adapted for use in a manner that infringes one or more claims of the 138 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use. As a result of Curio's selling and/or offering for sale of the Accused Instrumentalities, other entities, on information and belief, use these products for their intended purpose and according to Curio's instructions with the result that such entities, such as Curio's customers and users of the Accused Instrumentalities, directly infringe the asserted claims of the 138 Patent, literally or under the doctrine of equivalents, as shown in the claim chart attached as Exhibit N. Curio has committed and continues to commit these acts of infringement without license or authorization.

62.     The direct and indirect infringement of the 138 Patent by Curio has directly and proximally caused damage to Plaintiffs. This infringement entitles Plaintiffs to monetary relief in an amount adequate to compensate for the infringement and which, by law, cannot be less than a reasonable royalty, together with interest and costs fixed by this Court pursuant to 35 U.S.C. § 284.

63.     The infringement of the 138 Patent by Curio is willful and deliberate. At least as of June 14, 2023, if not earlier, Curio knew or should have known that its actions did and would constitute an unjustifiably high risk of infringement of the 138 Patent. Such conduct constitutes, at minimum, willful infringement of the 138 Patent, justifying an award of treble damages pursuant to 35 U.S.C. § 284.

64.     Unless Curio is enjoined from infringing the 138 Patent, 10x will suffer irreparable injury for which damages are an inadequate remedy.

## FIFTH CAUSE OF ACTION

### (CURIO'S INFRINGEMENT OF U.S. PATENT NO. 11,761,030)

65.     10x incorporates each of the preceding paragraphs as if fully set forth herein.

66.     The 030 Patent issued on September 19, 2023, to Prognosys Biosciences, Inc.

67.     Prognosys is the sole legal owner of the 030 Patent. A true and correct copy of the assignment abstract and record of the 030 Patent is attached as Exhibit J. 10x is the exclusive licensee of the 030 Patent, including *inter alia* the right to sue Curio for its acts of infringement and to recover damages therefrom.

68.     On information and belief, Curio has been aware of the 030 Patent and its claims since on or around September 19, 2023.

69.     Curio has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims of the 030 Patent under 35 U.S.C. § 271(a), by using, testing, and demonstrating, and/or importing into the United States the Accused Instrumentalities.

Exhibit O provides an exemplary infringement claim chart for one asserted claim and representative Accused Instrumentalities. Curio has committed and continues to commit these acts of infringement without license or authorization.

70.     Curio has actively induced and continues to actively induce infringement, literally or under the doctrine of equivalents, of one or more claims of the 030 Patent under 35 U.S.C. § 271(b) by making and selling the Accused Instrumentalities in the United States and intentionally instructing or otherwise encouraging others, including Curio's customers and end users such as scientists working in laboratories that purchase the Accused Instrumentalities, to use the Accused Instrumentalities in the United States in a manner that infringes one or more claims of the 030 Patent. On information and belief, Curio provided this instruction and encouragement to its actual and prospective customers and end users with the knowledge and intent that doing so would result in the infringement of one or more method claims of the 030 Patent by those customers and end users. One or more of Curio's customers and end users of the Accused Instrumentalities have directly infringed and continue to directly infringe the 030 Patent by using the Accused Instrumentalities in accordance with Curio instructions and encouragement, as shown in the claim chart attached as Exhibit O. Curio has committed and continues to commit these acts of infringement without license or authorization.

71.     Curio has contributed and continues to contribute to the infringement of one or more claims under the 030 Patent under 35 U.S.C. § 271(c) by selling and/or offering to sell the Accused Instrumentalities within the United States for use by its customers and end users knowing that the Accused Instrumentalities are especially made or especially adapted for use in a manner that infringes one or more claims of the 030 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use. As a result of Curio's selling and/or offering

for sale of the Accused Instrumentalities, other entities, on information and belief, use these products for their intended purpose and according to Curio's instructions with the result that such entities, such as Curio's customers and users of the Accused Instrumentalities, directly infringe the asserted claims of the 030 Patent, literally or under the doctrine of equivalents, as shown in the claim chart attached as Exhibit O. Curio has committed and continues to commit these acts of infringement without license or authorization.

72.     The direct and indirect infringement of the 030 Patent by Curio has directly and proximally caused damage to Plaintiffs. This infringement entitles Plaintiffs to monetary relief in an amount adequate to compensate for the infringement and which, by law, cannot be less than a reasonable royalty, together with interest and costs fixed by this Court pursuant to 35 U.S.C. § 284.

73.     The infringement of the 030 Patent by Curio is willful and deliberate. At least as of September 19, 2023, Curio knew or should have known that its actions did and would constitute an unjustifiably high risk of infringement of the 030 Patent. Such conduct constitutes, at minimum, willful infringement of the 030 Patent, justifying an award of treble damages pursuant to 35 U.S.C. § 284.

74.     Unless Curio is enjoined from infringing the 030 Patent, 10x will suffer irreparable injury for which damages are an inadequate remedy.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request that the Court find in their favor and against Curio Bioscience, Inc. and that the Court grant the following relief:

a.     For entry of judgment that the Asserted Patents have been, and continue to be, directly and/or indirectly infringed by Curio, either literally or under the doctrine of equivalents;

b.     For a declaration that each of the Asserted Patents is valid and enforceable;

20

c.      For permanent injunctions enjoining the aforesaid acts of infringement by Curio, its officers, agents, servants, employees, attorneys, parent and subsidiary entities, assigns and successors in interest, and those persons acting in concert with them including related individuals and entities, customers, representatives, distributors, and dealers. In the alternative, if the Court finds that an injunction is not warranted, Plaintiffs request an award of post-judgment royalty to compensate for future infringement;

d.      For an account of all damages sustained by Plaintiffs as the result of the acts of Curio as alleged herein;

e.      For the award to Plaintiffs of damages so ascertained, together with pre-judgment interest as provided by law;

f.      For entry of judgment that Curio's infringement is willful, and for an award of treble damages pursuant to 35 U.S.C. § 284;

g.      For judgment that this case is exceptional, and for an award of all costs, disbursements, and attorneys' fees pursuant to 35 U.S.C. § 285; and

h.      For such other and future legal and/or equitable relief as the Court shall deem just and proper.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury on all issues so triable.

*Of Counsel*:

TENSEGRITY LAW GROUP LLP
Matthew Powers
Paul Ehrlich
Stefani Smith
Robert Gerrity
Li Shen
555 Twin Dolphin Drive
Suite 650
Redwood Shores, CA 94065
Tel: (650) 802-6000

Ronald J. Pabis
Kiley White
Joanna Schacter
8260 Greensboro Drive
Suite 260
McLean, VA 22102-3848
Tel: (650) 802-6000
10x_Curio_Service@tensegritylawgroup.com

*/s/ Jason J. Rawnsley*
Frederick L. Cottrell, III (#2555)
Jason J. Rawnsley (#5379)
Alexandra M. Ewing (#6407)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
rawnsley@rlf.com
ewing@rlf.com