# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 10X GENOMICS, INC. et al., | ) |
| Plaintiff, | ) ) ) |
| v. | ) )  C.A. No. 23-cv-1375-MN |
| CURIO BIOSCIENCE INC., | ) ) ) |
| Defendant. | ) ) ) ) |

## REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Date: February 22, 2024

*Of Counsel:*

Morgan Chu
Alan Heinrich
Andrew Krause
Abigail Sellers
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel: (310) 277-1010
Fax: (310) 203-7199
mchu@irell.com
aheinrich@irell.com
akrause@irell.com
asellers@irell.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market Str., 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Defendant Curio Bioscience Inc.*

11304767

**TABLE OF CONTENTS**

**Page**

I.   CLAIM 1 OF '468 PATENT IS INVALID FOR ATTEMPTING TO PATENT A NATURAL PHENOMENON AND ABSTRACT IDEA ............................................. 1

   A.   Claim 1 Is Directed to a Natural Phenomenon ....................................... 1

   B.   Claim 1 Is Directed to an Abstract Idea .................................................. 6

   C.   Claim 1 Does Not Provide an Inventive Concept ................................... 7

II.  THE REMAINING ASSERTED CLAIMS ARE INVALID, AS 10X DOES NOT MEANINGFULLY DISPUTE THAT CLAIM 1 OF THE '468 PATENT IS REPRESENTATIVE ........................................................................................... 9

III. THE DEPENDENT CLAIMS IDENTIFIED BY 10X ARE ALSO INVALID ............ 10

IV.  CONCLUSION ................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*10X Genomics, Inc. v. Parse Biosciences, Inc.*,
   2023 WL 5975137 (D. Del. Sept. 14, 2023)...................................................................4, 5, 6, 7

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
   788 F.3d 1371 (Fed. Cir. 2015)...........................................................................................1, 3

*Athena Diagnostics, Inc. v. Mayo Collaborative Services*, LLC,
   915 F.3d 743 (Fed. Cir. 2019).........................................................................................1, 2, 10

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018)................................................................................................9

*In re BRCA1- & BRCA2-Based Hereditary Cancer Test Pat. Litig.*,
   774 F.3d 755 (Fed. Cir. 2014)...............................................................................................3, 7

*Brit. Telecommunications PLC v. IAC/InterActiveCorp*,
   381 F. Supp. 3d 293 (D. Del. 2019).........................................................................................9

*CareDx, Inc. v. Natera*,
   40 F.4th 1371 (Fed. Cir. 2022) .......................................................................................1, 5, 8

*CareDx, Inc. v. Natera, Inc.*,
   563 F. Supp. 3d 329 (D. Del. 2021).........................................................................................8

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016)................................................................................................6

*Epic IP LLC v. Backblaze, Inc.*,
   351 F. Supp. 3d 733 (D. Del. 2018).....................................................................................9, 10

*Esoterix Genetic Labs. LLC v. Qiagen Inc.*,
   2016 WL 4555613 (D. Mass. Aug. 31, 2016) .........................................................................2

*Genetic Veterinary Scis., Inc. v. LABOKLIN GmbH & Co.*,
   933 F.3d 1302 (Fed. Cir. 2019)................................................................................................3

*Illumina, Inc. v. Ariosa Diagnostics, Inc.*,
   967 F.3d 1319 (Fed. Cir. 2020).....................................................................................3, 4, 6, 7

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*,
   50 F.4th 1371 (Fed. Cir. 2022) ................................................................................................8

*Rapid Litigation Management Ltd v. CellzDirect, Inc.*,
    827 F.3d 1042 (Fed. Cir. 2016)......................................................................................3, 4, 6, 7

*Roche Molecular Sys., Inc. v. CEPHEID*,
    905 F.3d 1363 (Fed. Cir. 2018)......................................................................................3

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017)......................................................................................8

*XY, LLC v. Trans Ova Genetics, LC*,
    968 F.3d 1323 (Fed. Cir. 2020)......................................................................................4, 6

**Rules**

Fed. R. Civ. Proc. 15(a)(1)(B) ....................................................................................................10

I.   **CLAIM 1 OF '468 PATENT IS INVALID FOR ATTEMPTING TO PATENT A NATURAL PHENOMENON AND ABSTRACT IDEA**

   A.   **Claim 1 Is Directed to a Natural Phenomenon**

10X does not contest that "the presence or abundance of a nucleic acid at a location in a tissue sample," as recited in the preamble of Claim 1 of the '468 patent, is a natural phenomenon. Nor does 10X contest that "[t]he mere observation of a naturally occurring phenomenon...is the hallmark of the patent ineligible" diagnostic/detection cases. D.I. 16 ("Opp.") at 7. Instead, 10X's lead argument is that because Claim 1 uses laboratory tools such as probes and tags that themselves are "not found in nature," then somehow the claim must not be directed to a natural phenomenon, regardless of whether the tools themselves are merely conventional. Opp. at 3-4, 8-10.

The Federal Circuit has squarely rejected 10X's argument. A claim may be directed to a natural phenomenon regardless of whether it recites the use of non-naturally occurring laboratory tools. For example, in *Athena Diagnostics, Inc. v. Mayo Collaborative Services*, LLC, 915 F.3d 743, 747 (Fed. Cir. 2019), the Federal Circuit considered the subject matter eligibility of claims to a "[a] method for diagnosing neurotransmission or developmental disorders related to [MuSK]." The patentee argued "the claims at issue differ from prior diagnostic claims [the Federal Circuit] ha[s] held ineligible under § 101 because they require labeling MuSK with a man-made substance." *Id.* at 752. The court held that "the use of a man-made molecule is not decisive if it amounts to only a routine step in a conventional method for observing" ineligible subject matter. *Id.*[1] As the Court explained, this is confirmed by numerous cases:

> Some of the claims in *Ariosa*...required amplification through the polymerase chain reaction, which makes use of man-made reagents, or using a specific probe that

---

[1] *Athena* confirms conventionality can be considered at Step 1. *See also CareDx, Inc. v. Natera*, 40 F.4th 1371, 1379 (Fed. Cir. 2022) ("CareDx also incorrectly characterizes our precedent as limiting the conventionality inquiry to step two. On the contrary,...we have repeatedly analyzed conventionality at step one[.]").

> binds to DNA. And the claims in *BRCA1* also involved hybridizing a synthetic DNA probe to a DNA strand. Nonetheless, in each of these cases either the Supreme Court or this court held the claims directed to a natural law and invalid under § 101.

*Id.* at 752; *see also Esoterix Genetic Labs. LLC v. Qiagen Inc.*, 2016 WL 4555613, at *8-10 (D. Mass. Aug. 31, 2016) (finding a "kit" claim requiring "at least one nucleic acid probe designed to detect a nucleotide variance...wherein the nucleic acid probe comprises a detectable label" invalid for claiming a natural law). Thus, the fact that Claim 1 recites tools "not found in nature" does not negate a finding that the claim is directed to a natural phenomenon, where, as here, Claim 1 uses conventional laboratory tools in a conventional way to determine the presence of a naturally occurring nucleic acid. *See* D.I. 13 ("Br.") at 10-15.

10X also argues that Claim 1 is not directed to a natural phenomenon on the theory that binding a tagged capture agent to a naturally occurring nucleic acid in a tissue sample somehow "alters" the nucleic acid. *See* Opp. at 7-8, 11-12. For example, 10X argues that "[t]he Asserted Claims **alter** the tissue section and the nucleic acids within it in unconventional ways to create new **tagged nucleic acid molecules** that never existed in nature." *Id.* at 11-12. This argument is refuted by the claims and specification of the asserted patents, which confirm the well-known fact that the mere binding of a tagged capture agent to a naturally occurring nucleic acid does not "alter" that nucleic acid, but instead merely captures the nucleic acid for subsequent detection.

Claim 1 requires contacting the tissue section with an "array comprising...a capture agent... compris[ing]: (i) a first sequence that specifically binds the nucleic acid, and (ii) a second sequence comprising a coding tag." '468 Pat., cl. 1. Contacting the target nucleic acid with a tagged capture agent does not alter the naturally occurring nucleic acid. As shown in the call-out below from Figure 4A, capture agents (probes) **420 and 422** each comprise a "**target-specific/encoding oligonucleotide construct**[]" that binds to a "**target nucleic acid 402**" (*i.e.*,

"**a first sequence that specifically binds the nucleic acid**"). *Id.*, 13:64-67. Each capture agent **420 and 422** also includes "**coding tag[s]**" **406 and 408** and "**universal priming sites 404, 410** for amplification of the assay products." *Id.*, 14:1-6, 23:55-58. As shown, the capture agents **420 and 422** with their associated coding and priming sites merely bind to the target nucleic acid, but are not integrated into and do not alter the naturally occurring **target nucleic acid**. Indeed, the **coding tags** do not even bind to the nucleic acid.

Thus, the claimed capture agent is analogous to a PCR primer or probe that binds to a nucleic acid, and the Federal Circuit has repeatedly found claims that require binding a primer/probe to a nucleic acid in order to detect the presence of a natural phenomenon/law of nature are directed to patent ineligible subject matter. *See, e.g.*, *Genetic Veterinary Scis., Inc. v. LABOKLIN GmbH & Co.*, 933 F.3d 1302, 1316 (Fed. Cir. 2019) ("[a]n in vitro method for genotyping," wherein "a) said first primer hybridizes to a first DNA strand of the SUV39H2 gene; and b) said second primer hybridizes to the strand complementary to said first DNA strand"); *In re BRCA1- & BRCA2-Based Hereditary Cancer Test Pat. Litig.*, 774 F.3d 755, 761, 765 (Fed. Cir. 2014) ("method for screening germline of a human subject for an alteration of a BRCA1...wherein a germline nucleic acid sequence is compared by hybridizing a BRCA1 gene probe which specifically hybridizes to a BRCA1 allele"); *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1374, 1378 (Fed. Cir. 2015) ("Claim 4...claims detection via a sequence specific probe."); *Roche Molecular Sys., Inc. v. CEPHEID*, 905 F.3d 1363, 1366-67, 1374 (Fed. Cir. 2018) (finding a method of detection claim requiring a primer ineligible).

10X ignores the key intrinsic evidence described above, and instead argues without support that the claims alter the naturally occurring target nucleic acid, and are similar to the claims in *Illumina, Inc. v. Ariosa Diagnostics, Inc.*, 967 F.3d 1319 (Fed. Cir. 2020); *Rapid Litigation*

*Management Ltd v. CellzDirect, Inc.*, 827 F.3d 1042 (Fed. Cir. 2016); *XY, LLC v. Trans Ova Genetics, LC*, 968 F.3d 1323 (Fed. Cir. 2020); and *10X Genomics, Inc. v. Parse Biosciences, Inc.*, 2023 WL 5975137 (D. Del. Sept. 14, 2023). However, Claim 1 is markedly different from the claims in these cases. For example, in *Illumina*, the claims were to "[a] method for preparing a deoxyribonucleic acid (DNA) fraction from a pregnant human female" and required "selectively removing DNA fragments that are above a specified size threshold" from the sample. 967 F.3d at 1323, 1326. In finding the claims were patent eligible, the court emphasized that removing DNA fragments above a certain size altered the naturally occurring sample, which is not the case here. *Id.* at 1326. Moreover, the court emphasized that it was "a ***method of preparation case***," "not a diagnostic case," like here. *Id.* at 1325. Similarly, *CellzDirect* is readily distinguishable, as the claims were "directed to a new and useful laboratory technique for preserving hepatocytes," 827 F.3d at 1048, while Claim 1 does not claim new techniques (see Br. at 10-15 and Section I.C *infra*) and claims a method for detecting a natural phenomenon, not preserving a sample.

Claim 1 is also distinguishable from the claims in *Parse*. The claims in *Parse* were to "a method for analyzing a biological sample" and "a method for generating a sequencing library" that involved "new applications of the insertional enzyme complex, transposase, by inserting it into a cell nucleus to tagment DNA found in open chromatin to create tagged DNA fragments." 2023 WL 5975137 at *2-3. Ultimately, the court found the claimed methods were not directed to ineligible subject matter because they involved "unconventional laboratory methods for analyzing genomic DNA samples" or "generating a sequencing library" and utilized transposase to alter the naturally occurring open chromatin regions in the DNA by chemically and physically incorporating non-natural nucleic acids into the nucleic acid sequence. *Id.* at *6. Here, however, the techniques applied in Claim 1 are conventional and do not alter the nucleic acid.

Furthermore, the *Parse* decision did not take into account *CareDx's* holding that tagging a naturally occurring nucleic acid so that it could be sequenced using conventional sequencing equipment does not render a method patent eligible. In *CareDx*, one of the claims was to a "method of detecting donor-specific circulating [cfDNA] in a solid organ transplant recipient" that required "at least one assay, wherein the at least one assay comprises **high-throughput sequencing**." 40 F. 4th at 1373-74. As 10X's expert explained in a prior litigation in this district:

> [High-throughput sequencing (*i.e.*, next-generation sequencing ("NGS")[2])] begins with extracting and isolating DNA or RNA from the sample, followed by library preparation.... The library consists of the extracted DNA or RNA that is modified in such a way that it allows them to be compatible with sequencers. ***This process involves fragmenting the input DNA and adding specialized adapters at both ends. Adapters are typically added through ligation***. [See figure below left]....
>
> ***The generated sequencing library molecules can also include unique index sequences ("barcodes" or "tags").*** The barcodes are added during adapter ligation and are typically a component of adapters or PCR primers. [See figure below right]. ***The barcodes are unique DNA sequences ligated to fragments within a library used to distinguish between the libraries during downstream data analysis***.

D.I. 14, Ex. 10, ¶¶ 28-29. These adapters and barcodes are physically integrated into the DNA



sample itself as shown. Therefore, the claim in *CareDx* implicitly required the addition of sequencing adaptors and/or barcodes (*i.e.*, coding tags) to cfDNA, yet the Court still held that the use of these NGS techniques did not alter the cfDNA such that the claims were no longer directed to detecting the presence of cfDNA, which is a natural phenomenon. *See CareDx*, 40 F.4th

---

[2] *See* '468 Pat., 7:9-18 (referring to high-throughput sequencing and next-generation sequencing interchangeably).

at 1380-81. Thus, the Court's finding in *Parse* that the claims were not directed to a natural phenomenon because the chromatin was altered by tagging is inconsistent with *CareDx*.

10X also compared Claim 1 to *XY's* claims to a "method of operating a flow cytometry apparatus." 968 F.3d at 1328-29. The Federal Circuit upheld the claims because the claimed method "improve[d] a laboratory technique for detecting, classifying, and sorting particles from an individual sample," and did not merely involve the application of conventional techniques. *Id.* at 1332. Here, not only is Claim 1 explicitly directed to ineligible subject matter (*i.e.*, "determining the presence or abundance of a nucleic acid at a location in a tissue section") unlike the claims in *XY*, Claim 1 also does not claim new techniques, as discussed below for Step 2.

Finally, to the extent 10X is incorrectly suggesting that Claim 1 requires the physical integration of the coding tag in the nucleic acid, like the sequencing adaptors/barcodes used during NGS, *CareDx* shows that such tagging would not direct Claim 1 to patentable subject matter.

### B. Claim 1 Is Directed to an Abstract Idea

10X does not dispute that correlating a label with a location is an abstract idea. *See* Opp. at 16-18. Instead, 10X argues that Claim 1 is not "directed to" an abstract idea because it includes "multiple physical, transformative steps," citing *Illumina* and *CellzDirect* for support. *See id.* at 16-17. However, as described previously and in Section 1.C *infra*, the additional limitations in the claim are conventional laboratory techniques. Thus, the focus of the claim is not on these conventional steps, but rather the application of the abstract idea (*i.e.*, correlating a label with a specific location) using conventional techniques to determine the presence of a natural phenomenon. *See* Br. at 15-16; *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) (claims were directed to an abstract idea when "the focus of the claims [was] not on such an improvement in computers as tools, but on certain independently abstract ideas that use

computers as tools."). Moreover, *Illumina* and *CellzDirect*'s applicability is limited as they address subject matter eligibility related to laws of nature/natural phenomena, not abstract ideas.

10X also asserts that the court's holding in *Parse* supports that Claim 1 is not directed to an abstract idea. Opp. at 17-18. Not so. The court in *Parse* found that the claimed laboratory technique made improvements over the prior art other than the application of the abstract idea, see 2023 WL 5975137 at *3-4, whereas here, nothing in the specification suggests that the techniques actually claimed are unconventional or an improvement over the prior art. Thus, the claims in *Parse* are readily distinguishable from Claim 1. Further, the court in *Parse* inaccurately interpreted Federal Circuit precedent when finding the claims were valid. The court stated that the claims were not directed to an abstract idea "because laboratory inventions are not abstract ideas," citing *Illumina* and *CellzDirect* for support. *Id.* at *8. However, neither of these cases state that laboratory inventions cannot be directed towards abstract ideas, see generally 967 F.3d 1319; 827 F.3d 1042, and the mere fact that these cases happened to address subject matter eligibility related to natural phenomena/laws of nature does not preclude a different laboratory invention from being directed towards an abstract idea. In fact, in *BRCA1*, the Federal Circuit found a claim to "[a] method for screening germline of a human subject for an alteration of a BRCA1 gene which comprises comparing germline sequence of a BRCA1 gene...from a tissue sample...with germline sequences of wild-type BRCA1 gene" was directed to an abstract idea. 774 F.3d at 761-65.

### C. Claim 1 Does Not Provide an Inventive Concept

10X does not refute that the specification describes the techniques in Claim 1 as "conventional," nor that the prior art discussed in Curio's brief showed that the described limitations were conventional. Instead, 10X argues that Curio did not show "the claim elements as actually ordered and combined in the claim were routine or conventional." Opp. at 18-19. However, 10X fails to explain how to reconcile its argument that the combination of claimed

techniques was not conventional with the statement in the specification that "[t]he practice of the techniques described herein may employ, unless otherwise indicated, conventional techniques:"

> The practice of the techniques described herein may employ, unless otherwise indicated, conventional techniques and descriptions of organic chemistry, polymer technology, molecular biology (including recombinant techniques), cell biology, biochemistry, and sequencing technology, which are within the skill of those who practice in the art. Such conventional techniques include polymer array synthesis, hybridization and ligation of polynucleotides, and detection of hybridization using a label. Specific illustrations of suitable techniques can be had by reference to the examples herein.

'468 Pat., 7:53-8:17. *CareDx, Inc. v. Natera, Inc.*, 563 F. Supp. 3d 329, 346 (D. Del. 2021) (rejecting argument that ordered combination was not conventional when specification stated the "claimed steps are, 'unless otherwise indicated, conventional techniques...'"), *aff'd*, 40 F.4th 1371.

Furthermore, 10X repeatedly states that the novel aspects of the disclosed invention are its cost-effectiveness, multiplexability, and its ability to be used with high-throughput sequencing. Opp. at 3, 5, 19-20 (citing specification). However, none of these features are claimed, and the claim must include an inventive concept, not the specification. *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017) ("The main problem that [appellant] cannot overcome is that the claim—as opposed to something purportedly described in the specification—is missing an inventive concept."). For example, 10X argues "it is the use of the array of specially engineered **capture probes** (Claim 1, element (a)) that allows a large number of different target nucleic acids to be detected and identified across the array and then pooled together and sequenced in a highly efficient, highly multiplexed way." Opp. at 12. However, Claim 1 only requires "*a* capture agent." Thus, there is no factual dispute preventing the court from finding that the claimed methods were conventional. *See Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1379 (Fed. Cir. 2022) ("[The] court need not accept a patent owner's conclusory allegations of inventiveness. We have said that we do not read *Aatrix* to say that any

allegation about inventiveness, wholly divorced from the claims or the specification, defeats a motion to dismiss."); *Brit. Telecommunications PLC v. IAC/InterActiveCorp*, 381 F. Supp. 3d 293, 322–23 (D. Del. 2019) ("*Aatrix* and *Berkheimer* required detailed factual allegations raising issues of fact before precluding dismissal under Rule 12(b)(6).").

Because Claim 1 does not recite an inventive concept, Br. at 10-15, and 10X does not provide any plausible argument to the contrary, Claim 1 of the '468 Patent fails step 2 of the *Alice/Mayo* test, and is invalid for claiming patent-ineligible subject matter.

**II.    THE REMAINING ASSERTED CLAIMS ARE INVALID, AS 10X DOES NOT MEANINGFULLY DISPUTE THAT CLAIM 1 OF THE '468 PATENT IS REPRESENTATIVE**

"Courts may treat a claim as representative...if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). Here, 10X has not presented any meaningful argument to differentiate Claim 1 of the '468 Patent from the other Asserted Method Claims. For example, in its brief, 10X did not address the detailed chart Curio put forth showing the many similarities between the Accused Method Claims. Instead, 10X merely stated "Claim 1 of the 468 Patent is not representative of all 150 claims of the Asserted Patents," Opp. at 20, while engaging in an analysis for each claim that was starkly similar, *id.* at 8-16. Similarly, 10X did not address Curio's argument that the Accused Apparatus Claims must fall with the Accused Method Claims. *See id* at 20. Because 10X has not presented any meaningful arguments regarding representativeness, Claim 1 of the '468 Patent can be treated as representative and the Complaint can be dismissed in its entirety. *See Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 735-36, 752 (D. Del. 2018) (granting 12(b)(6) motion based on subject matter eligibility after finding the 5 asserted claims in a patent with 19 claims were non-patent eligible).

## III. THE DEPENDENT CLAIMS IDENTIFIED BY 10X ARE ALSO INVALID

10X implies that Curio did not meet its burden to show that all 150 claims in the Asserted Patents are invalid for claiming ineligible subject matter. However, that is not the standard required for a 12(b)(6) motion to dismiss. *See id*. Curio has explained in detail why the only claims actually asserted in the Complaint are invalid under Section 101. Thus, the Complaint should be dismissed in its entirety. Despite Curio only needing to address the claims identified in the Complaint, 10X lists dependent claims in its brief that it alleges claim eligible subject matter. The Court can disregard these claims, as 10X had the opportunity to file an amended complaint adding these claims following the filing of Curio's motion to dismiss (D.I. 12), but failed to do so. *See* FRCP 15(a)(1)(B). Nevertheless, even if the Court considers 10X's arguments regarding the dependent claims, they do not cure the Asserted Patents' failure to claim eligible subject matter.

For example, 10X argues that the dependent claims claim improved laboratory techniques, Opp. at 20, but the specification describes the techniques disclosed therein as "conventional." *See* '468 Pat., 7:53-8:17. 10X also argues that the dependent claims include non-naturally occurring items and thus claim patent-eligible subject matter. Opp. at 9, 13-16. However, as explained above, "the use of a man-made [product] is not decisive if it amounts to only a routine step in a conventional method for observing" ineligible subject matter. *Athena*, 915 F.3d at 746-47. Thus, the dependent claims do not add any subject matter that would render any claims patent eligible.

## IV. CONCLUSION

The Complaint should be dismissed in its entirety. Curio alternatively requests that the Court set a schedule for expedited summary judgment on invalidity under Section 101, including narrowing of asserted and representative claims. 10X did not oppose this process in its brief, and expedited summary judgment would allow the parties to address the universe of claims for which 10X believes it can plausibly assert infringement.

| | |
|---|---|
| Date: February 22, 2024 | Respectfully submitted, |
| *Of Counsel:* | FARNAN LLP |
| Morgan Chu<br>Alan Heinrich<br>Andrew Krause<br>Abigail Sellers<br>IRELL & MANELLA LLP<br>1800 Avenue of the Stars, Suite 900<br>Los Angeles, CA 90067<br>Tel: (310) 277-1010<br>Fax: (310) 203-7199<br>mchu@irell.com<br>aheinrich@irell.com<br>akrause@irell.com<br>asellers@irell.com | /s/ Michael J. Farnan<br>Brian E. Farnan (Bar No. 4089)<br>Michael J. Farnan (Bar No. 5165)<br>919 N. Market Str., 12$_{th}$ Floor<br>Wilmington, DE 19801<br>Tel: (302) 777-0300<br>Fax: (302) 777-0301<br>bfarnan@farnanlaw.com<br>mfarnan@farnanlaw.com<br><br>*Attorneys for Defendant Curio Bioscience Inc.* |