IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

10X GENOMICS, INC. and PROGNOSYS
BIOSCIENCES, INC.,

       *Plaintiffs,*

       *v.*

CURIO BIOSCIENCE, INC.,

       *Defendant.*

Civil Action No. 23-1375-MN

---

**PLAINTIFFS 10X AND PROGNOSYS'S OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS CURIO'S FIRST THROUGH FOURTH COUNTERCLAIMS**

*Of Counsel:*

TENSEGRITY LAW GROUP LLP
Matthew Powers
Paul Ehrlich
Stefani Smith
Robert Gerrity
Li Shen
555 Twin Dolphin Drive
Suite 650
Redwood Shores, CA 94065
Tel: (650) 802-6000

Ronald J. Pabis
Kiley White
Joanna R. Schacter
1676 International Drive
Suite 910
McLean, VA 22102
Tel: (650) 802-6000
10x_Curio_Service@tensegritylawgroup.com

Frederick L. Cottrell, III (#2555)
Jason J. Rawnsley (#5379)
Alexandra M. Ewing (#6407)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
rawnsley@rlf.com
ewing@rlf.com

*Attorneys for Plaintiffs*

Dated: July 5, 2024

# TABLE OF CONTENTS

I.    NATURE AND STAGE OF PROCEEDINGS .................................................................. 1

II.   INTRODUCTION AND SUMMARY OF ARGUMENT ................................................ 1

III.  STATEMENT OF FACTS ............................................................................................... 3

IV.   LEGAL STANDARD ON MOTION TO DISMISS ........................................................ 7

V.    CURIO'S ANTITRUST COUNTERCLAIMS SHOULD BE DISMISSED ................... 7

    A.    Curio Fails to State a Claim for Conspiracy to Monopolize ................................ 7

        1.    Curio Fails to Plead an Illegal Conspiracy ................................................ 8

        2.    Curio Fails to Plead Any Anticompetitive Conduct .................................. 9

            a.    The First Amendment protects Prognosys's and 10x's patent enforcement and Curio fails to plead sham litigation ................... 9

                (1)    Curio's Non-Infringement Theory for Seeker Based on Descriptions of Prior Art to Unrelated Patents Does Not Support Objective Baselessness ............................... 10

                (2)    Curio's Non-Infringement Theory for Trekker Does Not Support Objective Baselessness ............................... 12

                (3)    Curio's Written Description Theory Does Not Support Objective Baselessness ................................... 14

             b.    Curio Cannot Plausibly Show 10x and Prognosys Are Indifferent to Winning on the Merits ........................................... 15

        3.    Curio Does Not Allege Harm to Competition ......................................... 16

    B.    Curio Fails to State A Claim for Attempted Monopolization ............................. 17

    C.    Curio's State Law Claims Fail for the Same Reasons ......................................... 19

VI.   IN THE ALTERNATIVE, CURIO'S COUNTERCLAIMS SHOULD BE BIFURCATED AND STAYED ...................................................................................... 19

VII.  CONCLUSION ............................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Cases**

*10x Genomics, Inc. & Prognosys Bioscis., Inc. v. NanoString Techs., Inc.*,
 No. 21-cv-653-MFK (D. Del.), D.I. 330-2 (D. Del. Jan. 17, 2024)................................ 4, 5, 11

*3Shape Trios A/S v. Align Tech., Inc.*,
 No. 18-1332-LPS, 2019 WL 3824209 (D. Del. Aug. 15, 2019)............................................. 18

*Abraxis Bioscience, Inc. v. Navinta LLC*,
 No. 07-1251 (JAP), 2008 WL 2967034 (D.N.J. July 31, 2008) ............................................ 20

*Amado v. Microsoft Corp.*,
 517 F.3d 1353 (Fed. Cir. 2008) ............................................................................................ 19

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)................................................................................................................ 7

*AstraZeneca AB v. Dr. Reddy's Labs., Inc.*,
 209 F. Supp. 3d 744 (D. Del. 2016)........................................................................................ 4

*Baldwin Graphic Sys., Inc., v. Siebert, Inc.*,
 512 F.3d 1338 (Fed. Cir. 2008) ............................................................................................ 11

*Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*,
 483 F. Supp. 3d 38 (D. Mass. 2020) ............................................................................... 17, 18

*Braintree Labs., Inc. v. Schwarz Pharma, Inc.*,
 568 F. Supp. 2d 487 (D. Del. 2008)........................................................................................ 9

*Broadcom Corp. v. Qualcomm Inc.*,
 501 F.3d 297 (3d Cir. 2007) ........................................................................................... 16, 17

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
 509 U.S. 209 (1993).............................................................................................................. 16

*Chip-Mender, Inc. v. The Sherwin-Williams Co.*,
 No. C 05-3465 PJH, 2006 WL 13058 (N.D. Cal. Jan. 3, 2006) ........................................... 18

*Cnty. of Tuolomne v. Sonora Cmty. Hosp.*,
 236 F.3d 1148 (9th Cir. 2001) .............................................................................................. 19

*Duke Univ. v. Akorn, Inc.*,
 No. 3:18-cv-14035-BRM-TJB, 2019 WL 4410284 (D.N.J. Sept. 16, 2019) ....................... 7, 8

*ERBE Elektromedizin GmbH v. Canady Tech. LLC*,
 629 F.3d 1278 (Fed. Cir. 2010) ........................................................................................ 9, 12

*Eurand Inc. v. Mylan Pharms. Inc.*,
    No. 08-889-SLR, 2009 WL 3172197 (D. Del. Oct. 1, 2009) ................................................ 20

*Forestieri v. Wendover, Inc.*,
    No. 18-1171 (MN), 2019 WL 1786042 (D. Del. Apr. 24, 2019) ............................................ 7

*Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*,
    602 F.3d 237 (3d Cir. 2010) .................................................................................................. 7

*In re Indep. Serv. Orgs. Antitrust Litig.*,
    203 F.3d 1322 (Fed. Cir. 2000) ....................................................................................... 9, 16

*In re Innotron Diagnostics*,
    800 F.2d 1077 (Fed. Cir. 1986) ........................................................................................... 20

*In re Lipitor Antitrust Litig.*,
    855 F.3d 126, 145 (3d Cir. 2017), *as amended* (Apr. 20, 2017)........................................... 9

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
    No. 13-MD-2445, 2017 WL 4642285 (E.D. Pa. Oct. 17, 2017) ......................................... 19

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
    No. 13-MD-2445, 2017 WL 4910673 (E.D. Pa. Oct. 30, 2017) ........................................... 8

*Lannett Co. Inc. v. KV Pharm.*,
    No. CV 08-338-JJF, 2009 WL 10737496 (D. Del. Feb. 4, 2009) ......................................... 8

*Levi Case Co., Inc. v. ATS Prods., Inc.*,
    788 F. Supp. 428 (N.D. Cal. 1992) ...................................................................................... 8

*Microsoft Corp. v. i4i Ltd.*,
    564 U.S. 91 (2011).............................................................................................................. 14

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
    465 U.S. 752 (1984)............................................................................................................. 7

*Novell, Inc. v. Microsoft Corp.*,
    731 F.3d 1064 (10th Cir. 2013) ........................................................................................... 9

*Otsuka Pharm. Co. v. Torrent Pharms. Ltd., Inc.*,
    118 F. Supp. 3d 646 (D.N.J. 2015) ..................................................................................... 20

*Pro. Real Estate Invs., Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1998) ("*PRE*") ............................................................................................... 9

*SCM Corp. v. Xerox Corp.*,
    645 F.2d 1195 (2d Cir. 1981) ............................................................................................. 18

iii

*Shionogi Pharma, Inc. v. Mylan, Inc.*,
  No. 10-1077, 2011 WL 2174499 (D. Del. May 26, 2011) ...................................................... 8

*United Food & Commer. Workers Unions & Employers Midwest Health Benefits Fund v.
  Novartis Pharms. Corp.*,
  902 F.3d 1 (1st Cir. 2018)..................................................................................................... 14

*Varentec, Inc. v. Gridco, Inc.*,
  No. 16-217-RGA-MPT, 2017 WL 2438846 (D. Del. June 6, 2017) ...................................... 10

*Warner Lambert Co. v. Purepac Pharm. Co.*,
  No. CIV.A. 00-02053(JCL), 2000 WL 34213890 (D.N.J. Dec. 22, 2000) ............................ 20

**Rules**

Fed. R. Civ. P. 42(b) ................................................................................................................. 19

## I.       NATURE AND STAGE OF PROCEEDINGS

Plaintiffs 10x Genomics, Inc. and Prognosys Biosciences, Inc. filed a complaint against Curio Bioscience, Inc. on December 1, 2023, based on Curio's infringement of U.S. Patent Nos. 10,480,022; 10,662,468; 11,001,879; 11,549,138; and 11,761,030 ("the Asserted Patents"). D.I. 1. Curio filed its Answer and First Amended Counterclaims on June 20, 2024, alleging federal and state law antitrust violations based on Curio's assertion that Plaintiffs' litigation against Curio is a "sham." D.I. 49. Plaintiffs move to dismiss Curio's First through Fourth Counterclaims.

## II.      INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff 10x is a preeminent and prolific innovator in the biological sciences with a decade-plus track record of bringing powerful research tools to market. 10x has invested over $1.5 billion to invent, develop, and commercialize its breakthrough products. 10x first revolutionized gene sequencing by enabling researchers to obtain sequencing information on a cell-by-cell basis with 10x's Chromium platform. More recently, 10x has empowered scientists to map which genes are expressed across sections of tissue using 10x's slide-based Visium products. The inventions behind 10x's "spatial" gene expression products enabled 10x's unique barcoding approach for tagging and sequencing, tying genes to locations within the tissue.

Unfortunately, 10x's success attracted copycat products and competitors that free-ride on 10x's intellectual property. 10x and Prognosys have spent the better part of the past three years litigating in this District to stop a different company, NanoString, from willfully infringing Prognosys's patents licensed to 10x. That litigation has so far been a resounding success—a jury in November 2023 found Prognosys's patents valid and willfully infringed by NanoString's spatial product, GeoMx, and awarded over $30 million in damages because of NanoString's direct competition with 10x's patent-embodying product, Visium. Fresh off of that validation of the

1

Prognosys patents, 10x and Prognosys filed suit against Curio over Curio's Visium-like product "Seeker" on sister patents stemming from the same original Prognosys patent application.

Curio has responded by attempting to paint itself as the victim, arguing that 10x and Prognosys's lawsuit to stop Curio's infringement violates antitrust laws. Curio posits a conspiracy to monopolize between 10x and Prognosys, attempted monopolization by 10x, and corresponding violations of California state law. These claims require identifying, among other things, illegal anticompetitive conduct. Instead, Curio has identified only lawful, commercially-responsible conduct—prosecuting and enforcing patents in a patent family that was recently found validly to cover the same product functionality at issue here.

10x and Prognosys's patent enforcement is immune from antitrust liability under *Noerr-Pennington*. Curio attempts to get around this First Amendment protection by asserting that the litigation is a "sham." But meeting the stringent test for "sham" litigation—which requires a showing of both objective baselessness and subjective bad faith—is simply not possible given the posture of this case. Recent history demonstrates that 10x's Prognosys patents validly cover Visium-like products. While Curio sketches in its Answer (D.I. 49) the outline of two non-infringement arguments and a single invalidity contention, Curio ignores the fact that 10x has already successfully presented the contrary case to a jury. Virtually every patent defendant can muster non-infringement and validity defenses at the pleading stage. These expected defenses would not support a claim of "sham" in a typical case, let alone in a case such as this where the asserted patent family has already been tested on the same issues.

Curio's claim is even less plausible in the overall context of litigation between these parties. The 10x-Prognosys case in the District of Delaware is one of two infringement actions 10x filed against Curio at the same time in December. As Curio notes, 10x also brought an action in the

Unified Patent Court ("UPC") to stop Curio's infringement of a European patent owned by 10x. 10x sought a preliminary injunction against Curio's infringement and has already won on the merits—Curio is currently enjoined from infringing 10x's patent in Germany, France, and Sweden. Curio has no basis to call that case a sham; Curio has declined even to appeal that decision. It is simply not plausible that 10x is litigating against Curio without a belief it will win on the merits.

Curio's antitrust counterclaims are deficient in numerous other ways. Curio does not identify any "conspiracy"—there is no agreement to *monopolize* alleged, only a garden-variety exclusive patent license that cannot sustain a conspiracy claim. Curio does not allege any harm to *competition* from any of 10x's or Prognosys's patent assertion activities, only harm to Curio as an *infringing competitor*. And Curio does not substantiate an allegation that 10x has a dangerous probability of achieving an illegal monopoly—if Curio, like NanoString, is found to infringe valid patents, Curio's infringing product may be *legally* removed from commerce. Because Curio's antitrust counterclaims are aimed at meritorious patent assertions, Curio's First through Fourth counterclaims should be dismissed.

If Curio's antitrust-related counterclaims are not dismissed, Plaintiffs request that they be bifurcated and stayed to await resolution of Plaintiffs' patent lawsuit. While there should be no legitimate dispute that 10x and Prognosys's patent infringement claims are far above the threshold of objective baselessness, observing the case through claim construction, contentions, dispositive motions, and trial would remove all doubt. Courts routinely stay sham-litigation claims to the extent they are not dismissed, which conserves judicial and party resources.

## III.   STATEMENT OF FACTS

In 2018, 10x acquired two portfolios of intellectual property to enable its commercialization of products that capture spatial gene expression information in tissue sections. 10x purchased Spatial Transcriptomics AB, which had preliminarily released a slide-based spatial

gene expression product. D.I. 1, ¶ 10. At the same time, 10x identified the foundational patent disclosures enabling this approach, which were owned by Prognosys and invented by its founder, Dr. Mark Chee. D.I. 1, ¶ 14. 10x obtained an exclusive license to Dr. Chee's spatial analysis patent applications. *Id.*

10x built upon the Spatial Transcriptomics prototype and released the Visium Spatial Gene Expression Solution in 2019. D.I. 1, ¶ 10. 10x's Visium preserves spatial information through the use of spatially barcoded capture probes at known locations, where messenger RNA molecules across a tissue sample are captured, tagged, and later sequenced. D.I. 1, ¶ 11. At trial against NanoString in 2023, 10x's expert showed how Visium implements the barcoding techniques described and claimed in the Prognosys patents licensed to 10x. *10x Genomics, Inc. & Prognosys Bioscis., Inc. v. NanoString Techs., Inc.*, No. 21-cv-653-MFK, D.I. 330-2 at 156-166 (D. Del. Jan. 17, 2024). For example, the jury heard that Visium uses poly-dT capture agents to selectively bind mRNA in the sample with slide-bound probes.[1]

---

[1] On a motion to dismiss, "a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference." *AstraZeneca AB v. Dr. Reddy's Labs., Inc.*, 209 F. Supp. 3d 744, 752 (D. Del. 2016). Curio's pleading relies on material from the *10x v. NanoString* trial available on the docket; 10x and Prognosys here cite for context other portions of that trial record similarly publicly available.



*Id.* at 157. The jury evaluated how Visium's array of barcoded poly-dT probes met claim limitations concerning "contacting a tissue sample with a plurality of probes" and "specifically bind[ing] a target mRNA."



*Id.* at 166. 10x informed the jury that NanoString's GeoMx products infringed the Prognosys

patents and that because of direct competition between the embodying Visium products and the infringing NanoString products, 10x was owed lost profits. The jury returned a verdict that NanoString willfully infringed all of the asserted claims, that the claims were not invalid for deficient written description, and that NanoString owed over $30 million in past damages including over $25 million in lost profits. D.I. 1, ¶ 16.

In February 2023, more than four years after 10x acquired Spatial Transcriptomics and three years after 10x launched Visium, Curio announced the launch of its own slide-based spatial gene expression kit and workflow, dubbed "Seeker." D.I. 1, ¶ 19. Like Visium, Curio Seeker uses spatially-barcoded arrays on slides that are applied to tissue samples and that capture mRNA molecules before tagging and sequencing them. *Id.* Two weeks after the jury returned a verdict upholding the Prognosys patents and confirming NanoString's willful infringement, 10x filed two lawsuits against Curio related to the Seeker product. 10x and Prognosys filed the instant case, asserting infringement against Curio[2] on five Prognosys-owned patents that share a common specification with the seven Prognosys patents NanoString was found to infringe. D.I. 1, ¶¶ 1, 16. 10x also filed an infringement action in the UPC against Curio and sought a preliminary injunction relating to a European patent enforceable in Germany, France, and Sweden originally owned by Spatial Transcriptomics AB. D.I. 49, ¶ 164; Ex. 1. The UPC on April 30, 2024, found in favor of 10x and entered an injunction against Curio with respect to the Seeker product. Ex. 2. Curio did not appeal that decision.

---

[2] After Plaintiff filed the Complaint, Curio launched its Curio Trekker product, which uses a very similar barcoded slide array structure to tag nuclei of a tissue sample with photocleaved spatial barcodes. Ex. 3 (https://curiobioscience.com/curio-trekker/). Plaintiffs timely asserted infringement against Trekker on three of the five patents-in-suit. *See* Ex. 4 (infringement contentions excerpt) at 1-2.

On June 20, 2024, Curio filed its Answer and First Amended Counterclaims in this case asserting counterclaims for attempted monopolization, conspiracy to monopolize, and related state law claims based on Curio's contention that 10x and Prognosys's litigation against Curio is allegedly a sham. *See* D.I. 49.

## IV.     LEGAL STANDARD ON MOTION TO DISMISS

A claim is only plausible when a party "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The [c]ourt is not obligated to accept as true bald assertions or unsupported conclusions" where the counterclaim plaintiff has not stated "enough facts to raise a reasonable expectation that discovery will reveal evidence of each necessary element of a plaintiff's claim." *Forestieri v. Wendover, Inc.*, No. 18-1171 (MN), 2019 WL 1786042, at *2 (D. Del. Apr. 24, 2019) (quotations and internal citations omitted).

## V.     CURIO'S ANTITRUST COUNTERCLAIMS SHOULD BE DISMISSED

### A.     Curio Fails to State a Claim for Conspiracy to Monopolize

To state a claim for conspiracy to monopolize under Section 2 of the Sherman Act, a plaintiff must plead: (1) a conspiracy to monopolize; (2) an overt act in furtherance of the conspiracy; (3) a specific intent to monopolize; and (4) a causal connection between the conspiracy and the injury alleged. *Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 253 (3d Cir. 2010). To satisfy the first element, an antitrust plaintiff must plausibly allege that Prognosys and 10x entered into "a conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984). The objective must be to unlawfully acquire monopoly power, *i.e.*, power that is acquired, enhanced, or maintained through exclusionary or anticompetitive conduct. *See, e.g.*, *Duke Univ. v. Akorn, Inc.*, No. 3:18-cv-14035-BRM-TJB, 2019 WL 4410284, at *10, 28 (D.N.J. Sept. 16, 2019)

(dismissing conspiracy to monopolize claim because Defendant failed to allege Plaintiffs' actions were illegal, and activities that are "in line with a wide swath of rational and competitive business strateg[ies]" are inadequate). Curio has not pled an *illegal conspiracy*, nor has Curio pled anticompetitive conduct.

### 1.    Curio Fails to Plead an Illegal Conspiracy

Curio only identifies one agreement between Prognosys and 10x—the exclusive patent license covering the patent family asserted against Curio and successfully asserted against NanoString. D.I. 49, ¶¶ 166–76, 187–93. That agreement cannot support a "conspiracy" claim because exclusive licensors and licensees are actors with legally unified interests and cannot illegally "conspire" under these circumstances. *See Shionogi Pharma, Inc. v. Mylan, Inc.*, No. 10-1077, 2011 WL 2174499, at *5 (D. Del. May 26, 2011); *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, No. 13-MD-2445, 2017 WL 4910673, at *8 (E.D. Pa. Oct. 30, 2017) (citing cases); *Duke Univ. v. Akorn, Inc.*, No. 3:18-cv-14035-BRM-TJB, 2019 WL 4410284, at *10–11 (D.N.J. Sept. 16, 2019) (dismissing conspiracy to monopolize counterclaim against university patent holder and its exclusive licensee); *Levi Case Co., Inc. v. ATS Prods., Inc.*, 788 F. Supp. 428, 431–32 (N.D. Cal. 1992) (holding that a patent owner and its exclusive licensee were incapable of conspiring as a matter of law). A conspiracy claim requires an agreement between two separate entities, and Curio's First and Third Counterclaims should be dismissed for this reason alone.

Curio has also failed to allege the existence of an agreement to do anything unlawful. Curio has identified only lawful conduct: exclusively licensing patents, prosecuting patent applications through the Patent Office, and declining to license infringing competitors. "[A]ntitrust liability cannot flow from conduct that is permissible under the patent laws." *Lannett Co. Inc. v. KV Pharm.*, No. CV 08-338-JJF, 2009 WL 10737496, at *6 (D. Del. Feb. 4, 2009). It is well settled that "[e]ven

a monopolist generally has no duty to share (or continue to share) its intellectual . . . property with a rival." *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1074 (10th Cir. 2013); *In re Indep. Serv. Orgs. Antitrust Litig.*, 203 F.3d 1322, 1325–28 (Fed. Cir. 2000) (patent owner generally has no obligation to license patent rights). Curio has not pled facts and circumstances of any agreement between 10x and Prognosys to monopolize any market, let alone to do so by unlawful means.

### 2.     Curio Fails to Plead Any Anticompetitive Conduct

#### a.     The First Amendment protects Prognosys's and 10x's patent enforcement and Curio fails to plead sham litigation

The core of Curio's case attacks constitutionally-protected activity—patent prosection and litigation. The *Noerr-Pennington* doctrine "generally immunizes a party from antitrust liability based on its filing of a lawsuit unless the narrow 'sham litigation' exception applies."[3] *ERBE Elektromedizin GmbH v. Canady Tech. LLC*, 629 F.3d 1278, 1291 (Fed. Cir. 2010) (citing *Pro. Real Estate Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1998) ("*PRE*")). The "sham" exception attaches only "where the lawsuit is objectively baseless and subjectively motivated by a desire to impose anticompetitive harm from the judicial process rather than obtain judicial relief." *Id.* Objective baselessness is a very high bar—Curio must show that "no reasonable litigant could reasonably expect success on the merits." *PRE*, 508 U.S. at 60. No sham exists where there is "probable cause" for a litigant like 10x to have brought a case. Probable cause is a "reasonable belief that there is a chance that a claim may be held valid upon adjudication." *Varentec, Inc. v.*

---

[3] Curio does not assert that 10x's patents were obtained unlawfully from the Patent Office. Patent prosecution is also immunized from antitrust liability under *Noerr-Pennington*. *See Braintree Labs., Inc. v. Schwarz Pharma, Inc.*, 568 F. Supp. 2d 487, 499 (D. Del. 2008) (holding that obtaining and relying upon a valid patent for protection from competition creates immunity under the *Noerr-Pennington* doctrine). To state an antitrust claim for unlawful prosecution of patents, a plaintiff must allege under *Walker Process* that the patent was procured by fraud and would not have been granted absent the fraud, elements that Curio does not plead. *See In re Lipitor Antitrust Litig.*, 855 F.3d 126, 145 (3d Cir. 2017), *as amended* (Apr. 20, 2017). An allegation of fraud must be pleaded with specificity (Fed. R. Civ. P. 9(b)); Curio does not attempt to meet this standard.

*Gridco, Inc.*, No. 16-217-RGA-MPT, 2017 WL 2438846, at *10 (D. Del. June 6, 2017) (quoting *PRE*, 508 U.S. at 62–63).

Curio asserts that the litigation is objectively baseless because Curio can muster "robust defenses." *E.g.*, D.I. 49, ¶ 169. Curio outlines only two disputes on infringement and a contingent dispute over the written description. *Id.* These defenses wither under even the barest scrutiny and, if anything, confirm that 10x and Prognosys are very likely to obtain the same result against Curio that they did against NanoString seven months ago.

### (1) Curio's Non-Infringement Theory for Seeker Based on Descriptions of Prior Art to Unrelated Patents Does Not Support Objective Baselessness

Curio alleges it has a potential non-infringement argument for the accused Seeker product for at least some claims based on a lack of "specific binding" between the poly-dT capture agents and the poly-A tail present in mRNA molecules. D.I. 49, ¶ 123. On its face, Curio's position is demonstrably weak. Curio's Seeker product, like 10x's Visium product, employs an array of single-stranded nucleic acid capture probes that have a "poly-dT" sequence for capturing only a subset of other nucleic acids. A poly-dT sequence (a string of "Ts" (thymine bases)) binds selectively to a sequence of "As" (adenine bases). As 10x depicted at trial:



*10x Genomics, Inc. & Prognosys Bioscis., Inc. v. NanoString Techs., Inc.*, No. 21-cv-653-MFK, D.I. 330-2 at 160 (D. Del. Jan. 17, 2024). These products work by capturing only the mRNA molecules, which have long "A" tails, and leaving untouched the other nucleic acid sequences. The Seeker and Visium array probes select for mRNAs and avoid DNA and proteins, for example.

The *10x v. NanoString* jury considered whether this poly-dT to poly-A binding was "specific" in the context of whether lost profits should be awarded for the direct competition between two products embodying the same Prognosys patent. *Id.* at 166 (claim language: "wherein a probe of the plurality of probes comprises a capture agent that specifically binds a target mRNA of the tissue sample"). The lost profits award indicates that the jury found poly-dT/poly-A binding to be "specific" in order to find that 10x's Visium embodies the Prognosys patent asserted at trial.

10x and Prognosys are similarly likely to win this infringement issue again on the merits on the related patents asserted here. Curio's capture probes indisputably do specifically bind one set of molecules to the exclusion of others. Curio disputes only the degree of selectivity—the probes select for mRNAs as a set but do not single out individual genes. Curio has not pointed to claim language in any Asserted Patent that requires targeting only a single gene. Instead, the claims and specification discuss binding "targets" and "nucleic acids" more broadly. As Curio notes, the patents sometimes refer in claims to "*a* nucleic acid" and the specification references "*a* biological molecule of interest." D.I. 49 ,¶¶ 117, 128. It is a well-established principle of claim construction that use of the indefinite article "a" means "one or more" rather than solely one. *E.g.*, *Baldwin Graphic Sys., Inc., v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008). Curio will not be able to show that the claims somehow exclude targeting "one or more" mRNAs or "one or more" types of nucleic acid rather than single genes.

11

Curio's citation to statements made in a wholly unrelated *inter partes* review proceeding is both inapt and incorrect. D.I. 49 ¶¶ 124–27. The IPR proceeding in question involved an unrelated 10x patent (U.S. Patent No. 10,240,197) with different inventors and a different written description, in a different field (single-cell sequencing rather than spatial analysis), with claims that do not even refer to "targets," "binding," or "specific binding." The dispute at issue on its face did not relate to whether the use of poly-dT sequences met a claim limitation of binding to a target, or binding in a specific manner. The issue was whether a reference describing only poly-dT sequences should be combined for obviousness purposes with a reference limited solely to targeting specific gene sequences rather than poly-A sequences. *Id.* ¶ 127. Words like "target," "binding agent" and "specific" are broad and well understood but may have modifiers (as in "genomic target binding site") that narrow their use in context. To the extent these ordinary words require claim construction in the asserted Prognosys patents, it is unclear what relevance the extrinsic evidence of an IPR proceeding on an unrelated patent in 2023 would have on the Prognosys claims.

Even if Curio's claim construction position were a winning one, the presence of even a non-frivolous argument for a contrary construction forecloses the possibility that 10x's infringement case is a sham under *Noerr-Pennington*. *See ERBE*, 629 F.3d at 1292.

### (2)    Curio's Non-Infringement Theory for Trekker Does Not Support Objective Baselessness

Curio also alleges that Plaintiffs' infringement read for Curio's Trekker product is objectively baseless. D.I. 49, ¶¶ 141-54. This argument fails on its face because it ignores what the patents require and Plaintiffs' actual infringement theory.

Curio argues that the "binding" limitation cannot be read onto Trekker because the barcoded oligonucleotide in Trekker diffuses into the nuclei instead of binding to an RNA in the

tissue sample. D.I. 49, ¶¶ 143, 151, 153. But the three patents that Trekker is accused of infringing on their face do not require the barcoded oligonucleotides to bind to an RNA of the tissue sample. The 022 Patent recites a binding agent that can "interact with" rather than bind to "a biological molecule of a tissue sample"; the 138 and 030 patents recite a "target-binding domain" for binding to a nucleic acid sequence, exactly the mechanism Trekker is accused to use—Trekker's probes have a handshake sequence that targets a specific nucleic acid sequence used in the single-cell sequencing process. Ex. 4 at 5, 9-10, 13-15, 18-19. Curio's counterclaims do not rebut Plaintiffs' actual infringement contentions, let alone establish that they are baseless. Curio's note that an individual 10x collaborator (who is not the inventor of the Asserted Patents) acknowledged the publication of "Slide-tags" (D.I. 49, ¶¶ 147-53) is irrelevant to whether Slide-tags (or Trekker) uses technologies claimed in the 10x/Prognosys patents.

Curio also cannot rely on its own failure to produce internal technical documents about Trekker to support a sham litigation claim. After Curio announced the Trekker product, 10x promptly listed Trekker in its April 1, 2024 identification of the accused products and provided infringement contentions for Trekker. Ex. 5; Ex. 4 at 1-2._Despite this, Curio has refused to meet its obligation to produce core technical documents related to Trekker. Ex. 6. 10x's infringement contentions illustrate how Trekker meets every claim limitation. Because Curio has failed to produce any internal-facing document concerning Trekker, 10x's contentions note that there are specific details about the granular operation of aspects of the product (like the specific mechanism that enables nuclei tagging) that cannot be included in contentions until Curio meets its discovery obligations. Ex. 4 at 10. Curio cannot rely on its own failure to produce documents to support its sham litigation claim.

###### (3)     Curio's Written Description Theory Does Not Support Objective Baselessness

In addition to its non-infringement arguments, Curio raises a single invalidity-related argument. Curio's theory is a stretch—Curio suggests that because the Patent Office at one point rejected a claim in a now-abandoned patent application for lack of written description support, claims with different language in the Asserted Patents must be invalid. This theory has numerous problems and cannot support a sham-litigation claim.

First, a mere contention that an asserted patent is invalid cannot make a litigation objectively baseless, because patents are presumed valid and can only be challenged with clear and convincing evidence. *United Food & Commer. Workers Unions & Employers Midwest Health Benefits Fund v. Novartis Pharms. Corp.*, 902 F.3d 1, 14 (1st Cir. 2018) (*citing Microsoft Corp. v. i4i Ltd.*, 564 U.S. 91, 95 (2011)). The presumption of validity "presents a problem" for antitrust plaintiffs like Curio alleging sham litigation. *Id.* The Patent Office necessarily considered the asserted claims in light of the written description and decided to allow them, rendering implausible objective baselessness arising merely from assertions of invalidity.

Second, Curio is wrong that the Patent Office concluded that the type of claim limitation Curio highlights lacks written description. While the Patent Office did at one point reject a claim containing the limitation "wherein each encoded probe of the plurality of encoded probes comprises the same biological target-binding agent" (D.I. 49, ¶ 132), that patent application was abandoned without 10x and Prognosys exhausting their opportunities to traverse the rejection (*Id.* ¶ 139). In subsequent proceedings on related patents, 10x and Prognosys successfully obtained claim language that is very similar to the proposed limitation that was previously in dispute. For example, and as Curio is aware, the asserted 138 Patent contains dependent claim 21 that adds the limitation: "The composition of claim 1, wherein the target-binding domain is identical for each

14

of the plurality of capture probes." D.I. 1-4, Ex. D at claim 21. The asserted 030 Patent contains a similar dependent claim ("the target nucleic-binding domain is identical for each of the plurality of capture probes."). D.I. 1-5, Ex. E at claim 29. Curio admits that an array with the same target-binding agent at each position could be an array with only poly-dT capture agents, like the accused product.

Far from establishing 10x's knowledge that such a claim limitation is unpatentable, the full prosecution history shows that these claims were thoroughly considered and are presumed valid in light of the written description.

Curio's defenses are highly flawed. But even if Curio's defenses were better than average, there can be no meaningful dispute that 10x and Prognosys enter this litigation with more than a mere chance of success. Curio cannot meet the standard for objective baselessness.

### b. Curio Cannot Plausibly Show 10x and Prognosys Are Indifferent to Winning on the Merits

As an independent ground for dismissing Curio's sham-based claims, Curio cannot show that 10x and Prognosys are litigating purely to abuse the process and without attempting to obtain judicial relief. Curio cites 10x's co-pending litigations against Curio and NanoString as somehow evidencing 10x's having no interest in winning on the merits. D.I. 49, ¶¶ 162–64. 10x's litigation record unquestionably shows the opposite. 10x has already successfully obtained judicial relief against Curio in Europe, where 10x won a preliminary injunction that bars Curio from infringing a 10x patent in three countries. 10x and Prognosys also obtained a jury verdict against NanoString that may result in a permanent injunction and other relief. D.I. 1, ¶ 16.

Curio also asserts "on information and belief" that 10x is indifferent to the outcome because the potential "compensable damages" to date are lower than the attorneys' fees. D.I. 49, ¶¶ 159–60. This is an unduly cramped view of the remedies sought by 10x and Prognosys in this

litigation. Consistent with the relief obtained in Europe against Curio, and currently sought against NanoString in this District, 10x seeks to stop the unauthorized use of its technology in competing products. While Curio is entitled to stay in business by designing and selling products that do not infringe 10x's patents, 10x is entitled to seek injunctions to prevent further infringement. The fact that 10x has sought injunctions against Curio relatively early in the sales cycle for Curio's products is evidence of 10x's good faith and corporate responsibility, not sham. 10x did not wait to maximize the potential past damages from infringement. 10x has sued to obtain a prompt adjudication on the merits and to keep end users from growing dependent upon an infringing product. Additionally, the Prognosys patents will not expire until 2031. Curio's ongoing infringement will result in increasingly large damages exposure to the extent Curio is not enjoined.

Curio has failed to plead a "sham" exception to *Noerr-Pennington* and none of the constitutionally-protected patent prosecution and enforcement activity in Curio's Answer can support an antitrust claim.

### 3.    Curio Does Not Allege Harm to Competition

As an independent reason to dismiss Curio's Sherman Act claims, Curio fails to plead any harm to the *competitive process* itself rather than harm to Curio as a potentially-liable accused infringer. "Conduct that merely harms competitors, however, while not harming the competitive process itself, is not anticompetitive." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 308 (3d Cir. 2007). "It is axiomatic that the antitrust laws were passed for the protection of competition, not competitors." *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 224 (1993)) (quotation omitted).

10x's decision to sue a competitor like Curio rather than grant a license is not anticompetitive. *In re Indep. Serv. Orgs. Antitrust Litig.*, 203 F.3d at 1325–28. Acquisition and enforcement of patents against competitors is potentially anticompetitive only in narrow

16

circumstances not present here, as in the case of fraudulent promises to license standard-essential patents, which could harm all competitors who have already been locked into an agreed-upon standard. *Broadcom*, 501 F.3d at 314. No such conditions are present or pled here. Curio does not plead that the Prognosys patents are essential to any standard, that competitors are locked out of adopting alternative technologies, or that 10x and Prognosys lied to a standard-setting organization.

Curio also cannot rely on the *Bio-Rad* case to support a contention of harm to competition from something other than Curio's flawed "sham litigation" theory. *Bio-Rad* involved an allegation of monopolization of a market for intellectual property—an upstream technology market—not solely a product market as Curio alleges. *Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, 483 F. Supp. 3d 38, 57–58 (D. Mass. 2020). The patent market in *Bio-Rad* was defined by the absence of alternative technologies. Here, Curio is not alleging attempted monopolization of a technology market, nor has Curio alleged that there are no substitutes for 10x's patents. As the court found in *Bio-Rad*, forcing a company like Curio to innovate an alternative to the asserted patents is procompetitive rather than unlawful. *Id.* at 63–64.

### B.   Curio Fails to State A Claim for Attempted Monopolization

Curio's Second Counterclaim repeats the same allegations from its First Counterclaim but alleges "attempted monopolization" by 10x alone rather than a conspiracy. To state a claim for attempted monopolization, a plaintiff must allege (1) that the defendant engaged in predatory or anticompetitive conduct that harmed competition, with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power. *See, e.g.*, *Broadcom*, 501 F.3d at 317. Curio has failed to plead the first and third elements. None of the acts Curio points to—patent acquisition, patent prosecution, or patent litigation—constitute anticompetitive conduct for the reasons discussed above. Nor does Curio's characterization of this lawful, procompetitive patent-related activity as a "scheme" rescue Curio's claims. *See 3Shape Trios A/S v. Align Tech., Inc.*, No. 18-

1332-LPS, 2019 WL 3824209, at *12 (D. Del. Aug. 15, 2019) (holding that the "contention that [defendant] engaged in a scheme consisting of acts otherwise insulated from antitrust scrutiny is insufficient to allege anticompetitive conduct under Section 2").

With respect to the third element, Curio has not alleged a dangerous probability of achieving monopoly power. Curio alleges that it has been harmed by the public perception that Curio may "suffer a similar fate" as NanoString, which lost a verdict of willful infringement and filed for bankruptcy. D.I. 49, ¶ 163. But if 10x were somehow able to obtain a monopoly by obtaining the same result against Curio that it obtained from the jury against NanoString, any monopoly so achieved would be a legal one, not subject to the Sherman Act. *See SCM Corp. v. Xerox Corp.*, 645 F.2d 1195, 1206 (2d Cir. 1981). Courts have rejected similar attempts to characterize meritorious patent litigation as supporting the "dangerous probability" prong. *See, e.g.*, *Bio-Rad Labs., Inc. v. 10X Genomics, Inc*., 483 F. Supp. 3d 38, 65 (D. Mass. 2020) (possibility of attaining market power through successful patent infringement litigation was not a dangerous probability of success for Section 2 purposes); C*hip-Mender, Inc. v. The Sherwin-Williams Co*., No. C 05-3465 PJH, 2006 WL 13058 (N.D. Cal. Jan. 3, 2006) (allegations of a dangerous probability of success insufficient where plaintiff alleged only that monopoly power would be achieved through success in patent infringement suit). The same result is warranted here.

Additionally, Curio has not pleaded facts needed to show that even if everything it said were true about 10x's ability to push Curio out of the alleged market with this litigation, 10x would have a dangerous probability of actually achieving a monopoly. Curio cites one academic article from May 2022 for an estimate of the number of institutions that have published papers using various spatial technologies. D.I. 49, ¶ 157. Curio conspicuously does not offer (1) current shares of 10x in any relevant market, (2) share information in sales or dollars for any competing products

rather than how many institutions chose at some point to publish, (3) an identification of which if any of the technologies listed in the academic article or referred to elsewhere in Curio's Answer actually participate in the alleged market, or (4) what other products and technologies have entered the market since 2022. Curio has failed to state a claim for attempted monopolization for these reasons in addition to its failure to identify any anticompetitive conduct.

### C.    Curio's State Law Claims Fail for the Same Reasons

Curio's Third and Fourth Counterclaims allege the same deficient antitrust theories against 10x and Prognosys, but do so under California's Cartwright Act and Unfair Competition Law. D.I. 49, ¶¶ 187–96. These counterclaims are wholly derivative of Curio's federal antitrust counterclaims and should also be dismissed, because there is no viable Sherman Act counterclaim. *See, e.g.*, *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, No. 13-MD-2445, 2017 WL 4642285, at *12 (E.D. Pa. Oct. 17, 2017) ("Multiple courts have dismissed state consumer protection and unfair trade practices claims that simply mirror deficient federal antitrust laws." (citing cases)); *Cnty. of Tuolomne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001) ("The analysis under California's antitrust law mirrors the analysis under federal law because the Cartwright Act . . . was modeled after the Sherman Act.").

## VI.   IN THE ALTERNATIVE, CURIO'S COUNTERCLAIMS SHOULD BE BIFURCATED AND STAYED

If Curio's sham-litigation counterclaims are not dismissed, they should be bifurcated from Plaintiffs' patent infringement claims and stayed. Courts may bifurcate issues and counterclaims "for convenience, to avoid prejudice, or to expedite and economize. . . ." Fed. R. Civ. P. 42(b). District courts "are afforded broad discretion to control and manage their dockets, including the authority to decide the order in which they hear and decide issues pending before them." *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1358 (Fed. Cir. 2008). District courts frequently exercise this

discretion through the "standard practice" of separating patent issues from related antitrust issues. *Eurand Inc. v. Mylan Pharms. Inc.*, No. 08-889-SLR, 2009 WL 3172197, at *1 (D. Del. Oct. 1, 2009) (citing *In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986)).

Bifurcation and stay of antitrust counterclaims is prudent here because "the outcome of litigating the patent infringement claims could further support, or disprove, Defendant's Counterclaims . . . [and] could support or eliminate Defendant's 'sham' litigation claim." *Abraxis Bioscience, Inc. v. Navinta LLC*, No. 07-1251 (JAP), 2008 WL 2967034, at *8 (D.N.J. July 31, 2008). Staying antitrust counterclaims for a later trial would "enhance the parties' right to jury trial by making the issues the jury must consider less complex." *Id.* (quoting *Warner Lambert Co. v. Purepac Pharm. Co*., No. CIV.A. 00-02053(JCL), 2000 WL 34213890, at *11 (D.N.J. Dec. 22, 2000)); *Otsuka Pharm. Co. v. Torrent Pharms. Ltd., Inc*., 118 F. Supp. 3d 646, 659–60 (D.N.J. 2015) (staying counterclaim because "resolution of the patent infringement issues may render Torrent's antitrust Counterclaim moot, thereby serving the interests of judicial economy").

To the extent it is not clear now that Curio's charges of sham litigation are implausible, Curio's counterclaims should be stayed because the ordinary course litigating Plaintiffs' patent claims will demonstrate that the merits of Plaintiffs' claims far exceed the range of objective baselessness. Both the Court's and the parties' resources will be conserved by postponing and likely eliminating the dispute over whether this is a sham litigation.

## VII.   CONCLUSION

For the reasons set forth above, Curio's First through Fourth Counterclaims should be dismissed.

Respectfully Submitted,

*Of Counsel*:

TENSEGRITY LAW GROUP LLP

Matthew Powers
Paul Ehrlich
Stefani Smith
Robert Gerrity
Li Shen
555 Twin Dolphin Drive
Suite 650
Redwood Shores, CA 94065
Tel: (650) 802-6000

Ronald J. Pabis
Kiley White
Joanna R. Schacter
1676 International Drive
Suite 910
McLean, VA 22102
Tel: (650) 802-6000
10x_Curio_Service@tensegritylawgroup.com

Dated: July 5, 2024

*/s/ Jason J. Rawnsley*

Frederick L. Cottrell, III (#2555)
Jason J. Rawnsley (#5379)
Alexandra M. Ewing (#6407)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
rawnsley@rlf.com
ewing@rlf.com

*Attorneys for Plaintiffs*

21