IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 10x GENOMICS, INC. and PROGNOSYS BIOSCIENCES, INC., <br><br> *Plaintiffs,* <br><br> *v.* <br><br> CURIO BIOSCIENCE, INC., <br><br> *Defendant.* | Civil Action No. 23-cv-1375-MN |

**PLAINTIFFS 10X GENOMICS, INC. AND PROGNOSYS BIOSCIENCES, INC.'S OPENING BRIEF IN SUPPORT OF PLAINTIFFS' RENEWED MOTION TO BIFURCATE AND STAY CURIO'S ANTITRUST COUNTERCLAIMS**

*Of Counsel:*

TENSEGRITY LAW GROUP LLP
Matthew Powers
Paul Ehrlich
Stefani Smith
Robert Gerrity
Li Shen
555 Twin Dolphin Drive
Suite 650
Redwood Shores, CA 94065
Tel: (650) 802-6000

Ronald J. Pabis
Kiley White
Joanna R. Schacter
1676 International Drive
Suite 910
McLean, VA 22102
Tel: (650) 802-6000
10x_Curio_Service@tensegritylawgroup.com

Dated: March 21, 2025

RICHARDS, LAYTON & FINGER, P.A.
Frederick L. Cottrell, III (#2555)
Jason J. Rawnsley (#5379)
Alexandra M. Ewing (#6407)
Gabriela Z. Monasterio (#7240)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
rawnsley@rlf.com
ewing@rlf.com
monasterio@rlf.com

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

I.  NATURE AND STAGE OF THE PROCEEDINGS ......................................................... 1

II.  INTRODUCTION AND SUMMARY OF ARGUMENT ................................................ 1

III.  STATEMENT OF FACTS ................................................................................................. 2

IV.  ARGUMENT ..................................................................................................................... 4

    A.  Bifurcation of Sham Litigation Counterclaims Is Common and Should Be
    Applied in This Case ................................................................................................. 4

    B.  The Court Should Stay Curio's Sham Litigation Counterclaims Because All
    Factors Favor a Stay ................................................................................................. 7

        1.  Staying Curio's Sham Litigation Counterclaims Will Simplify Issues for
        Trial or Obviate Trial Entirely ................................................................... 8

        2.  A Stay Will Conserve Resources by Potentially Avoiding the Most
        Burdensome Phases of Litigation ............................................................... 8

        3.  A Stay Will Not Unduly Prejudice or Tactically Disadvantage Curio .... 10

V.  CONCLUSION ................................................................................................................ 11

## TABLE OF AUTHORITIES

**Cases**

*3Shape Trios A/S v. Align Tech., Inc.*,
No. CV 18-1332-LPS, 2019 WL 3824209 at *5 (D. Del. 2019) ................................................ 3

*Apotex, Inc. v. Senju Pharm. Co.*,
921 F.Supp. 2d 308 (D. Del. 2013) ...................................................................................... 5, 7

*Ciena Corp. v. Corvis Corp.*,
210 F.R.D. 519 (D. Del. 2002) ................................................................................................ 5

*DSM IP Assets, B.V. v. Honeywell Int'l, Inc.*,
No. CV 23-675-WCB, 2024 WL 639991 (D. Del. Feb. 15, 2024) ................................... 4, 5, 6

*Eagle Pharms., Inc. v. Eli Lilly & Co.*,
No. CV 18-1121- MSG, 2018 WL 6201704 (D. Del. Nov. 27, 2018) ............................... 7, 10

*Eurand Inc. v. Mylan Pharms. Inc.*,
No. CIV.08-889-SLR, 2009 WL 3172197 (D. Del. Oct. 1, 2009) ................................... 5, 6, 8

*In re Innotron Diagnostics*,
800 F.2d 1077 (Fed. Cir. 1986) ............................................................................................... 4

*Ingevity Corp. v. BASF Corp.*,
No. 18-CV-1391-RGA, 2020 WL 1329604 (D. Del. Mar. 23, 2020) ....................................... 5

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
No. CV 18-452-WCB, 2019 WL 3943058 (D. Del. Aug. 21, 2019) ........................................ 9

*LKQ Corp. v. FCA United States LLC*,
No. CV 19-54-RGA-SRF, 2019 WL 13318371 (D. Del. Sep. 10, 2019) ................................. 5

*Masimo Corp. v. Philips Elec. N. Am. Corp.*,
No. CIV.A 09-80-JJF-MPT, 2010 WL 925864 (D. Del. Mar. 11, 2010) .............................. 6, 9

*Orthophoenix, LLC v. Dfine, Inc.*,
No. CV 13-1003-LPS, 2015 WL 1938702 (D. Del. Apr. 28, 2015) ......................................... 9

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
508 U.S. 49 (1993) ................................................................................................................... 4

*Shoulder Innovations, Inc. v. Catalyst Orthoscience Inc.*,
24-cv-266-JPM, D.I. 83 (D. Del. Dec. 19, 2024) ............................................................. 5, 8, 9

**Rules**

Fed. R. Civ. P. 42(b) ................................................................................................................... 4

## I.    NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement action filed by Plaintiffs 10x Genomics, Inc. ("10x") and Prognosys Biosciences, Inc. ("Prognosys") (collectively "Plaintiffs") against Curio Bioscience, Inc. ("Curio"). On June 20, 2024, Curio filed its Answer and First Amended Counterclaims to the Complaint, asserting four antitrust counterclaims against 10x and Prognosys solely based on sham litigation allegations. D.I. 49. Plaintiffs moved to dismiss these antitrust counterclaims, and alternatively moved to bifurcate and stay Curio's antitrust counterclaims. D.I. 51. On February 21, 2025, adopting Magistrate Judge Burke's Report and Recommendation, the Court granted Plaintiffs' motion to dismiss in part, dismissing Curio's conspiracy to monopolize claims against both 10x and Prognosys. D.I. 73, adopting D.I. 70. Currently, the only remaining antitrust claims in this case are sham litigation claims (the Second Counterclaim and part of the Fourth Counterclaim) against 10x. Pursuant to the Court's order, the parties met and conferred about bifurcation and stay and submitted a joint status report on March 21, 2025. D.I. 82.

Fact discovery will not close until June. The parties are still in the middle of reviewing and producing electronically stored information (ESI) and substantially completing document production. No depositions have been taken and expert discovery is months away.

## II.    INTRODUCTION AND SUMMARY OF ARGUMENT

1.    Plaintiffs move to bifurcate and stay Curio's remaining antitrust counterclaims. Curio's antitrust claims depend entirely on the merits of the patent infringement action because the only alleged anticompetitive conduct is the filing of this allegedly "sham" patent infringement lawsuit against Curio. The resolution of the patent infringement case may moot the antitrust counterclaims entirely or at least greatly simplify any subsequent antitrust case. Bifurcation and stay will also avoid costly antitrust discovery that ultimately may be irrelevant if Plaintiffs prevail in the patent infringement action, and bifurcation will avoid prejudice caused by introducing

1

antitrust evidence in a patent infringement case that risks jury confusion. Trying the patent infringement action first before addressing the antitrust counterclaims is the logical way to proceed.

2.      The Court has broad discretion to bifurcate the patent infringement claims and sham litigation counterclaims under Fed. R. Civ. Proc. 42(b). Bifurcation of Curio's remaining sham litigation counterclaims is appropriate because bifurcation will conserve judicial resources through the resolution of the patent infringement action, which likely will moot the antitrust counterclaims entirely.  Bifurcation will also enhance juror comprehension of the issues presented in the case and avoid prejudice because the jury will not need to weigh a complex patent infringement case and an antitrust case at the same time.

3.      The factors considered in this District also uniformly favor a stay of Curio's sham litigation counterclaims. First, staying the case will greatly simplify or moot the antitrust issues. Second, the stage of the case favors a stay because the most resource-intensive phases of the litigation lie ahead and a stay will alleviate the burden of conducting complex and costly antitrust discovery. Third, there is no undue prejudice to Curio from a stay. Indeed, before the Patent Trial and Appeal Board (PTAB) denied institution of Curio's first *inter partes* review ("IPR") petition, Curio indicated that it would move to stay this case pending its IPRs, indicating that Curio is in no hurry to have its day in court for its antitrust counterclaims.

## III.    STATEMENT OF FACTS

Plaintiffs 10x and Prognosys filed this patent infringement action against Curio on December 1, 2023. D.I. 1. In Plaintiffs' Complaint and infringement contentions, Plaintiffs asserted that Curio's Seeker and Trekker products infringe five asserted patents. Plaintiffs produced detailed claim charts demonstrating the infringement. D.I. 1, Exs. K-O.

In its First Amended Answer and Counterclaims, Curio asserted four antitrust counterclaims against 10x and Prognosys. The only anticompetitive conduct that Curio alleges is

that 10x and Prognosys procured patents and filed a lawsuit against Curio, which "cannot violate antitrust laws" unless one of the two narrow exceptions (sham litigation and fraud) applies. D.I. 70 at 13 (citing *3Shape Trios A/S v. Align Tech., Inc.*, No. CV 18-1332-LPS, 2019 WL 3824209 at *5 (D. Del. 2019)). Curio's counterclaims rely on the sham litigation exception, alleging that 10x should have known that Curio's products do not infringe, even though Plaintiffs had litigated similar issues in another case concerning patents from the same family and won (*see* D.I. 52 at 4-6, 10-11); 10x had also sued Curio for patent infringement in Europe and successfully obtained a preliminary injunction (*see* D.I. 52 at 6); and the PTAB found Plaintiffs' validity arguments persuasive and denied Curio's petition to institute IPR against an asserted patent (Ex. 1), all indicating that 10x's claims are meritorious.

Plaintiffs moved to dismiss Curio's antitrust counterclaims. D.I. 51. Magistrate Judge Burke recommended dismissing the First and Third antitrust counterclaims, as well as a part of the Fourth Counterclaim that allege a conspiracy between Prognosys and 10x because Curio did not allege any "actionable agreement" between 10x and Prognosys. D.I. 70 at 11.

This Court adopted Magistrate Judge Burke's report and recommendations and ordered the parties to meet and confer regarding bifurcation and stay. D.I. 73. The parties met and conferred and are now at an impasse. Plaintiffs maintain that Curio's antitrust counterclaims should be bifurcated and stayed. Curio at first responded that the entire case should be stayed pending final resolution of Curio's IPR petitions for the asserted patents (Ex. 2), and later stated that it no longer intended to bring a motion to stay after the PTAB denied institution of Curio's earliest-filed IPR petition on March 19, 2025 regarding the 022 Patent. Ex. 4; D.I. 82. The PTAB has not yet ruled on whether to institute Curio's other IPR petitions regarding the other asserted patents.

## IV.    ARGUMENT

### A.    Bifurcation of Sham Litigation Counterclaims Is Common and Should Be Applied in This Case

Federal Rule of Civil Procedure 42(b) empowers the court to order a separate trial of issues, claims, and counterclaims "[f]or convenience, to avoid prejudice, or to expedite and economize." As the Federal Circuit noted, bifurcating "patent issues and those raised in an antitrust counterclaim" has been a "now-standard practice." *In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986); *see also DSM IP Assets, B.V. v. Honeywell Int'l, Inc*., No. CV 23-675-WCB, 2024 WL 639991 at *5 (D. Del. Feb. 15, 2024) (citing the "now-standard practice" language in the *Innotron* case).

Antitrust counterclaims based on the sham litigation exception to the *Noerr-Pennington* doctrine are particularly suitable for bifurcation. To meet this narrow exception, Curio bears the burden to show the lawsuit is "objectively baseless in the sense that no reasonable litigant could … conclude that the suit is reasonably calculated to elicit a favorable outcome," and that subjectively the lawsuit conceals an attempt to interfere directly with the business relationships of a competitor through the use of the governmental process as an anticompetitive weapon. D.I. 70 at 13-14 (citing *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc*., 508 U.S. 49, 56-61 (1993)). This means that this type of antitrust counterclaims automatically fails when the patentee wins the patent infringement lawsuit, because the "objective baselessness" test is not met.

As the court in the *DSM IP Assets* case recognized:

> The issues to be decided in assessing a claim for infringement of a particular patent overlap considerably with the issues to be decided in assessing a claim of sham litigation based on that patent. The question whether the patent infringement claim is meritless requires much the same inquiry that is involved in determining whether there is patent infringement. And the strength of the infringement claim is clearly relevant to an inquiry into the patentee's subjective beliefs. **For that reason, it is likely that resolution of the patent infringement claim will significantly simplify the claims arising from the sham litigation allegation and may even**

4

**moot those claims altogether**. A decision that the patent has been infringed, for example, would effectively dispose of any claim that the infringement theory was baseless.

*DSM IP Assets,* at *5 (emphasis added).

Judges in this district have routinely granted motions to bifurcate the patent infringement claims and sham litigation counterclaims and to stay the sham litigation counterclaims until the resolution of the patent infringement claims. *See Ingevity Corp. v. BASF Corp.*, No. 18-CV-1391-RGA, 2020 WL 1329604 at *3 (D. Del. Mar. 23, 2020); *Eurand Inc. v. Mylan Pharms. Inc.*, No. CIV.08-889-SLR, 2009 WL 3172197 at *2 (D. Del. Oct. 1, 2009) (bifurcating the patent infringement action from the sham litigation counterclaims and patent misuse affirmative defense); *LKQ Corp. v. FCA United States LLC*, No. CV 19-54-RGA-SRF, 2019 WL 13318371 at *10-11 (D. Del. Sep. 10, 2019) (granting motion to bifurcate and stay antitrust and RICO counterclaims alleging sham litigation); Ex. 3, *Shoulder Innovations, Inc. v. Catalyst Orthoscience Inc.*, 24-cv-266-JPM, D.I. 83 (D. Del. Dec. 19, 2024) (bifurcating and staying sham litigation, tortious interference, and abuse of process counterclaims from patent infringement claims); *Apotex, Inc. v. Senju Pharm. Co.*, 921 F.Supp. 2d 308, 313-15 (D. Del. 2013); *see also DSM IP Assets,* 2024 WL 639991, at *6 (noting that courts "frequently order separate trials in such cases and stay the antitrust claims pending the resolution of related patent infringement claims") (collecting cases).

Bifurcation of Curio's sham litigation counterclaims from Plaintiffs' patent infringement claims will "avoid prejudice, conserve judicial resources, and enhance juror comprehension of the issues presented in the case." *Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519, 520 (D. Del. 2002). The Court's interest in juror comprehension weighs in favor of bifurcation in this case. This is a patent infringement case between two competitors that involves complex technologies relating to the spatial detection of a large amount of molecules in biological samples, and the jury will need to hear evidence to decide whether these patents are valid and infringed and determine the amount

of damages owed to Plaintiffs. If Curio's antitrust counterclaims are tried at the same time, the jury will also have to consider "intricate factual and economic analyses" regarding "the alleged relevant markets before and after … [the] purported anticompetitive behavior," "actual and potential shares in such markets," "barriers to entry in such markets," antitrust damages, and other antitrust considerations. *Masimo Corp. v. Philips Elec. N. Am. Corp.*, No. CIV.A 09-80-JJF-MPT, 2010 WL 925864 at *2 (D. Del. Mar. 11, 2010). "To add such issues to the patent case 'would pose a difficult task for even the most astute of juries.'" *Id.* As indicated in its counterclaims, Curio will also attempt to introduce evidence about other litigations that involve 10x and/or Prognosys (even though those other litigations are not relevant to Curio's sham litigation claim, which is directed only at this litigation), further complicating trial and leading to jury confusion. D.I. 49 ¶¶ 162-63.

Bifurcation of Curio's sham litigation claims will also conserve judicial resources. As analyzed in the *DSM IP Assets* case above (and as further explained below in the stay factors analysis), if the jury decides that Plaintiffs' patents are valid and infringed, the sham litigation claim is entirely mooted because Plaintiffs' claims are not objectively baseless. *DSM IP Assets,* at 2024 WL 639991, *5-6. In any instance, the determination of the validity, infringement, and scope of Plaintiffs' asserted patents will affect and simplify issues in Curio's sham litigation claims.

Bifurcation will also avoid prejudice to Plaintiffs. As the *Masimo* court noted, Curio's allegations of monopolization could "bias the jury when it evaluates [Plaintiffs'] patent claims." *Masimo,* 2010 WL 925864, at *2; *see also Eurand*, 2009 WL 3172197, at *2 ("Allowing defendants to introduce [antitrust and patent misuse] evidence will serve only to distract the jury from the complicated, primary, and potentially dispositive issue of patent infringement.").

On the other hand, bifurcation and stay do not substantially prejudice Curio. Curio may argue that it is a smaller company (although it has been acquired by a much bigger international corporation) that cannot afford to have its days in court be delayed. But Curio's sham litigation claims rise and fall with the patent infringement claims: Curio will either lose in the patent infringement action and its sham litigation claim will fail as well, or it will win in the patent infringement action and it can then litigate its counterclaims without facing patent infringement damages. There is little prejudice to Curio to separately litigate its claims after the patent infringement action is resolved.

Therefore, consistent with this Court's long-standing precedent of bifurcating antitrust (and especially sham litigation) counterclaims from patent infringement claims, bifurcation in this case is appropriate because it provides substantial benefit to the parties, the Court, and the jury, and does not impose undue prejudice.

## B.    The Court Should Stay Curio's Sham Litigation Counterclaims Because All Factors Favor a Stay

The Court weighs three factors in determining whether to stay a case: "(1) whether a stay will simplify the issues for trial, (2) whether discovery is complete and a trial date has been set, and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage." *Eagle Pharms., Inc. v. Eli Lilly & Co.*, No. CV 18-1121- MSG, 2018 WL 6201704, at *2 (D. Del. Nov. 27, 2018) (*citing Apotex*, 921 F.Supp. 2d at 313). As explained above, Court of this District have frequently bifurcated and stayed sham litigation and other antitrust counterclaims pending the resolution of the patent infringement claims.

7

**1.    Staying Curio's Sham Litigation Counterclaims Will Simplify Issues for Trial or Obviate Trial Entirely**

Staying Curio's sham litigation counterclaims until the resolution of the patent infringement claims would greatly simplify the issues for trial. To prove a sham litigation claim under the sham litigation exception of the *Noerr-Pennington* doctrine, the defendant has the burden to show that "the infringement suit is 'objectively baseless' to have any chance in succeeding on its theories of antitrust violation." *Eurand*, 2009 WL 3172197 at \*2. A finding that Plaintiffs' patents are valid and infringed would completely moot Curio's sham litigation antitrust counterclaims. Even if Curio prevails on the patent infringement claim, trying the patent infringement and validity issues first would greatly simplify issues in the subsequent antitrust action. As the *Shoulder Innovations* court notes, "inquiry into patent infringement informs whether the patent claim is meritless or 'objectively baseless' under *Noerr-Pennington*" and "inquiry into the strength of a patent claim is 'clearly relevant' to the subjective prong of *Noerr-Pennington*." Ex. 3, *Shoulder Innovations,* at 4-5. As a specific example, Curio contends that the patent infringement claim is "objectively baseless" because 10x "knew that the Chee specification does not support the Asserted Patents." D.I. 49, ¶¶ 131-40. If the Court or the jury determined that the specification does provide sufficient support, even if Curio is ultimately found not to infringe, this validity determination informs the Court that 10x's litigation position is not objectively baseless. Therefore, regardless of the outcome of the patent infringement action, resolving the patent infringement action first would completely obviate or at least greatly simplify Curio's sham litigation antitrust claims.

**2.    A Stay Will Conserve Resources by Potentially Avoiding the Most Burdensome Phases of Litigation**

Discovery is ongoing. The parties have not substantially completed their document productions and have not served final contentions. No depositions have been taken, and fact

8

discovery does not close until June 2025. Expert discovery is half a year away. A trial is set to start in May 2026, more than a year from now. The "far-off nature of the trial and the ongoing nature of discovery" weigh in favor of staying Curio's counterclaims. Ex. 3, *Shoulder Innovations* at 5; *see also IOENGINE, LLC v. PayPal Holdings, Inc.*, No. CV 18-452-WCB, 2019 WL 3943058 at *5 (D. Del. Aug. 21, 2019) (stays are favored when the "most burdensome stages of the cases—completing discovery, preparing expert reports, filing and responding to pretrial motions, preparing for trial, going through the trial process, and engaging in post-trial motions practice—all lie in the future.").

A stay is especially beneficial for antitrust claims because it releases the parties, especially Plaintiffs, from the burden of voluminous and complex fact discovery relating to antitrust claims. As the *Masimo* case noted, in addition to the objective and subjective baselessness tests to satisfy the sham litigation exception of the *Noerr-Pennington* doctrine, the parties will have to seek antitrust discovery related to "intricate factual and economic analyses" regarding "the alleged relevant markets before and after … [the] purported anticompetitive behavior," "actual and potential shares in such markets," "barriers to entry in such markets," antitrust damages, and other antitrust considerations. *Masimo*, 2010 WL 925864 at *6. The parties may need to subpoena (and thus burden) various non-party companies that have products in the same field for information about the relevant market(s) and products. The parties would also have to engage antitrust experts to provide antitrust liability and antitrust damages analyses. The parties and the Court may also need to address antitrust issues during the summary judgment phase. These expensive discovery and litigation efforts may ultimately become irrelevant if Plaintiffs prevail on their patent infringement claims. *Orthophoenix, LLC v. Dfine, Inc.*, No. CV 13-1003-LPS, 2015 WL 1938702 at *1 (D. Del. Apr. 28, 2015) (staying the antitrust counterclaims because "there will also likely

be substantial and expensive discovery that is related solely to antitrust issues, and which may prove to be largely or entirely unnecessary after resolution of the patent issues"). Staying Curio's sham litigation claims therefore will greatly conserve resources for both the Court and the parties. *Eagle Pharms.*, 2018 WL 6201704 at *3 ("a delay of antitrust specific discovery—which courts have recognized can be 'voluminous, time-consuming, and expensive' … will avoid potential waste if the claims in the antitrust action are narrowed or mooted by the resolution of the patent infringement action").

### 3.     A Stay Will Not Unduly Prejudice or Tactically Disadvantage Curio

As explained above, the lack of bifurcation and stay would prejudice Plaintiffs because Plaintiffs would have to engage in expensive antitrust discovery and try sham litigation claims in a patent infringement action that would distract and confuse the jury and may even prejudice the jury against Plaintiffs' patent infringement claims. Staying the antitrust counterclaims will benefit all parties, the Court, and non-parties from whom antitrust discovery may otherwise be sought because the merits of Plaintiffs patent litigation claims can be evaluated before anyone spends the time or resources necessary for complex antitrust discovery.

A stay of Curio's antitrust counterclaims will not impose undue prejudice on or a tactical disadvantage to Curio. Curio will still be able to obtain discovery on overlapping issues relevant to both patent infringement and its counterclaims with a stay in place. *Eagle Pharms.,* 2018 WL 6201704 at *3. And, if Curio prevails on the patent litigation claims, the parties (and the Court) can then proceed to litigating Curio's antitrust counterclaims with greater information and clarity regarding the merits of the patent litigation that is at the core of Curio's antitrust allegations. Before the PTAB recently denied institution of one of Curio's IPR petitions, Curio itself also proposed to stay this case (including Curio's antitrust counterclaims) pending its IPRs (Ex. 2), further

10

indicating that Curio is in no hurry to try its antitrust counterclaims and will not be unduly prejudiced by a stay.

Additionally, Plaintiffs timely filed their original motion to bifurcate (D.I. 52) and this renewed motion, and the timing of the motion does not provide any tactical advantage. The Court ordered the parties to meet and confer regarding bifurcation and stay issues on February 21, 2025. The parties met and conferred on March 6, 2025. Plaintiffs provided a draft joint status report regarding bifurcation and stay on March 10. On March 17, Curio informed Plaintiffs that it intended to seek a stay of the litigation pending its IPRs and included that in the draft joint status report. The parties met and conferred on March 18, and Plaintiffs updated their positions in the joint status report accordingly on the same day. On March 21, after receiving the first IPR institution denial, Curio stated that it no longer intended to move to stay pending IPRs. Ex. 4. The parties filed the joint status report on March 21 (D.I. 82), and this motion is filed on the same day.

## V.    CONCLUSION

For the reasons set forth above, Plaintiffs 10x and Prognosys respectfully request that the Court stay Curio's Second and Fourth Counterclaims until the resolution of Plaintiffs' patent infringement claims.

Respectfully Submitted,

| | |
|---|---|
| *Of Counsel:* | RICHARDS, LAYTON & FINGER, P.A. |
| | |
| TENSEGRITY LAW GROUP LLP | */s/ Jason J. Rawnsley* |
| Matthew Powers | Frederick L. Cottrell, III (#2555) |
| Paul Ehrlich | Jason J. Rawnsley (#5379) |
| Stefani Smith | Alexandra M. Ewing (#6407) |
| Robert Gerrity | Gabriela Z. Monasterio (#7240) |
| Li Shen | RICHARDS, LAYTON & FINGER, P.A. |
| 555 Twin Dolphin Drive | 920 North King Street |
| Suite 650 | Wilmington, DE 19801 |
| Redwood Shores, CA 94065 | (302) 651-7700 |
| Tel: (650) 802-6000 | cottrell@rlf.com |
| | rawnsley@rlf.com |
| Ronald J. Pabis | ewing@rlf.com |
| Kiley White | monasterio@rlf.com |
| Joanna R. Schacter | |
| 1676 International Drive | |
| Suite 910 | |
| McLean, VA 22102 | |
| Tel: (650) 802-6000 | |
| 10x_Curio_Service@tensegritylawgroup.com | |
| | |
| Dated: March 21, 2025 | *Attorneys for Plaintiffs* |

12