## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 10x GENOMICS, INC. and PROGNOSYS BIOSCIENCES, INC.,<br><br>*Plaintiffs,*<br><br>v.<br><br>CURIO BIOSCIENCE, INC., TAKARA BIO USA, INC., and TAKARA BIO USA HOLDINGS, INC.<br><br>*Defendants.* | Civil Action No. 23-1375-MN<br><br>**HIGHLY CONFIDENTIAL –<br>ATTORNEYS' EYES ONLY** |

## <u>DEFENDANTS' OPENING BRIEF IN SUPPORT OF<br>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

Date: December 16, 2025

Kevin B. Collins (admitted *Pro Hac Vice*)
Jeffery B. Elikan (admitted *Pro Hac Vice*)
Eric R. Sonnenschein (admitted *Pro Hac Vice*)
Douglas A. Behrens (admitted *Pro Hac Vice*)
Priscilla Dodson (admitted *Pro Hac Vice*)
Laura Martin (admitted *Pro Hac Vice*)
Allyson Corigliano (admitted *Pro Hac Vice*)
Adam Smith (admitted *Pro Hac Vice*)
Robert McMullen (admitted *Pro Hac Vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001-4956
Tel: (202) 662-6000
kcollins@cov.com
jelikan@cov.com
esonnenschein@cov.com
dbehrens@cov.com
alazerow@cov.com
mkudzin@cov.com
pdodson@cov.com
lmmartin@cov.com
acorigliano@cov.com
adsmith@cov.com
rmcmullen@cov.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market Str., 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Ian M. Hurst (admitted *Pro Hac Vice*)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
ihurst@cov.com

*Attorneys for Defendants Curio Bioscience,
Inc., Takara Bio USA, Inc., and Takara Bio
USA Holdings, Inc.*

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ............................................................................................................ 1

II.     NATURE AND STAGE OF THE PROCEEDINGS .......................................................... 2

III.    CURIO'S TREKKER PRODUCT ................................................................................... 4

IV.     SUMMARY OF ARGUMENT ...................................................................................... 12

V.      LEGAL STANDARDS ................................................................................................. 13

VI.     TREKKER DOES NOT INFRINGE THE ASSERTED CLAIMS BECAUSE IT
        LACKS THE REQUIRED "BINDING AGENT" OR "CAPTURE PROBE" ................ 14

        A.    Trekker does not "bind" to a "biological molecule of interest" ............................ 14

        B.    It is undisputed that Trekker only directly binds to a synthetic sequence in
              single-cell platforms, which is not a "biological molecule of interest" as a
              matter of law ................................................................................................ 16

        C.    To the extent Plaintiffs assert infringement under the doctrine of
              equivalents, it is foreclosed as a matter of law ...................................................... 21

VII.    CONCLUSION ............................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*,
811 F.3d 1334 (Fed. Cir. 2016)......................................................................................13

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).......................................................................................................12

*Arcelik, A.S. v. E.I. Du Pont de Nemours & Co.*,
619 F. Supp. 3d 473 (D. Del. 2022)...............................................................................12

*Bayer AG v. Elan Pharm. Rsch. Corp.*,
212 F.3d 1241 (Fed. Cir. 2000).....................................................................................13

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).................................................................................................12, 13

*Eye Therapies, LLC v. Slayback Pharma, LLC*
141 F.4th 1264 (Fed. Cir. 2025) ....................................................................................19

*Johnston v. IVAC Corp.*,
885 F.2d 1574 (Fed. Cir. 1989)................................................................................13, 15

*Lockheed Martin Corp. v. Space Sys./Loral, Inc.*,
324 F.3d 1308 (Fed. Cir. 2003).....................................................................................13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986).......................................................................................................12

*Mirror Worlds Techs., LLC v. Meta Platforms, Inc.*,
122 F.4th 860 (Fed. Cir. 2024) ......................................................................................13

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
520 U.S. 17 (1997).........................................................................................................21

**Other Authorities**

Fed. R. Civ. P. 56(a), (c).........................................................................................................12

## I.    INTRODUCTION

Plaintiffs 10x Genomics Inc. and Prognosys Biosciences, Inc ("Plaintiffs") have sued Defendants Curio Bioscience, Inc., Takara Bio USA, Inc., and Takara Bio USA Holdings, Inc. ("Curio" or "Defendants") for patent infringement. Plaintiffs contend, *inter alia*, that Curio's Trekker product, a kit that places a short oligonucleotide sequence in the nuclei of cells, infringes three patents relating to assays for determining spatial distributions of biological molecules in tissue samples.

Curio now moves for partial summary judgment that Trekker does not infringe these patents as a matter of law because the undisputed facts establish that Trekker does not have a "binding agent" or "capture probe," as required by all claims of the Asserted Patents. The Court's construction requires that such "binding agents" or "capture probes" bind to a "biological molecule of interest," which Trekker does not do.

Plaintiffs concede that the Trekker oligos (which Plaintiffs allege are the required "binding agents" or "capture probes") do not bind to the nucleus of any cell, and offer no evidence that the Trekker oligos bind to any molecule in a biological sample. It is also undisputed that Trekker only binds to synthetic sequences that exist outside of any sample, in the microwells or partitions of independent analytical systems called single-cell platforms—and that these independent systems are not even introduced until after dissociation of the biological tissue sample under study.

The synthetic sequences in these single-cell platforms are not "biological molecules of interest" within the meaning of the Asserted Patents, because they exist outside of the biological sample being studied and are not the subject of study in the Trekker workflow. The specification makes clear that a "biological molecule of interest" is a target molecule in a biological sample under study. The synthetic sequences of single-cell platforms instead function as *probes*—tools used to assay the biological molecules of interest—but are not themselves "biological molecules

of interest." Indeed, the specification specifically distinguishes biological molecules of interest from probes, explaining that while biological molecules of interest are targets that are detected in the biological sample with the described assays, probes are tools used to detect a biological molecule of interest. Thus, as a matter of law, Plaintiffs' reliance on Trekker's binding to synthetic sequences in single-cell platforms does not meet the requirement that an accused product bind to a "biological molecule of interest." The Court should grant partial summary judgment that Trekker does not infringe any Asserted Patent.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs filed a complaint alleging patent infringement on December 1, 2023. D.I. 1. Curio filed an answer and first amended counterclaims on June 20, 2024. D.I. 49. Plaintiffs allege infringement based on two product lines sold by Curio: Seeker and Trekker. *See, e.g.,* D.I. 1; D.I. 26 (Notice of Service). Only Trekker is at issue in this motion; Curio is not moving for summary judgment of non-infringement on the Seeker product.

Plaintiffs allege that Trekker infringes claims from three related patents, U.S. Patent Nos. 10,480,022 (the "'022 patent"), 11,549,138 (the "'138 patent"), and 11,761,030 (the "'030 patent") (the "Asserted Patents"),[1] as shown below.

| Asserted Patent | Asserted Claims |
| --- | --- |
| '022 patent | 2, 7, 14, 15, 19, 28 |
| '030 patent | 3, 6, 24 |
| '138 patent | 5, 20 |

---

[1] The '022, '030, and '138 patents share a common specification. *See* Ex. A, Quackenbush Opening ¶¶ 41–42; Ex. B, Puglisi Rebuttal ¶ 49. Curio cites to the '022 patent as representative unless specified otherwise.

All Asserted Claims require either a "binding agent" or "capture probe." Claim 2 of the '022 patent, shown below, is representative.

| **Claim 2 of the '022 Patent** |
| --- |
| 1. A method for determining a spatial location of a biological molecule of a tissue sample comprising: |
| (a) providing a plurality of beads, wherein the plurality of beads comprise a plurality of **binding agents**, wherein a binding agent of the plurality of **binding agents** (i) comprises a coding identifier having a nucleic acid sequence and (ii) is configured to interact with a biological molecule of a tissue sample, wherein the coding identifier corresponds to a location at which the **binding agent** interacts with a biological molecule of a tissue sample; |
| (b) contacting the plurality of beads with the tissue sample such that the **binding agent** interacts with the biological molecule; and |
| (c) using the coding identifier to identify the location where the **binding agent** interacted with the biological molecule, thereby determining a spatial location of the biological molecule of the tissue sample. |
| 2. The method of claim 1, wherein the plurality of beads is provided on a substrate surface. |

On August 27, 2025, the Court held a Markman hearing and construed various terms, including "binding agent" and "capture probe." D.I. 225 at 100. The Court construed both terms to have the same meaning—an agent that, *inter alia*, binds to a "biological molecule of interest."

| **Claim Terms** | **Court's Construction** |
| --- | --- |
| "binding agent[s]," "capture agent[s]," and "capture probe[s]" ('022, '138, and '030 patents) | plain and ordinary meaning, which is "an agent that binds to a ***biological molecule of interest*** with high affinity and/or complementarity" (emphasis added) |

The parties then exchanged expert reports on the issue of infringement, consisting of reports from Plaintiffs' expert Dr. John Quackenbush and Defendants' expert Dr. Joseph Puglisi. *See* Ex. A, Quackenbush Opening; Ex. C, Quackenbush Reply; Ex. B, Puglisi Rebuttal. Dr.

Quackenbush and Dr. Puglisi were then deposed on December 5 and December 13–14,[2] respectively.

Curio now moves for partial summary judgment of non-infringement on the ground that the undisputed facts establish that Trekker does not have a "binding agent" or "capture probe," because Trekker does not bind to a "biological molecule of interest" within the meaning of the Asserted Patents.

## III.    CURIO'S TREKKER PRODUCT

Researchers have long sought ways to detect molecules of interest, such as mRNA, within biological tissue samples. One widely used approach for studying gene expression is single-cell sequencing. *See* Ex. B, Puglisi Rebuttal ¶¶ 72–74. Curio's Trekker product is an optional enhancement to these single-cell platforms that preserves spatial information (*i.e.*, where the molecule came from in the tissue), allowing for analyses of gene expression in relation to tissue architecture.

Specifically, Trekker is a kit that tags nuclei in a biological tissue sample.[3] Ex. B, Puglisi Rebuttal ¶ 106 (citing CURIO00037632–33). Trekker is not a standalone system, but rather an optional addition to independent systems known as "single-cell" platforms, which are responsible for RNA sequencing. Ex. B, Puglisi Rebuttal ¶ 88. These independent single-cell platforms separate cells in tissue samples so that researchers can see which genes are being expressed in each individual cell. By integrating Trekker with these existing single-cell platforms, researchers can

---

[2] The final transcript of the deposition of Dr. Puglisi was not available as of the date of this motion. Curio is submitting excerpts from the rough transcript of that deposition, and will provide excerpts of the final transcript when it becomes available.

[3] Plaintiffs state that their infringement analysis of the "Trekker Version U" product is representative and "appl[ies] equally" to the entire Trekker product line. *See, e.g.*, Ex. A, Quackenbush Opening ¶ 386; ███████████████████████████. Curio does the same unless otherwise stated.

preserve the high molecular sensitivity of data from single-cell platforms while also acquiring spatial data. *Id.*

The Trekker kit includes a tile coated with a layer of microscopic beads (shown below).



Ex. A, Quackenbush Opening ¶ 267 (citing CURIO00002448 at 2451); Ex. B, Puglisi Rebuttal ¶ 87.

The beads are attached to short nucleic-acid sequences called oligonucleotides ("oligos"). Ex. A, Quackenbush Opening ¶¶ 268, 412; Ex. B, Puglisi Rebuttal ¶ 89; Ex. N, Trekker Product Note at CURIO00064832. Each oligo contains a "spatial barcode"—a segment of the sequence that can be traced back to a specific bead on the tile. Ex. B, Puglisi Rebuttal ¶ 87 (citing CURIO00001882); Ex. N, Trekker Product Note at CURIO00064832.

Using Trekker involves a sequence of steps, referred to as a "workflow," whose general steps are identified below.



Ex. B, Puglisi Rebuttal ¶ 90 (citing CURIO00064830 at 64832); Ex. K, Trekker Version U User Guide at CURIO00002452.

The first step is melting a biological tissue sample on the Trekker tile. Researchers then expose the tile to ultraviolet light, which photocleaves the oligos, breaking their attachment to the beads. Ex. A, Quackenbush Opening ¶ 268; Ex. B, Puglisi Rebuttal ¶ 89; Ex. N, Trekker Product Note at CURIO00064832. Some of the oligos will then diffuse into, and reside in, nuclei—thus "tagging" them with the spatial barcode. Ex. B, Puglisi Rebuttal ¶¶ 87, 89, 177 (citing CURIO00001882); Ex. N, Trekker Product Note at CURIO00064832. But there is no evidence that Trekker oligos bind to any nucleus, or any molecule in the tissue sample. Ex. C, Quackenbush Reply ¶ 146 ("I have not opined that Trekker oligos bind to a cell nucleus."); ███ ███████ ██████████. They simply diffuse into and remain unbound in the nucleus. Ex. B, Puglisi Rebuttal ¶¶ 89, 166–67. ████████████████████

███████████████████████████████████

Following this diffusion step, the next step in the Trekker workflow is to isolate nuclei from the tissue for further analysis. The isolation step involves dissociating the tissue sample from the tile—thereby destroying the tissue sample—and transferring the isolated nuclei into a distinct and independent system called a single-cell analysis platform. Ex. B, Puglisi Rebuttal ¶¶ 155, 193, 361, 367; Ex. K, Trekker Version U User Guide at CURIO00002451-52. These single-cell platforms allow for subsequent analysis of the isolated nuclei, *i.e.*, "single-nucleus capture and snRNA-seq analysis [single nucleus RNA sequencing]." Ex. K, Trekker Version U User Guide at CURIO00002451. SnRNA-seq analysis allows researchers to capture and read RNA inside of a nucleus to measure gene expression. Ex. B, Puglisi Rebuttal ¶ 72 (discussing related snRNA-seq analysis). This process is illustrated below.



Ex. N, Trekker Product Note at CURIO00064832.

There are many single-cell analysis platforms on the market, which isolate individual nuclei (or individual cells) in either microwells or droplet partitions. Ex. A, Quackenbush Opening ¶¶ 271, 408, 415-18; Ex. B, Puglisi Rebuttal ¶¶ 73–74, 88. Thus, during the isolation step of the Trekker workflow in which nuclei are transferred to the single-cell analysis platform, each isolated nucleus that had previously been in the tissue sample on the Trekker tile is placed into an individual

microwell or encapsulated in an individual droplet partition. Ex. A, Quackenbush Opening ¶¶ 416–18, ▮ ; Ex. B, Puglisi Rebuttal ¶ 151; Ex. C, Quackenbush Reply ¶ 38.

Because the purpose of single-cell platforms is to study gene expression, single-cell platforms target and capture mRNA in cells or nuclei. Ex. B, Puglisi Rebuttal ¶ 90; Ex. C, Quackenbush Reply ¶ 38 (stating that "molecules to be analyzed by the single cell sequencing platform" are "mRNA molecules"). To do this, single-cell platforms use "capture sequences" that bind to mRNA in each isolated cell or nucleus. *See* Ex. A, Quackenbush Opening ¶ 415. An example of such capture sequences is illustrated below, taken from a figure depicting the microdroplet-based, single-cell product called Chromium.



Ex. A, Quackenbush Opening ¶ 418 (figure excerpted from report).

As illustrated above, Chromium uses beads containing synthetic oligos with "capture sequences" (*e.g.*, "Capture Sequence 1" and "Capture Sequence 2" above). *See* Ex. A, Quackenbush Opening ¶¶ 415–16, 418; Ex. B, Puglisi Rebuttal ¶ 90. During the process of Chromium's workflow, these synthetic capture sequences dissociate from the bead and bind to mRNA. *Id.*

When Chromium is used in conjunction with Trekker, some of these capture sequences will also bind to Trekker oligos present in the nucleus that has been isolated.[4] *Id.* But in this process, the Trekker oligos and the mRNA do not bind to each other. Ex. A, Quackenbush Opening ¶¶ 431, 435. For this reason, Plaintiffs' expert admits that "the Trekker oligo is not directly attached to the mRNA target" at any point in the Trekker workflow, including during the single-cell workflow. Ex. A, Quackenbush Opening ¶ 435. ███████████████

███████████████



---

[4] Curio disputes that any such binding is with high affinity and/or complementarity—but the degree to which the synthetic capture sequences of Chromium or any other single-cell platform bind to Trekker is not material to this motion and not need be considered to resolve the motion.

9



Following this step in which the isolated nuclei are introduced into the single-cell platform, the mRNA and Trekker oligos are amplified (copied) and sequenced. Ex. B, Puglisi Rebuttal ¶ 72 (citing Quackenbush Opening ¶ 411); ████████████████████ Because both the mRNA and Trekker oligos (with the spatial barcodes) are sequenced, researchers can analyze both gene expression (given the binding between mRNA and synthetic capture sequences of the single-cell platform) and spatial information (given the binding between Trekker oligos and synthetic capture sequences of the single-cell platform). Ex. B, Puglisi Rebuttal ¶ 90.

The synthetic capture sequences in single-cell platforms described above are not found in nature; they are designed by engineers. Ex. B, Puglisi Rebuttal ¶ 147; Ex. C, Quackenbush Reply ¶ 38 (stating that capture sequences in single-cell platforms are "synthetic"); █████████████

████████████. Nor are these synthetic single-cell platforms part of, or ever present in, a biological tissue sample. Ex. B, Puglisi Rebuttal ¶¶ 150, 158; ███████████████████████. They instead exist in partitions or microwells outside of the tissue sample—and are not introduced into the Trekker workflow until after the tissue sample has been removed from the slide and dissociated. Ex. B, Puglisi Rebuttal ¶ 155; ██████████████████████████; Ex. C, Quackenbush Reply ¶ 248.

Nor are the synthetic sequences of single-cell platforms the subject of study during the Trekker workflow. Ex. B, Puglisi Rebuttal ¶¶ 150, 158; ████████████████████. Rather, as discussed above, single-cell platforms are used to analyze the gene expression patterns of each nucleus or cell. Ex. B, Puglisi Rebuttal ¶ 90; ██████████████████. Thus, the synthetic capture sequences of these platforms are used to "target" and bind to mRNA in the isolated nucleus or cell. Ex. A, Quackenbush Opening ¶¶ 415 (stating that capture sequences of the single-cell platform "bind to mRNA molecules from a given nucleus"), 435 (mRNA is a "target" in the single-cell platform); Ex. C, Quackenbush Reply ¶ 38 (stating that "molecules to be analyzed by the single cell sequencing platform" are "mRNA molecules"); ████████████████████████████████████████████████████████. Put another way, the synthetic capture sequences of single-cell platforms are not themselves a research target, but a tool used to help carry out research. *See* Ex. B, Puglisi Rebuttal ¶¶ 158, 243; ████████████████████████.

The Trekker oligos bind to the synthetic capture sequences of single-cell platforms in microwells or partitions, not in a biological tissue sample. *See, e.g.,* Ex. C, Quackenbush Reply ¶ 38; ████████████████████████; ████████████████████████. The Trekker oligos do not determine the spatial location of the synthetic capture

11

sequences in the single-cell platform. Ex. B, Puglisi Rebuttal ¶¶ 146, 150, 159; ████████████

████████████ .

## IV.    SUMMARY OF ARGUMENT

Curio moves for partial summary judgment that Trekker does not infringe the Asserted Patents, because Trekker lacks the "binding agent" or "capture probe" required by all Asserted Claims. The Court's construction requires that "binding agents" or "capture probes" bind to a "biological molecule of interest," but the undisputed evidence establishes that Trekker does not do so. Indeed, there is no record evidence that Trekker oligos bind to *any* molecule in *any* biological tissue sample, let alone in a sample under study.

Faced with this absence of evidence, Plaintiffs are reduced to arguing that Trekker binds to a "biological molecule of interest" on the theory that Trekker binds to synthetic sequences in the microwells or partitions of independent analytical systems called single-cell platforms—platforms that exist outside of tissue samples, and which are not even introduced until after dissociation of the biological tissue sample under study. But these synthetic sequences are not "biological molecules of interest" within the meaning of the Asserted Patents. The specification of the Asserted Patents makes clear that any "biological molecule of interest" is a target molecule in a biological sample under study. As a matter of law, the synthetic capture sequences of single-cell platforms are not that. These synthetic sequences do not exist in, or come from, a biological sample. Nor are these synthetic sequences the subject of study during the Trekker workflow. These synthetic sequences instead function as *probes*—tools used to detect biological molecules of interest like mRNA—but are not "biological molecules of interest" themselves. The specification specifically differentiates probes from biological molecules of interest, explaining that while biological molecules of interest are targets that are *detected* in the biological sample with the described assays, probes are tools *used to detect* a biological molecule of interest. Thus, as a matter

of law, Plaintiffs' reliance on Trekker's binding to synthetic capture sequences in single-cell platforms does not meet the requirement that an accused product bind to a "biological molecule of interest." The Court should grant partial summary judgment that Trekker does not infringe any Asserted Patent.

## V.    LEGAL STANDARDS

Summary judgment should be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is genuinely disputed only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party bears the burden of demonstrating the absence of a genuine issue of material fact." *Arcelik, A.S. v. E.I. Du Pont de Nemours & Co.*, 619 F. Supp. 3d 473, 479 (D. Del. 2022) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). "If the moving party has carried its burden, the nonmovant must then come forward with specific facts showing that there is a genuine issue for trial." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "It is well-established that unsupported expert opinions do not create a genuine issue of material fact." *Mirror Worlds Techs., LLC v. Meta Platforms, Inc.*, 122 F.4th 860, 875 (Fed. Cir. 2024) (collecting cases).

Fed. R. Civ. P. 56(c) mandates "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577 (Fed. Cir. 1989) (citation modified) (citing *Celotex Corp.*, 477 U.S. at 323–23). "Thus, the motion of an

13

accused infringer for judgment on the ground of non-infringement of a patent may be granted where the patentee's proof is deficient in meeting an essential part of the legal standard for infringement." *Id.* (collecting cases).

Infringement requires the patentee to prove that an accused product contains each and every limitation of the asserted claim. *Bayer AG v. Elan Pharm. Rsch. Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). If any claim limitation is absent from the accused product, there is no literal infringement as a matter of law. *Id.* There also can be no infringement under the doctrine of equivalents if even one limitation of a claim or its equivalent is not present in the accused device. *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1321 (Fed. Cir. 2003).

"Infringement, whether literal or under the doctrine of equivalents, is a question of fact. As such, it is amenable to summary judgment when no reasonable factfinder could find that the accused product contains every claim limitation or its equivalent." *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1339 (Fed. Cir. 2016) (citation omitted).

## VI. TREKKER DOES NOT INFRINGE THE ASSERTED CLAIMS BECAUSE IT LACKS THE REQUIRED "BINDING AGENT" OR "CAPTURE PROBE"

The Court should grant partial summary judgment that Trekker does not infringe any of the Asserted Claims. All Asserted Claims require the use of a "binding agent" or "capture probe," which requires that an agent bind to a "biological molecule of interest" with high affinity and/or complementarity. D.I. 225 at 100. Because the undisputed evidence establishes that Trekker does not bind to a "biological molecule of interest" within the meaning of the Asserted Patents, Trekker does not infringe as a matter of law.

### A. Trekker does not "bind" to a "biological molecule of interest"

As discussed above, Trekker contains oligos that are attached to beads on a tile. Upon exposure to UV light, these oligos are released and diffuse into a tissue sample that has been melted

14

on the tile. ████████████████████████████████

████



There is no evidence that the Trekker oligos bind to any biological molecule in the tissue sample. ███████████████████████ Plaintiffs do not contend that the Trekker oligos bind to any nucleus in the tissue sample. S*ee, e.g.*, Ex. C, Quackenbush Reply ¶ 146 ("I have not opined that the Trekker oligos bind to a cell nucleus"). Nor do Plaintiffs point to evidence that the Trekker oligos directly bind to any biological molecule in the tissue sample, including biological molecules within the nucleus (*e.g.*, mRNA). Plaintiffs' expert even admits that "the Trekker oligo is not directly attached to the mRNA target" during the Trekker workflow. *See, e.g.*, Ex. A, Quackenbush Opening ¶ 435. There is accordingly no evidence that the Trekker oligos bind to a "biological molecule of interest."

Plaintiffs speculate that Trekker oligos "indirectly interact" with certain biological molecules in the nucleus, including through alleged "physical proximity" and "electrostatic interactions."[6] But such "indirect interactions" do not constitute binding. This Court previously

---

[6] *See, e.g.*, Ex. A, Quackenbush Opening ¶ 413; Ex. C, Quackenbush Reply ¶ 134 ("I explained in my Opening Report that the Trekker oligo interacts with the mRNA molecules of a nucleus by entering and staying associated with the nucleus and establishing a physical relationship or physical proximity with the mRNA molecules of the nucleus. Additionally, the Trekker oligo also interacts with the mRNA molecules indirectly within the partitions of a single-cell sequencing (continued…)

recognized the distinction between binding and interaction at the Markman hearing. *See* D.I. 225 at 102.

Because Plaintiffs contend only that the Trekker oligos indirectly interact with—but do not bind to—biological molecules of interest, Plaintiffs have a complete failure of proof on a requirement needed to prove infringement. Partial summary judgment should therefore be granted that Trekker does not infringe all Asserted Claims. *See, e.g.*, *Johnston*, 885 F.2d at 1577.

> **B.      It is undisputed that Trekker only directly binds to a synthetic sequence in single-cell platforms, which is not a "biological molecule of interest" as a matter of law**

Faced with an absence of evidence that Trekker binds to any biological molecule in a tissue sample, Plaintiffs argue that Trekker meets the "binding agent" and "capture probe" requirements of the Asserted Claims, because the Trekker oligos bind to synthetic capture sequences in single-cell platforms. These capture sequences exist in partitions or microwells of independent analytical systems, outside of the tissue sample, and are not introduced until after dissociation of the tissue sample. *See* Ex. B, Puglisi Rebuttal ¶ 155; ███████████████████████████; Ex. C, Quackenbush Reply ¶ 248. Plaintiffs' contention is deficient as a matter of law.

The undisputed evidence establishes that synthetic sequences from single-cell platforms are not "biological molecules of interest" within the meaning of the Asserted Patents. These synthetic sequences are never present in a biological sample, are not themselves a subject of study in the Trekker workflow, and are not introduced until after dissociation of the tissue under study. Ex. B, Puglisi Rebuttal ¶¶ 150, 155, 158; ███████████████████████████; Ex. C, Quackenbush Reply ¶ 248. These synthetic sequences instead function as *probes*—tools used to capture and analyze target mRNA. ███████████████████████

---

workflow. I further explained that the Trekker oligo also interacts electrostatically with components of the nucleus that have opposite electrostatic charges."); Ex. C, Quackenbush Reply ¶ 157.

███████████████████████████████████████████████████

█████████████████████████████████████ These synthetic capture sequences are not "biological molecules of interest" within the meaning of the Asserted Patents.

The specification of the Asserted Patents makes clear that a "biological molecule of interest" is a biological molecule from the sample under study using the described experimental assays, *i.e.*, the "target" of the experiment whose spatial location and or gene expression is being studied. For example, the Asserted Patents state:

> A simplified overview of the assay system 100 of the present invention is provided at [Figure 1]. [A] biological sample affixed to a support is provided. ***The biological sample contains biological targets of interest***. Biological targets can include any molecule of interest, such as nucleic acids (including, e.g. RNA transcripts, genomic DNA sequences, cDNAs, amplicons, or other nucleic acid sequences) and proteins, enzymes and the like. [E]ncoded probes are delivered to the biological sample according to a known spatial pattern. Encoded probes comprise probes, which can interact with biological targets of interest, and coding tags, which identify the positions in the sample of the biological targets being assayed, and thus can be used to link assay results back to locations in the sample.

Ex. F, '022 patent at 9:4–17 (emphasis added), Figures 1–2.

As the specification makes clear, the "biological targets of interest" are located in "the biological sample," while probes bind to said "biological targets of interest." Many other passages in the specification emphasize that the "target" molecules of interest come from a biological sample.[8] And this point is further underscored by the purpose of the alleged invention, which is to



_____

[8] *See* Ex. F, '022 patent at 4:22 ("target nucleic acid of interest in a sample"), 13:53–57 ("FIG. 4 at A shows two target-specific/encoding oligonucleotide constructs 420 and 422 (e.g., formed between steps 302 and 304 of FIG. 3) specifically bound to a target nucleic acid 402 of interest"), 17:26–28 ("In an optional embodiment, the assay system comprises imaging means to determine features and organization of the biological sample of interest."), 17:62–65 ("In order to target specific sites of interest, an informative image of the biological sample to be assayed may be used to assist in the reagent delivery methods and associated encoding scheme.").

address a "need for . . . spatial maps of *biological molecules in tissues*." *See, e.g.*, Ex. F, '022 patent at 1:57–62 (emphasis added). Patentee purportedly "addresse[d] this need" with various "assays of biological molecules" to determine the "spatial distributions of a large number of biological molecules *in a solid sample* simultaneously." *See, e.g.*, *id.* at 1:12–15, 60–62 (emphasis added).

To do such an analysis, the Asserted Patents describe an assay system in which the biological molecule of interest is present in a biological sample. *See, e.g.*, Ex. F, '022 patent at 4:20–25, 9:5–17, 13:53–57, 17:26–28, 17:62–65, 21:16–22, 23:34–39. For example, the Asserted Patents state:

> The assay system and methods of the invention are based on relational methods that allow extraction of data to detect the presence or absence and relative amount of a biological molecule, and the ***location of this molecule in a sample having a distinct structure***, ***e.g., a tissue section or other biological structure with distinct locations of specific biological molecules***. The encoding scheme used in these systems corresponds to the structural elements of the sample, and the information obtained using a two-dimensional coding system is indicative of the spatial addresses of ***these molecules in a sample of interest***.

*Id.* at 22:64–23:7 (emphases added).

Especially in view of the above, a person of ordinary skill in the art would have understood that biological molecules of interest are biological molecules from the sample under study—and that molecules not in a sample under study are not biological molecules "of interest." *See e.g.*, Ex. B, Puglisi Rebuttal ¶¶ 149, 157.

Plaintiffs emphasize that "molecules of interest" may include synthetic molecules such as cDNA or amplicons. *See, e.g.*, Ex. C, Quackenbush Reply ¶¶ 36, 142. That does not change the analysis. While the specification of the Asserted Patents anticipates that man-made molecules such as amplicons or cDNA *can* be biological molecules "of interest," the specification is clear that this is only where the man-made molecule is a molecule *in the sample whose location is sought to be determined, i.e.*, it was added to the sample under study. The Asserted Patents state:

> A simplified overview of the assay system 100 of the present invention is provided at [Figure 1]. [A] biological sample affixed to a support is provided. ***The biological sample contains biological targets of interest***. Biological targets can include any molecule of interest, such as nucleic acids (including, e.g. RNA transcripts, genomic DNA sequences, cDNAs, amplicons, or other nucleic acid sequences) and proteins, enzymes and the like.

Ex. F, '022 patent at 9:4–11 (emphasis added), Figures 1–2.

As reflected in this passage, while "biological targets" *can* include synthetic molecules including amplicons and cDNA, the sentence immediately preceding such statement specifies that these targets are contained in the "biological sample." *See e.g.*, Ex. B, Puglisi Rebuttal ¶ 148. Thus, only when the synthetic molecules are in the "biological sample" can they be "biological molecules of interest."

Plaintiffs also purport to rely on what they call "indirect interactions" involving primary and secondary antibodies. Plaintiffs note that the specification states:

> [a]ntibodies for assays of the invention are immunoreactive or immunospecific for, and therefore specifically and selectively bind to, proteins either detected (i.e., biological targets) or used for detection (i.e., probes) in the assays of the invention.

Ex. F, '022 patent at 4:51–55; Ex. C, Quackenbush Reply ¶ 45.

But "indirect interactions" do not constitute binding. *See supra* section VI.A. And the passage cited by Plaintiffs undermines their position that the synthetic capture sequences in single-cell platforms are "biological molecules of interest." Indeed, the passage specifically distinguishes biological *targets*—i.e., the biological molecules "of interest"—from *probes*, stating that while "targets" are molecules to be "*detected*," probes function as tools "used *for detection*."[9] *See Eye Therapies, LLC v. Slayback Pharma, LLC*, 141 F.4th 1264, 1270 (Fed. Cir. 2025) ("Use of 'i.e.' signals an intent to define the word to which it refers.") (collecting cases). ▮

---

[9] *See also* Ex. F, '022 patent at 9:4–17 (distinguishing "biological targets of interest" in the sample from "probes" that interact with "biological targets of interest"), Figures 1–2 (explaining that the "probes interact with biological targets in the biological sample").

19

█████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████ Indeed, Plaintiffs' expert admits that the synthetic sequences in single-cell sequencing platforms "analyze" (*i.e.*, detect) and "target" mRNA. Ex. A, Quackenbush Opening ¶ 435 (mRNA is a "target" in the single-cell platform); Ex. C, Quackenbush Reply ¶ 38 (explaining that "molecules to be analyzed by the single-cell sequencing platform" are "mRNA molecules").

Plaintiffs relatedly contend that the synthetic single-cell sequences that bind to Trekker are "of interest" on the theory that "without [them], there would be no step in the existing workflow to allow for spatially tagging the nucleic mRNA in a way that would be compatible with the single cell sequencing workflow." Ex. A, Quackenbush Opening ¶ 406. Whether these capture oligonucleotides are necessary to be compatible with the operation of the single-cell platform does not make them "biological molecules of interest" within the meaning of the Asserted Patents, however. As discussed above, biological molecules "of interest" are the target molecules in the biological sample that are being studied—*i.e.*, detected—while the *tools* used to help carry out that study—*i.e.*, probes—are not.



████████████████████████████████████████████

███████████████████████████████████████

The Court should reject this "Humpty Dumpty" theory of language. *See* Lewis Carroll, *Through the Looking-Glass, and What Alice Found There*, at 124 (1872) ("When I use a word, it means just what I choose it to mean—neither more nor less."). The biological sample "of interest" in the context of the Asserted Patent is a biological molecule from the sample under study using the described assays, not whatever Plaintiffs want it to mean.

**C.    To the extent Plaintiffs assert infringement under the doctrine of equivalents, it is foreclosed as a matter of law**

Plaintiffs have not clearly articulated an infringement theory that the "capture probe" and "binding agent" limitations of the Asserted Claims are satisfied under the doctrine of equivalents. To the extent they advance such a theory, it is foreclosed as a matter of law. Acceptance of such a theory would effectively rewrite the Asserted Claims such that an agent would satisfy the "binding agent" and "capture probe" limitations so long as the agent binds to *any* biological molecule—reading out the requirement that the molecule be "of interest," thereby vitiating it. *See, e.g.,* *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997) ("It is important to ensure that the application of the doctrine [of equivalents], even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety."). A person of ordinary skill in the art would understand that "biological molecules of interest" are biological molecules studied in a sample—so that they can be detected as a target from which information, such as gene expression or spatial location, can be determined using the assays described throughout the specification. The Court should not allow Plaintiffs to expand the scope of the Asserted Claims to encompass binding to *any* biological molecule on the theory that any molecule can be "of interest."

21

## VII.    CONCLUSION

Trekker does not contain a "binding agent" or "capture probe" as a matter of law. The Court should grant partial summary judgment that Trekker does not infringe any Asserted Patent, either literally or under the doctrine of equivalents.

Date: December 16, 2025                              Respectfully submitted,

*Of Counsel:*                                        FARNAN LLP

Kevin B. Collins (admitted *Pro Hac Vice*)           /s/ Brian E. Farnan
Jeffery B. Elikan (admitted *Pro Hac Vice*)          Brian E. Farnan (Bar No. 4089)
Eric R. Sonnenschein (admitted *Pro Hac Vice*)       Michael J. Farnan (Bar No. 5165)
Douglas A. Behrens (admitted *Pro Hac Vice*)         919 N. Market Str., 12th Floor
Priscilla Dodson (admitted *Pro Hac Vice*)           Wilmington, DE 19801
Laura Martin (admitted *Pro Hac Vice*)               Tel: (302) 777-0300
Allyson Corigliano (admitted *Pro Hac Vice*)         Fax: (302) 777-0301
Adam Smith (admitted *Pro Hac Vice*)                 bfarnan@farnanlaw.com
Robert McMullen (admitted *Pro Hac Vice*)            mfarnan@farnanlaw.com
COVINGTON & BURLING LLP
One CityCenter                                       *Attorneys for Defendants Curio Bioscience,*
850 Tenth Street NW                                  *Inc., Takara Bio USA, Inc., and Takara Bio*
Washington, DC 20001-4956                            *USA Holdings, Inc.*
Tel: (202) 662-6000
kcollins@cov.com
jelikan@cov.com
esonnenschein@cov.com
dbehrens@cov.com
alazerow@cov.com
mkudzin@cov.com
pdodson@cov.com
lmmartin@cov.com
acorigliano@cov.com
adsmith@cov.com
rmcmullen@cov.com

Ian M. Hurst (admitted *Pro Hac Vice*)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
ihurst@cov.com