IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| 10x GENOMICS, INC. and PROGNOSYS BIOSCIENCES, INC., <br><br> *Plaintiffs,* <br><br> v. <br><br> CURIO BIOSCIENCE, INC., TAKARA BIO USA, INC., and TAKARA BIO USA HOLDINGS, INC. <br><br> *Defendant.* | Civil Action No. 23-cv-1375-MN <br><br> **REDACTED - PUBLIC VERSION** |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

*Of Counsel:*

TENSEGRITY LAW GROUP LLP
Matthew Powers
Paul Ehrlich
Stefani Smith
Natasha Saputo
Li Shen
555 Twin Dolphin Drive
Suite 650
Redwood Shores, CA 94065
Tel: (650) 802-6000

Ronald J. Pabis
Daniel Kazhdan
Kiley White
Joanna R. Schacter
Grace Gretes
Parshad K. Brahmbhatt
1676 International Drive
Suite 910
McLean, VA 22102
Tel: (650) 802-6000
10x_Curio_Service@tensegritylawgroup.com

Frederick L. Cottrell, III (#2555)
Jason J. Rawnsley (#5379)
Alexandra M. Ewing (#6407)
Gabriela Z. Monasterio (#7240)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
rawnsley@rlf.com
ewing@rlf.com
monasterio@rlf.com

Dated: January 8, 2026                    *Attorneys for Plaintiffs*

## TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................ 1

II.  THE PROGNOSYS PATENTS AND DR. CHEE'S INVENTION ............................... 2

III.  DEFENDANTS' ACCUSED SEEKER AND TREKKER PRODUCTS ........................ 5

IV.  LEGAL STANDARD ................................................................................................ 9

V.  THERE IS A GENUINE DISPUTE OF FACT FOR TRIAL OVER WHETHER
    TREKKER OLIGONUCLEOTIDES ARE "BINDING AGENTS" / "CAPTURE
    PROBES" ................................................................................................................ 10

    A.  The Single-Cell Barcode Oligonucleotides Are "Biological Molecules"
        Under The Court's Construction .................................................................... 11

        1.  The Intrinsic Evidence Confirms That Synthetic Oligonucleotides Are
            Biological Molecules Whether Or Not They Are In Tissue ................... 11

        2.  The Evidence Establishes That Poly(T) Oligonucleotides Are
            "Biological Molecules" ............................................................................ 14

    B.  The Single-Cell Barcoded Oligonucleotides Are "Of Interest" In The Context
        Of The Trekker Assay .................................................................................... 15

        1.  The Specification Confirms That Probes Are "Of Interest" In The
            Context Of The Inventions ...................................................................... 16

        2.  The Evidence Establishes That Single-Cell Barcode Oligos Are "Of
            Interest" Within The Context Of The Accused Assays .......................... 18

            a.  Single-Cell Barcode Oligos Are "Of Interest" Because They
                Connect Each Nucleus To The Trekker Spatial Barcodes Via
                Sequencing ................................................................................. 18

            b.  Single-Cell Oligos Are "Of Interest" Within The Meaning Of
                "Capture Probe" And "Binding Agent" Because They Are
                Targeted For Capture .................................................................. 21

            c.  There Is A Further Dispute Of Material Fact Over Whether
                The Single-Cell Oligos Are Added To The Sample ................... 23

VI.  PLAINTIFFS' DOCTRINE OF EQUIVALENTS EVIDENCE CREATES A
    GENUINE DISPUTE OF FACT FOR TRIAL ........................................................ 25

VII.  CONCLUSION ........................................................................................................ 30

i

# TABLE OF AUTHORITIES

**Cases**

*10x Genomics, Inc. v. NanoString Techs., Inc.,*
    No. 21-CV-653-MFK, 2023 WL 2265744, (D. Del. Feb. 28, 2023) .................................. 3, 13

*Alston v. Forsyth,*
    379 F. App'x 126 (3d Cir. 2010) ....................................................................................... 26

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ............................................................................................................ 9

*Apex Clearing Corp. v. Axos Fin. Inc.,*
    No. CV 19-2066-MN, 2021 WL 4355571 (D. Del. Sept. 24, 2021) ................................. 10

*B. Braun Melsungen AG v. Terumo Med. Corp.,*
    749 F. Supp. 2d 210 (D. Del. 2010) ................................................................................. 10

*Baxalta Inc. v. Bayer Healthcare LLC,*
    513 F. Supp. 3d 426 (D. Del. 2021) ................................................................................. 10

*Baxter Healthcare Corp. v. Nevakar Injectables, Inc.,*
    No. CV 21-1184-CJB, 2025 WL 823224 (D. Del. Mar. 14, 2025) ............................. 26, 30

*Brilliant Instruments, Inc. v. GuideTech, LLC,*
    707 F.3d 1342 (Fed. Cir. 2013) ....................................................................................... 30

*Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.,*
    291 F.3d 1317 (Fed. Cir. 2002) ....................................................................................... 17

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.,*
    559 F.3d 1308 (Fed. Cir. 2009) ....................................................................................... 25

*Deere & Co. v. Bush Hog, LLC,*
    703 F.3d 1349 (Fed. Cir. 2012) ....................................................................................... 30

*EMI Grp. N. Am. v. Intel Corp.,*
    157 F.3d 887 (Fed. Cir. 1998) ......................................................................................... 29

*Prolitec Inc. v. Scentair Techs., LLC,*
    No. CV 20-984-WCB, 2023 WL 8697973 (D. Del. Dec. 13, 2023) ................................. 30

*Sprint Communs. Co. LP v. Charter Communs., Inc.,*
    No. 17-1734-RGA, 2021 U.S. Dist. LEXIS 49067 (D. Del. Mar. 16, 2021) ...................... 30

*TQ Delta, LLC v. 2Wire, Inc.,*
    No. CV 13-1835-RGA, 2021 WL 3375900 (D. Del. Aug. 3, 2021) ................................... 10

RLF1 34507110v.2

**Rules**

D. Del. LR 7.1.3(c)(2)................................................................................................... 26

Fed. R. Civ. P. 56(a) ..................................................................................................... 9

## TABLE OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| 1 | U.S. Patent No. 10,480,022 (022 Patent) |
| 2 | Takara Bio USA Seeker™ 3x3 Bundle V1.1 User Manual Cat. Nos. SK004 & K006 (061325) ("Seeker User Manual") bearing production numbers CURIO00276481-CURIO00276505 |
| 3 | Takara Bio USA Trekker™ U Single-Cell Spatial Mapping Kit User Manual Cat. Nos. SK017 & SK020 (082825) ("Trekker User Manual") bearing production numbers CURIO00276576-CURIO00276594 |
| 4 | "How Trekker™ Works," video screenshots, https://www.takarabio.com/learning-centers/spatial-omics/trekker-resources |
| 5 | REDACTED |
| 6 | REDACTED |
| 7 | REDACTED |
| 8 | *Sprint Communs. Co. LP v. Charter Communs., Inc.*, No. 17-1734-RGA, 2021 U.S. Dist. LEXIS 49067 (D. Del. Mar. 16, 2021) |
| 9 | REDACTED |
| 10 | REDACTED |
| 11 | REDACTED |
| 12 | *10x Genomics, Inc. v. NanoString Techs., Inc.*, No. 21-CV-653-MFK, 2023 WL 2265744 (D. Del. Feb. 28, 2023) |
| Quackenbush Att. A | REDACTED |
| Quackenbush Att. B | REDACTED |
| Satija Att. A | Excerpts of the Surreply Expert Report of Rahul Satija, D. Phil, dated December 29, 2025 ("Satija Sur-Reply") |

RLF1 34507110v.2

## I.      INTRODUCTION

Defendants make and sell two spatial transcriptomics products that use what Defendants call the same "core technology"—slide-based arrays of spatially-barcoded probes that contact tissue samples and bind nucleic acids via hybridization and, when sequenced, provide location information for transcripts from the tissue samples. Defendants call these products Seeker and Trekker. The barcoded arrays are made and decoded using the same processes. The spatially-barcoded probes on the arrays are very similar but hybridize to different nucleic acid targets. The Seeker probes have poly(T) ends that bind poly(A) sequences like those found in mRNAs. The Trekker probes are effectively mirror images of those, using poly(A) ends that bind poly(T) sequences that bind *complements* of mRNAs, including other barcoded probes that bind mRNAs. While Seeker binds mRNAs and Trekker binds mRNA probes, Defendants' own expert opined that these arrays produce the same type of spatial-transcriptomics data.

Spatially-barcoded arrays using nucleic-acid probes were invented by Dr. Mark Chee and are covered by the patents asserted in this case. Defendants did not move for summary judgment on the Seeker array, implicitly acknowledging that infringement cannot be resolved before trial. Defendants moved for summary judgment on Trekker because its probes are poly(A) rather than poly(T), but the Asserted Claims do not limit the "binding agents" of the claims to particular binding-partner sequences. Defendants' contention that the switch in target from mRNA to mRNA-probe in Trekker somehow makes the Trekker version of the probes not the claimed "binding agents" or "capture probes" is a genuine dispute of fact for trial. Plaintiffs' Concise Statement of Disputed Material Facts ("SOMF") 11. Plaintiffs' expert, Dr. Quackenbush, explains in detail why the Trekker probes that hybridize to poly(T) sequences associated with each nucleus from the tissue sample are binding agents/capture probes that specifically bind to "biological molecules of interest" within the Court's claim constructions, both literally and under the doctrine

of equivalents. The patents' specification confirms the breadth of these terms, consistent with the Court's *Markman* ruling, which rejected Defendants' original attempt to limit the "biological molecules" bound by the claimed probes.

Defendants' motion barely mentions the doctrine of equivalents, ignoring the voluminous function-way-result evidence and instead offering only a conclusory vitiation argument that is contrary to law.

Summary judgment should be denied.

## II.    THE PROGNOSYS PATENTS AND DR. CHEE'S INVENTION

The Asserted Patents teach obtaining spatial information of molecules in a biological sample using binding agents, spatial barcodes, and sequencing. Unlike prior art methods that relied on on-tissue (*in situ*) detection methods such as imaging, which have limitations on the number of targets that can be detected simultaneously due to the limited fluorescent colors available and optical crowding, Dr. Chee's invention takes advantage of off-tissue (*ex situ*) detection methods such as next generation sequencing that enable pooling and simultaneous detection of a large number of analytes. Ex. 1[1], 022 Patent, 1:31-56, 8:58-62.

The Chee patents teach binding molecules using capture probes and also teach introducing spatial barcodes, not necessarily at the same time. E.g., Ex. 1, 022 Patent, 9:21-37. The association between the spatial tags and molecules in the sample using the binding agents can occur at different stages of the workflow in different ways, including on the tissue sample or off the tissue sample. In the previous 653 case addressing the same family of patents with the same specification, the Court noted that the specification indicated that "spatial patterning must occur somewhere in the

---

[1] The letter exhibits are attached to Defendants' Declaration of Ian M. Hurst, while the number exhibits are attached to Plaintiffs' Declaration of Li Shen and Attachments ("Att.") are attached to Expert Declarations of Drs. Quackenbush and Satija filed concurrently.

process and with some form of reagent." Ex. 12, *10x Genomics, Inc. v. NanoString Techs., Inc.*, No. 21-CV-653-MFK, 2023 WL 2265744, *4 (D. Del. Feb. 28, 2023). The Court also noted that "maintaining the integrity of spatial patterns—through preserving location information in some form—can be accomplished a number of ways." *Id*. at *7.

All five Asserted Patents are asserted against Defendants' Seeker product and three of the five patents (the 022, 030, and 138 Patents) are asserted against Defendants' Trekker product.

REDACTED                                              Two of the three patents (the 030 and 138 Patents) are composition patents directed at an array with a substrate and capture probes, each of the capture probes including a primer binding site, a target-binding domain that binds to a target molecule that has a complementary sequence, and a spatial tag that identifies a unique location on the substrate:

| 030 Patent, Claim 1 (D.I. 258-7, Ex. H) | 138 Patent, Claim 1 (D.I. 258-7, Ex. G) |
|---|---|
| 1. A composition comprising an array comprising a substrate, a plurality of beads, and a plurality of capture probes, wherein:<br>the plurality of beads are attached to the substrate;<br>each of the capture probes of the plurality of capture probes comprises a nucleic acid sequence comprising from the bead surface: (i) a primer binding site, (ii) a nucleic acid sequence that identifies a unique location on the substrate and is not configured to hybridize to a target nucleic acid that binds to a target nucleic acid binding domain, and (iii) the target nucleic acid-binding domain;<br>the target nucleic acid-binding domain of each of the plurality of the capture probes comprises a nucleic acid sequence capable of hybridizing to at least a portion of the target nucleic acid that binds to the target nucleic acid-binding domain; and | 1. A composition comprising an array comprising a substrate and a plurality of capture probes, wherein:<br>each of the plurality of capture probes comprises: (i) a target-binding domain, (ii) a nucleic acid sequence that identifies a unique location on the substrate and is not configured to hybridize to a nucleic acid that binds to the target-binding domain, and (iii) a primer binding site;<br>the target-binding domain of each of the plurality of capture probes comprises a nucleic acid sequence that is complementary to at least a portion of the nucleic acid that binds to the target-binding domain, and<br>each of the plurality of capture probes are immobilized on the substrate in a random pattern. |

3

| | |
|---|---|
| the plurality of beads was previously positioned on the substrate in a random pattern. | |

The 022 Patent is a method patent that requires a plurality of beads comprising a plurality of binding agents, and a binding agent that is configured to interact with a biological molecule of a tissue sample and includes a coding identifier corresponding to a location of the interaction:

| 022 Patent, Claim 1 (Ex. 1) |
|---|
| 1. A method for determining a spatial location of a biological molecule of a tissue sample comprising |
| (a) providing a plurality of beads, wherein the plurality of beads comprise a plurality of binding agents, wherein a binding agent of the plurality of binding agents (i) comprises a coding identifier having a nucleic acid sequence and (ii) is configured to interact with a biological molecule of a tissue sample, wherein the coding identifier corresponds to a location at which the binding agent interacts with a biological molecule of a tissue sample; |
| (b) contacting the plurality of beads with the tissue sample such that the binding agent interacts with the biological molecule; and |
| (c) using the coding identifier to identify the location where the binding agent interacted with the biological molecule, thereby determining a spatial location of the biological molecule of the tissue sample. |

During claim construction, the Court adopted Plaintiffs' proposed constructions for all terms. The Court construed a "binding agent"/"capture probe" to mean "an agent that binds to a biological molecule of interest with high affinity and/or complementarity" D.I. 225, *Markman* Tr. at 100-101. The Court construed "a biological molecule" to mean "one or more biological molecule[s]" and noted that a biological molecule does not need to be "of an organism," as Defendants proposed, and included both "natural and constructed molecules." D.I. 225, *Markman* Tr. at 101-102. The Court further construed "configured to interact with a biological molecule of a tissue sample" (022 Patent) to mean "configured to establish a chemical or physical relationship with a biological molecule of a tissue sample," noting that "the claim language is clear – the binding agent must specifically bind a molecule or molecules of interest and it must be configured to interact with a molecule or molecules interest." D.I. 225, *Markman* Tr. at 102-103.

### III.    DEFENDANTS' ACCUSED SEEKER AND TREKKER PRODUCTS

Defendants' spatial transcriptomics products, Seeker and Trekker, are accused of infringement in this case.

Both Seeker and Trekker include a glass slide with a randomly placed array of beads. Each bead has a large number of probes, and each of the probes includes a PCR handle, a set of two bead barcode sequences (BB-1 and BB-2) connected by a linker that serves as a spatial barcode, and a capture sequence that binds to a target molecule.



Ex. 2, "Seeker User Manual," CURIO00276481 at 485.



Ex. 3, "Trekker User Manual," CURIO00276576 at 580.

REDACTED

REDACTED

5

REDACTED

Seeker associates the bead barcodes (spatial barcode) with mRNA molecules in a tissue sample through the hybridization between the poly(T) capture sequence in the Seeker oligonucleotide and the poly(A) sequence in the mRNA molecule. Ex. 2, "Seeker User Manual," CURIO00276481 at 484-85. After various library preparation steps, a cDNA sequence including the bead barcode sequences and a cDNA insert of the mRNA molecule is sequenced to determine the identities and spatial locations in a tissue sample. *Id.* at 485.

The Trekker workflow also associates the bead barcodes with mRNA molecules in a tissue sample so that the bead barcode and the mRNA molecule can be sequenced to determine the identities and spatial locations in a tissue sample. The Trekker workflow starts with placing and melting a tissue sample on the Trekker slide. Ex. 3, "Trekker User Manual," CURIO00276576 at 578. The Trekker oligonucleotides are photocleaved and released to interact with the molecules of cell nuclei of the tissue sample (such as mRNAs) by diffusing into the nuclei, establishing and maintaining a physical relationship with the molecules of the nuclei.





Ex. 4, "How Trekker™ Works," video screenshots at 0:21, 0:27, https://www.takarabio.com/learning-centers/spatial-omics/trekker-resources; REDACTED


REDACTED


Ex. 3, "Trekker User Manual," CURIO00276576 at 578.

After the physical relationship is established, the nuclei of the tissue sample are collected. The collected nuclei are run through single-cell RNA-seq workflows that sequester each single nucleus into a microwell or a droplet. The Trekker spatial barcodes in a nucleus relate back to the nucleus's original location on the tissue sample, even after the nucleus is sequestered from the sample and placed into a microwell or droplet, so that the nucleus's location is identifiable.

7



Ex. 4, "How Trekker™ Works," video screenshots at 0:38, 0:53, https://www.takarabio.com/learning-centers/spatial-omics/trekker-resources; REDACTED

        Each droplet or microwell includes barcoded single-cell barcode oligonucleotide ("single-cell barcodes" in the illustration below). The single-cell barcode oligonucleotide includes a cell barcode that identifies the nucleus captured in the droplet/microwell. REDACTED

. The poly(A) tail of the Trekker oligonucleotide specifically binds to the poly(T) tail of the single-cell barcode oligonucleotide. REDACTED                           . The poly(T) tail of the single-cell barcode oligonucleotide also specifically binds to the poly(A) tail of mRNAs.

REDACTED                                  . These specific binding events

8

establish a relationship between the mRNA, the cell barcode from the single-cell barcode oligonucleotide, and the spatial barcode from the Trekker oligonucleotide, thereby associating the identities of the mRNAs with the spatial location information.



Ex. 4, "How Trekker[TM] Works," video screenshot at 1:00, https://www.takarabio.com/learning-centers/spatial-omics/trekker-resources; REDACTED


Both Seeker and Trekker are accused of infringing the 022, 138, and 030 Patents at issue in Defendants' partial summary judgment motion. Defendants have moved only with respect to the Trekker product. D.I. 256 at 1-2.

## IV.    LEGAL STANDARD

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of establishing there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The evidence of the non-moving party is to be believed, "and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

"When an accused infringer moves for summary judgment of non-infringement, such relief may be granted only if at least one limitation of the claim in question does not read on an element of the accused product, either literally or under the doctrine of equivalents. . . . Thus, summary judgment of non-infringement can only be granted if, after viewing the facts in the light most favorable to the non-movant, there is no genuine issue as to whether the accused product is covered by the claims (as construed by the court)." *Baxalta Inc. v. Bayer Healthcare LLC*, 513 F. Supp. 3d 426, 457 (D. Del. 2021); *see also Apex Clearing Corp. v. Axos Fin. Inc.*, No. CV 19-2066-MN, 2021 WL 4355571, at *2 (D. Del. Sept. 24, 2021) ("fact-intensive inquiry" precludes summary judgment of non-infringement); *TQ Delta, LLC v. 2Wire, Inc*., No. CV 13-1835-RGA, 2021 WL 3375900 (D. Del. Aug. 3, 2021) (expert disagreements precluded summary judgment of non-infringement or infringement); *B. Braun Melsungen AG v. Terumo Med. Corp.*, 749 F. Supp. 2d 210, 215-216 (D. Del. 2010) (summary judgment of non-infringement is inappropriate when the non-moving party "identifies what it contends are numerous material factual issues precluding summary judgment").

## V.    THERE IS A GENUINE DISPUTE OF FACT FOR TRIAL OVER WHETHER TREKKER OLIGONUCLEOTIDES ARE "BINDING AGENTS" / "CAPTURE PROBES"

Defendants' Trekker array, like their Seeker array, contains barcoded probes (the "Trekker oligonucleotides") that bind with complete complementarity to nucleic acids that are central to the spatial transcriptomics assay. SOMF 1. The Trekker oligonucleotides have the same poly(A) sequence as the tail of an mRNA and specifically bind to the mRNA's complement—the barcoded poly(T) probe oligonucleotide from a single-cell workflow—rather than the mRNAs themselves. SOMF 2. The accused Trekker oligonucleotides are "binding agents" (and "capture probes") because they meet the Court's claim construction: they specifically bind to "biological molecules of interest," which are the oligonucleotides used in a compatible single cell sequencing assay (the

"single-cell barcode oligonucleotides" or "single-cell barcode oligos") that correspond to a given nucleus in the workflow.[2] SOMF 11. Applying the claim construction presents two sub-issues: whether the single-cell barcode oligonucleotides are "biological molecules" and whether they are "of interest" in the context of this assay. SOMF 3, 7-10. In light of the detailed expert analysis by Plaintiffs' expert explaining how these molecules meet the claim construction, the admissions by Defendants' expert, and Defendants' failure to foreclose the alternative dispute under the doctrine of equivalents, summary judgment should be denied.

**A.    The Single-Cell Barcode Oligonucleotides Are "Biological Molecules" Under The Court's Construction**

**1.    The Intrinsic Evidence Confirms That Synthetic Oligonucleotides Are Biological Molecules Whether Or Not They Are In Tissue**

Defendants argue that the single-cell barcode oligonucleotides with poly(T) sequences are not "biological molecules" because they are synthetic nucleic acids not present in a tissue sample. D.I. 256 at 16. Defendants' arguments are inconsistent with the Court's *Markman* ruling, which gave "biological molecules" its full ordinary meaning. The Court rejected Defendants' position that "biological molecules" must be "of an organism," and held that both "natural and constructed molecules are contemplated" by the specification. D.I. 225, *Markman* Tr. at 102:1-5.

---

[2] While Plaintiffs' brief mainly discusses the main commercially available Trekker Version U, which uses a poly(A) capture sequence, Plaintiffs' expert has also provided detailed opinions that Trekker oligonucleotides in all versions of Trekker, regardless of whether they use a poly(A) capture sequence or another capture sequence, are binding agents/capture probes. All versions of Trekker oligonucleotides specifically bind to barcode oligonucleotides used in a compatible single cell assay, which identify the nucleus and serve as a linchpin in Trekker's assay to connect Trekker's spatial barcode with the mRNAs in the nucleus. SOMF 10. REDACTED

The specification describes that "biological" targets include "**any molecule of interest**, such as nucleic acids (including, e.g., RNA transcripts, genomic DNA sequences, **cDNAs**, **amplicons**, or other nucleic acid sequences) and proteins, enzymes and the like. [3]" Ex. 1, 022 Patent, 9:6-11. As to nucleic acids such as DNAs, the specification further describes that "DNA herein may include genomic DNA, mitochondrial DNA, episomal DNA, and/or **derivatives of DNA** such as **amplicons**, RNA transcripts, **cDNA**, **DNA analogs**, etc." Ex. 1, 022 Patent, 6:34-37. Any nucleic acid is a "biological molecule" in the context of this specification. Satija Att. A, Satija Sur-Reply, ¶¶ 122-124.

The specification is also very clear that synthetic molecules are biological molecules whether they are added to tissue or not. The specification states that oligonucleotides are examples of "biological molecules" that can optionally be "formulat[ed]" and "delivered" to the biological sample in the invention. Ex. 1, 022 Patent, 16:3-17 ("Integral to the assay system of the invention is instrumentation that allows for spatial patterning of reagents onto the biological sample. Technologies for formulating and delivering both **biological molecules (e.g. oligonucleotides** or antibodies) . . . are known in the art"); *see also* Ex. 1, 022 Patent, 23:9-11 ("Technologies for formulating and delivering both **biological molecules** (e.g. **DNA** or antibodies)"). In the context of these inventions, oligonucleotide reagents are "biological molecules" however they are formulated or delivered[4]. While they can be delivered to tissue, their presence in tissue is not what makes them "biological molecules;" they are "biological molecules" because they are nucleic acids.

---

[3] Emphasis supplied unless otherwise noted.

[4] As the Court in the previous *10x and Prognosys v. NanoString* case found, reagent delivery is not limited to tissue sections:

> NanoString asserts that the term "reagent delivery system" from claim 1 of the '917 patent should be construed to mean "a system that can be used to immobilize a plurality of probes on a tissue sample in a spatial pattern." . . . But claim 1 of the

The structure of the claim language confirms that "biological molecules" are not limited to those in the sample. Claim 1 of the 022 Patent requires both "binding agents" (which by claim construction must be able to specifically bind a biological molecule of interest) and also an interaction that is not necessarily specific binding with a "biological molecule of a tissue sample":

> 1. A method for determining a spatial location of a biological molecule of a tissue sample comprising
>
> (a) providing a plurality of beads, wherein the plurality of beads comprise a plurality of binding agents, wherein a binding agent of the plurality of binding agents (i) comprises a coding identifier having a nucleic acid sequence and (ii) is configured to interact with a biological molecule of a tissue sample, wherein the coding identifier corresponds to a location at which the **binding agent interacts with a biological molecule of a tissue sample**;

Ex. 1, 022 Patent, Claim 1. As the Court found, the "specific binding" and "interact[ing]" acts of the binding agent can be separate. D.I. 225, *Markman* Tr. at 102:19-103:1. The biological molecules subject to this interaction and binding are not necessarily the same. The biological molecule for the "interaction" is a "biological molecule *of a tissue sample*," not simply any biological molecule of interest. As the claim language suggests, not every "biological molecule" is "of a tissue sample." And the "biological molecule of interest" for the specific binding limitation

---

'917 patent describes a number of different methods and tools to deliver reagents to and collect them from discrete portions of a tissue sample in a way that preserves the integrity of the encoding scheme. What is central to the patented system is its ability to ensure discrete delivery or retrieval. Contrary to NanoString's contentions, this is not necessarily the same as spatial patterning. As previously explained, maintaining the integrity of spatial patterns—through preserving location information in some form—can be accomplished a number of ways (e.g., through a "flow-cell" that can deliver reagents "across the substrate" or "only to certain portions of the array, restricting the amount and type of reagents delivered to any specific section of the array,"… not just thorough delivery of probes… The Court concludes there is no appropriate basis to limit "reagent delivery system" to delivery of reagents "to" a tissue sample or "in a spatial pattern."

Ex. 12, *10x Genomics, Inc. v. NanoString Techs., Inc*., No. 21-CV-653-MFK, 2023 WL 2265744, at *6-7 (D. Del. Feb. 28, 2023).

is not necessarily also the "biological molecule of a tissue sample" for the "configured to interact" limitation. That is consistent with the specification's statement that oligonucleotide reagents are relevant "biological molecules."

### 2. The Evidence Establishes That Poly(T) Oligonucleotides Are "Biological Molecules"

There is at least a genuine dispute of fact that the single-cell barcode oligonucleotides with poly(T) bound by the poly(A) Trekker capture probes are "biological molecules" under the Court's constructions. SOMF 7-10. Consistent with the specification, the single-cell barcode oligonucleotides are biological molecules by virtue of being nucleic acids. REDACTED

406. SOMF 4. The fact that these oligonucleotides are used as probe reagents that are delivered to partitions containing nuclei (where they interact with the Trekker binding agents) does not change their character as "biological molecules."

While the single-cell barcode oligonucleotides targeted by the Trekker binding agents are "biological" because they are nucleic acids, they are especially closely related to native nucleic acids because they contain sequences partially complementary to mRNAs. SOMF 5. REDACTED

The single-cell barcode oligonucleotides (for example the barcode oligonucleotides on the 10x Chromium beads that are partitioned with nuclei and mRNAs from the tissue sample) have these poly(T) sequences. SOMF 5; REDACTED

The Trekker probes are "binding agents" because they are complementary to and hybridize to these cDNA-like single-cell barcode oligonucleotides. SOMF 2, 11. REDACTED

REDACTED                      The Trekker oligonucleotides were designed to bind specifically, with full complementarity, to the poly(T) sequence of a single-cell barcode oligonucleotide. SOMF 2; REDACTED

**B.      The Single-Cell Barcoded Oligonucleotides Are "Of Interest" In The Context Of The Trekker Assay**

The binding between the Trekker oligonucleotides and the single-cell barcode oligonucleotides is deliberate and not incidental. Defendants designed the Trekker oligonucleotides to target these single-cell barcode oligonucleotides because the single-cell barcode oligonucleotides are central to the overall Trekker spatial assay. SOMF 7; Plaintiffs' Resp. to Defendants' Statement of Undisputed Material Facts ("SOUF Response") 13, 15-16. The deliberate nature of Defendants' design confirms that the single-cell barcode oligonucleotides are "of interest" within Trekker and as such make the Trekker oligonucleotides "binding agents" under the applicable claim construction. SOMF 7-8. Defendants' motion contends that the single-cell barcode oligonucleotides are not "of interest" because they are probes rather than the molecules to be located (like mRNAs). D.I. 256 at 20. That narrow view of what it means to be "of interest" is inconsistent with the specification and is contradicted by the opinions of both Plaintiffs' and Defendants' experts. The fight over whether the single-cell barcode oligos are "biological molecules of interest" (and thus whether Trekker probes are "binding agents") is a classic dispute of fact for trial rather than summary judgment. SOMF 7-11.

### 1.    The Specification Confirms That Probes Are "Of Interest" In The Context Of The Inventions

The crux of Defendants' motion is their contention that only molecules to be "detected" and "studied" in the sample are "of interest," and that other molecules like probes are not. *See* D.I. 256 at 20. That argument runs directly counter to the passage of the specification discussed by both parties' experts and relied on by Defendants. The specification teaches that both targets to be detected *and* probes are biological molecules "of interest":

> The term "antibody" as used herein is intended to refer to an entire immunoglobulin or antibody or any functional fragment of an immunoglobulin molecule which is **capable of specific binding, to an antigen** (antibodies and antigens are "binding partners" as defined herein). "Antibody" as used herein is meant to include the entire antibody as well as any antibody fragments capable of **binding the antigen or antigenic fragment** *of interest*. Examples of such peptides include complete antibody molecules, antibody fragments, such as Fab, F(ab′)2, CDRS, VL, VH, and any other portion of an antibody which is capable of specifically binding to an antigen. **Antibodies** for assays of the invention are immunoreactive or immunospecific for, and therefore **specifically and selectively bind to, proteins either detected (i.e., biological targets) or used for detection (i.e., probes) in the assays of the invention**.

Ex. 1, 022 Patent, 4:40-55. While this passage is focused on the example of antibody binding agents, the example illustrates that "of interest" in the context of binding partners for binding agents refers to probe reagents as well as detected targets. The construction of binding agent comes from the very next sentence of the specification, which is "any agent that specifically binds to a biological molecule of interest." Ex. 1, 022 Patent, 4:56-58. The passage above teaches that (1) antibodies are binding agents within the meaning of the specification because they are capable of "specific binding" to antigens, (2) antibodies bind to antigens and fragments "of interest," and (3) examples of the "of interest" antigens within "assays of the invention" that can be specifically and selectively bound include both proteins "detected" *or* proteins "used for detection (i.e., probes)." Satija Att. A, Satija Sur-Reply, ¶¶ 136, 130-135. Both types of proteins in this example are biological molecules "of interest."

16

Notably, the specification does not limit the probes that are "of interest" to those in the sample, nor does the specification state that the probes are the molecules to be located. The specification suggests the opposite by distinguishing the probes from molecules to be detected while noting that both are "of interest." The specification does not draw a distinction between natural and wholly synthetic probes. Satija Att. A, Satija Sur-Reply, ¶¶ 125-137. Defendants admit that the single-cell barcode oligonucleotides at issue are in fact "probes used 'for detection'" that match the language of the specification's antibody example. D.I. 256 at 19-20.

Defendants' other citations to the specification do not show that molecules "of interest" are limited to molecules to be detected within tissue. Defendants rely on assorted passages where the specification states that "the biological sample contains biological targets of interest" or mentions "biological molecules in tissues," "spatial distributions of a large number of biological molecules in a solid sample," or "location of this molecule in a sample … with distinct locations of specific biological molecules." D.I. 256 at 17-18. While it is true that a sample contains biological molecules of interest, it would be a logical fallacy to conclude that all biological molecules of interest must be contained in a sample. The specification is not limited to any specific example. *Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc*., 291 F.3d 1317, 1322 (Fed. Cir. 2002) ("Although the specification also describes an arrangement that may be claimed in another way . . . and explains why the invention functions well when arranged accordingly, the specification is not limited to that particular description. An inventor is entitled to claim his invention in more than one way."); *see also* Satija Att. A, Satija Sur-Reply, ¶¶ 120-124 (opining that a POSA reading the specification would have understood that "the specification does not intend to exclude any binding partner to which a binding agent can 'specifically bind'" and that it can include synthetic molecules such as oligonucleotides).

17

2.    **The Evidence Establishes That Single-Cell Barcode Oligos Are "Of Interest" Within The Context Of The Accused Assays**

a.    **Single-Cell Barcode Oligos Are "Of Interest" Because They Connect Each Nucleus To The Trekker Spatial Barcodes Via Sequencing**

The expert record strongly supports that the Trekker probes are "binding agents" or "capture probes" because the single-cell barcode oligos targeted by Trekker are "of interest" from the perspective of the Trekker assay. SOMF 7-9. There is no meaningful dispute that the single-cell barcode oligos are a critical set of molecules that must be captured by the Trekker probes to provide location information for mRNAs in each nucleus. The Trekker assay, when combined with a single-cell workflow like 10x's Chromium method, results in three types of nucleic acids in each droplet partition—the mRNAs from a single nucleus, the Trekker probes that interacted with that nucleus, and the single-cell barcode molecules corresponding to that nucleus by virtue of being co-partitioned with it. SOMF 6; SOUF Response 16. Sequences from all three of these nucleic acids must be connected in Trekker's sequencing data so that each mRNA can be matched with the two barcodes. *Id*. The Trekker probes must target and bind the single-cell barcode oligos so that the Trekker spatial barcode can be joined to the single-cell barcode. SOMF 7; SOUF Response 13; REDACTED

.

Dr. Quackenbush explained that the single-cell barcode molecules are not merely "of interest," but rather are the linchpin of the assay:

# REDACTED

REDACTED

REDACTED

Defendants argue that the single-cell barcode oligo is not "of interest" because it is not the "subject of study" in the Trekker workflow and instead only functions as probes used to detect mRNAs. D.I. 256 at 1, 12. Defendants are incorrect about Trekker—the single-cell barcode oligos *are* a subject of study. SOMF 9. Defendants ignore that a single-cell bead oligo is not just a probe with a capture sequence used for detection, it includes a cell barcode (e.g., the "10x barcode" in the context of Chromium as illustrated below):



D.I. 256 at 8 (citing REDACTED                           ); SOUF Response 10. Dr. Quackenbush explains that this cell barcode represents the nucleus in the droplet partition or microwell, providing a label for the nucleus whose spatial location is being studied. REDACTED

REDACTED

# REDACTED

REDACTED

This is why the Trekker capture probes target the single-cell barcode oligos.

Plaintiffs' expert, Dr. Quackenbush, further explained that "REDACTED

The single-cell barcode is a proxy or identifier for each nucleus because each nucleus has been sequestered together with that set of unique barcode oligos. SOMF 9; REDACTED

By targeting the single-cell probes, Trekker effectively tags the mRNAs from a given nucleus. SOMF 9; Ex. 5, REDACTED

Dr. Quackenbush opined that using the single-cell oligos as intermediate molecules or proxies for native molecules in the tissue sample makes the single-cell oligos "of interest" for the Trekker assay: REDACTED

; SOMF 9.

Defendants criticize Dr. Quackenbush for identifying multiple molecules in the assay that are "of interest," arguing that "Plaintiffs appear to be taking the position that the biological molecule 'of interest' can 'shift' to mean whatever they want it to mean." D.I. 256 at 20. Defendants' view of these assays is too narrow. There can be multiple types of biological molecules of interest targeted in the same workflow. Dr. Quackenbush explained that a POSA, reading the specification, would have understood REDACTED

A laboratory assay can target different biological molecules in different steps of the assay and use them according to the needs of the assay. Whether each target is a molecule "of interest" at a given point in the accused assay is a genuine issue of material fact that should be left for trial.

   **b.**  **Single-Cell Oligos Are "Of Interest" Within The Meaning Of "Capture Probe" And "Binding Agent" Because They Are Targeted For Capture**

The single-cell barcode oligos are not "of interest" only because they are needed to bridge between the Trekker spatial barcodes and the mRNAs from a specific nucleus, they are also directly "of interest" from the perspective of the Trekker array because they are specifically

targeted for capture.[5] SOMF 8. The 138 and 030 patents refer to this aspect of the capture probe as the "target [nucleic-acid] binding domain." Plaintiffs' validity expert Dr. Satija opines that a POSA would understand that "of interest" means that "the aspect is intentionally targeted and that the experimental effort is directed toward it." Satija Att. A, Satija Sur-Reply Report, ¶ 139. Dr. Quackenbush also opines that REDACTED

. The 138 Patent specifies that the "target-binding domain" is complementary to at least a "portion of the nucleic acid that binds to the target-binding domain." D.I. 258-7 (Ex. G), 138 Patent, Claim 1; *see also* D.I. 258-7 (Ex. H), 030 Patent, claim 1. Therefore, a "nucleic acid" that includes a sequence complementary to the target-binding domain is the biological molecule of interest that the capture probe is designed to bind. REDACTED

SOMF 8.

Dr. Quackenbush has provided detailed opinions that Trekker oligonucleotides are designed to specifically target compatible single-cell barcoded oligos. REDACTED Defendants' expert, Dr. Puglisi, agreed that the Trekker oligos are designed to target the single-cell barcode oligos:

---

[5] Defendants argue that Trekker oligonucleotides do not bind to a biological molecule in the tissue sample (i.e., an mRNA) and only "indirectly interact" with the mRNAs. D.I. 256 at 14-16. But "interacting" and "binding" are separate claim elements in the 022 Patent. There is no meaningful dispute that interactions between the Trekker oligonucleotides and molecules in a nucleus occur in the tissue sample. REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

In light of Defendants' admitted deliberate targeting of the single-cell barcode oligos with target-binding domains, there is at least a genuine dispute of fact as to whether the Trekker probes are "capture probes" and "binding agents." SOMF 8.

  **c.**  **There Is A Further Dispute Of Material Fact Over Whether The Single-Cell Oligos Are Added To The Sample**

Defendants assert that the single-cell barcodes are not molecules "of interest" because they are not "added to the sample under study." D.I. 256 at 18. As discussed above, there is no claim

23

construction requiring molecules of interest to be in or part of a sample, and the specification notes that "probes" that are "used" in some way for detection can be binding partners without mention of whether they are added to a sample or not. However, even if it were a requirement that the probe "molecule of interest" were "added to the sample under study," there is a genuine dispute of fact about whether Trekker meets that test. SOMF 3.

In a Trekker assay, the tissue sample is split up into individual nuclei for study. The nuclei are sequestered into their own partitions (water-in-oil droplets in the example of the 10x Chromium workflow) where they are brought together with the single-cell barcode oligonucleotides. REDACTE

The single cell barcodes are thereby added to each segmented portion of the original tissue sample, and the Trekker capture probes then target and bind the single-cell barcode oligos.

REDACTED

; SOMF 3; SOUF Response 7.

The Chee patents discuss this type of approach where binding agents are used and portions of the sample are segmented or sequestered for subsequent reagent delivery, where the sequestering of portions of the sample aids in preserving location information:

> For several applications, it may be preferred to segment or sequester certain areas of the biological samples into one or more assay areas for different reagent distributions and/or biological target determination. The assay areas may be physically separated using barriers or channels.

Ex. 1, 022 Patent, 16:23-27, 24:19-25; *see also* Satija Att. A, Satija Sur-Reply Report, ¶ 83 ("a POSA would understand that portions of the sample could also be isolated by segmenting or sequestering for target determination"); REDACTED



REDACTED



Trekker's reliance on the addition of the single-cell barcodes (the molecules of interest) to the sequestered nuclei and mRNAs produces another genuine dispute of fact about whether Trekker has "capture probes" and "binding agents" in the meaning of the Asserted Patents. SOMF 3.

## VI.    PLAINTIFFS' DOCTRINE OF EQUIVALENTS EVIDENCE CREATES A GENUINE DISPUTE OF FACT FOR TRIAL

Infringement under the doctrine of equivalents (DOE) is a question of fact and turns on whether an asserted equivalent is insubstantially different from a claim element, or whether it meets the function-way-result test. *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co*., 559 F.3d 1308, 1312 (Fed. Cir. 2009).

Defendants spend only one paragraph addressing DOE and fail to grapple with the detailed factual evidence proffered by Plaintiffs' expert describing how the Trekker probes are equivalent to the claimed capture probes, even assuming only molecules like native mRNA are the "biological molecules of interest."[6] D.I. 256 at 21. Dr. Quackenbush's DOE analysis is that if REDACTED

Dr. Quackenbush provides a complete function-way-result analysis that is unrebutted by Defendants' motion. SOMF 12-18.

**Same function:** Dr. Quackenbush opines that the binding agent or capture probe in Dr. Chee's invention performs the function of REDACTED

---

[6] Defendants cannot cure their lack of substantive arguments against Plaintiffs' DOE theories by presenting additional evidence in their reply. *See Alston v. Forsyth*, 379 F. App'x 126, 129 (3d Cir. 2010) (vacating summary judgment motion that relied on evidence and argument presented for first time in reply brief); *Baxter Healthcare Corp. v. Nevakar Injectables, Inc*., No. CV 21-1184-CJB, 2025 WL 823224, at *11 (D. Del. Mar. 14, 2025) (holding that a party waived or forfeited an argument when it "put the argument forward [] for the first time in its reply brief"); D. Del. LR 7.1.3(c)(2) ("The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief.").

He opines that like the binding agent/capture probe in the claims, Trekker's oligonucleotide

REDACTED

SMOF 12-14.

**Same way**: Dr. Quackenbush opines that the binding agents in Dr. Chee's patents and Trekker oligonucleotides achieve the function of associating the spatial barcode with molecules in the sample in substantially the same way, which is interacting with the molecules in the sample including via specific binding. SMOF 12-14.

The binding agents in Dr. Chee's patents can "interact or react with biological targets in the sample" and the patents describe that this can happen indirectly. Ex. 1, 022 Patent, 11:50-57, 4:56-58; D.I. 225, *Markman* Tr. at 102:22-103:1; REDACTED

. For example, the binding agent can bind to an intermediary probe (which in turn binds to a biological molecule in the sample) while interacting physically with a biological molecule of the tissue sample. REDACTED . The Trekker oligonucleotide similarly binds an intermediary molecule (single-cell barcode oligo, which in turn binds to mRNAs) and REDACTED

. Dr. Quackenbush explains that:

REDACTED

# REDACTED

REDACTED

The design of the binding sequence in the Trekker oligonucleotide further supports Dr. Quackenbush's "same way" opinion. The specification discloses cDNA as a biological molecule of interest, and REDACTED

. Similarly, the Trekker oligonucleotide includes a poly(A) target-binding sequence to bind to the poly(T) region of a single-cell barcode oligo, which is complementary to the poly(A) tail of an mRNA. SOUF Response 13.

The "same way" prong is also evidenced by the similarities between oligonucleotides used on Defendants' Trekker and Seeker bead arrays. The Trekker and Seeker oligonucleotides both use 30-nucleotide complementary target-binding domains (poly(A) for Trekker and poly(T) for Seeker). REDACTED    Trekker and Seeker employ the same poly(T)/poly(A) binding mechanism to capture nucleic acids. REDACTED

**Same result**: Dr. Quackenbush opines that the "same result" prong is met because Trekker, like Dr. Chee's invention, achieves the result that REDACTED

; SMOF

15-17. Dr. Quackenbush explains that, when a binding agent directly hybridizes to a mRNA target,

REDACTED

REDACTED

. But the ultimate result is the same. "Equivalency is not defeated by using an additional step to achieve what the patentee does in one step." *EMI Grp. N. Am. v. Intel Corp.*, 157 F.3d 887, 896-97 (Fed. Cir. 1998). Dr. Puglisi also agreed that Trekker allows REDACTED

That precisely matches the inventive result of the patent, which is using coding tags "to link assay results back to locations in the sample." Ex. 1, 022 Patent, 9:13-17.

Trekker's achievement of the same result is evidenced by the fact that Trekker and Seeker (which involves binding agents directly hybridizing to mRNA targets) get to the same result in only "slightly different" ways. REDACTED

REDACTED

Defendants' sole argument against DOE is a conclusory invocation of the principle of claim vitiation: "Acceptance of such a theory would effectively rewrite the Asserted Claims such that an agent would satisfy the 'binding agent' and 'capture probe' limitations so long as the agent binds to any biological molecule—reading out the requirement that the molecule be 'of interest,' thereby vitiating it." D.I. 256 at 21.

Claim vitiation does not apply here. The Federal Circuit held that claim vitiation "cannot be satisfied by simply noting that an element is missing from the claimed structure or process." *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012). "The vitiation test cannot be satisfied merely by noting that the equivalent substitute is outside the claimed limitation's literal scope. Rather, vitiation applies when one of skill in the art would understand that the literal and substitute limitations are not interchangeable, not insubstantially different, and when they do not perform substantially the same function in substantially the same way, to accomplish substantially the same result." *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1347 (Fed. Cir. 2013).

Defendants' conclusory argument is that there can be no equivalence because the Trekker oligonucleotide does not bind to a "biological molecule of interest" (i.e. does not literally meet the claim construction). D.I. 256 at 21. But Defendants have not argued that the Trekker oligonucleotide's binding partner (the single cell barcode oligonucleotide) is the "antithesis" or a "polar opposite" of a "biological molecule of interest." Defendants also have not addressed Plaintiffs' function-way-result analysis. Defendants' objection is that the DOE would broaden one aspect of the claim, but that is always the effect of the DOE. This District has rejected claim vitiation arguments when a party's expert has provided a proper function-way-result analysis. *Baxter Healthcare Corp. v. Nevakar Injectables, Inc*., No. CV 21-1184-CJB, 2025 WL 823224, at *8-11 (D. Del. Mar. 14, 2025); Ex. 8, *Sprint Communs. Co. LP v. Charter Communs., Inc.*, No. 17-1734-RGA, 2021 U.S. Dist. LEXIS 49067, at *10-11 (D. Del. Mar. 16, 2021); *Prolitec Inc. v. Scentair Techs*., LLC, No. CV 20-984-WCB, 2023 WL 8697973 at *8-9 (D. Del. Dec. 13, 2023).

## VII.    CONCLUSION

For the foregoing reasons, Defendants' partial summary judgment motion of Trekker's non-infringement should be denied.

30

Respectfully Submitted,

*Of Counsel*:

| | |
|---|---|
| TENSEGRITY LAW GROUP LLP | */s/ Jason J. Rawnsley* |
| Matthew Powers | Frederick L. Cottrell, III (#2555) |
| Paul Ehrlich | Jason J. Rawnsley (#5379) |
| Stefani Smith | Alexandra M. Ewing (#6407) |
| Li Shen | Gabriela Z. Monasterio (#7240) |
| 555 Twin Dolphin Drive | RICHARDS, LAYTON & FINGER, P.A. |
| Suite 650 | 920 North King Street |
| Redwood Shores, CA 94065 | Wilmington, DE 19801 |
| Tel: (650) 802-6000 | (302) 651-7700 |
| | cottrell@rlf.com |
| Ronald J. Pabis | rawnsley@rlf.com |
| Kiley White | ewing@rlf.com |
| Joanna R. Schacter | monasterio@rlf.com |
| Grace Gretes | |
| Parshad K. Brahmbhatt | |
| 1676 International Drive | *Attorneys for Plaintiffs* |
| Suite 910 | |
| McLean, VA 22102 | |
| Tel: (650) 802-6000 | |
| 10x_Curio_Service@tensegritylawgroup.com | |

Dated: January 8, 2026

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 8, 2026, copies of the foregoing were served upon the following parties as indicated below:

| | |
|---|---|
| Brian E. Farnan (Bar No. 4089)<br>Michael J. Farnan (Bar No. 5165)<br>FARNAN LLP<br>919 N. Market Street, 12th Floor<br>Wilmington, DE 19801<br><br>Kevin B. Collins<br>Jeffrey B. Elikan<br>Eric R. Sonnenschein<br>Douglas A. Behrens<br>Andrew D. Lazerow<br>Matthew Kudzin<br>Priscilla Dodson<br>Allyson Corigliano<br>Adam Smith<br>Robert T. McMullen<br>Laura M. Martin<br>COVINGTON & BURLING LLP<br>One CityCenter<br>850 Tenth Street, NW<br>Washington, DC 20001-4956<br><br>Madison Arent<br>COVINGTON & BURLING LLP<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018-1405<br>Telephone: (212) 841-1000<br><br>Ian M. Hurst<br>Covington & Burling LLP<br>1999 Avenue of the Stars<br>Los Angeles, CA 90067-4643<br>Telephone: (424) 332-4800<br><br>***Counsel for Defendants*** | **Via E-mail**<br>bfarnan@farnanlaw.com<br>mfarnan@farnanlaw.com<br>Cov-Curio-10x@cov.com |

*/s/ Jason J. Rawnsley*
Jason J. Rawnsley