IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 10x GENOMICS, INC. and PROGNOSYS BIOSCIENCES, INC., <br><br> *Plaintiffs,* <br><br> *v.* <br><br> CURIO BIOSCIENCE, INC., TAKARA BIO USA, INC., and TAKARA BIO USA HOLDINGS, INC. <br><br> *Defendants.* | Civil Action No. 23-cv-1375-MN <br><br> **REDACTED - PUBLIC VERSION** |

**[PROPOSED] JOINT PRETRIAL ORDER**

RICHARDS, LAYTON & FINGER, P.A.
Frederick L. Cottrell, III (#2555)
Jason J. Rawnsley (#5379)
Alexandra M. Ewing (#6407)
Gabriela Z. Monasterio (#7240)
920 North King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
rawnsley@rlf.com
ewing@rlf.com
monasterio@rlf.com


*Of Counsel*:

TENSEGRITY LAW GROUP LLP
Matthew Powers
Paul Ehrlich
Stefani Smith
Li Shen
555 Twin Dolphin Drive
Suite 650
Redwood Shores, CA 94065
Tel: (650) 802-6000

Azra M. Hadzimehmedovic
Ronald J. Pabis

FARNAN LLP
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com


*Of Counsel*:

COVINGTON & BURLING LLP

Kevin B. Collins
Jeffrey B. Elikan
Eric R. Sonnenschein
Douglas A. Behrens

Priscilla Dodson
Allyson Corigliano
Adam Smith
Robert T. McMullen
Laura M. Martin
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956

Daniel Kazhdan
Kiley White
Grace Gretes
John Pierce
1676 International Drive
Suite 910
McLean, VA 22102
Tel: (650) 802-6000
10x_Curio_Service@tensegritylawgroup.com

***Attorneys for Plaintiffs***


Dated: April 24, 2026

Tel: (202) 662-6000
Cov-Curio-10x@cov.com

Yiye Fu
COVINGTON & BURLING
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306
(650) 632-4700

Ian M. Hurst
1999 Avenue of the Stars
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
Cov-Curio-10x@cov.com

***Attorneys for Defendants***

**TABLE OF CONTENTS**

I.      NATURE OF THE CASE ........................................................................................... 1

II.     JURISDICTION ....................................................................................................... 2

III.    LENGTH AND TYPE OF TRIAL ........................................................................... 2

        A.      Issues To Be Decided By The Court.......................................................... 4

IV.     FACTS THAT ARE ADMITTED AND REQUIRE NO PROOF ................................. 4

V.      FACTS THAT REMAIN TO BE LITIGATED ......................................................... 6

VI.     ISSUES OF LAW THAT REMAIN TO BE LITIGATED ........................................... 6

VII.    EXHIBITS AND OBJECTIONS THERETO ............................................................ 7

VIII.   WITNESSES AND OBJECTIONS THERETO......................................................... 10

        A.      Trial Witness List.................................................................................... 10

        B.      Witnesses Appearing By Deposition ..................................................... 11

IX.     STATEMENT OF INTENDED PROOF.................................................................. 16

X.      AMENDMENTS TO THE PLEADINGS ............................................................... 16

XI.     SETTLEMENT CERTIFICATION......................................................................... 16

XII.    MOTIONS *IN LIMINE* ........................................................................................ 16

XIII.   OTHER MATTERS............................................................................................... 19

        A.      Proposals Regarding Issue Narrowing For Trial ................................... 19

                1.      Plaintiffs' Proposal...................................................................... 19

                2.      Defendants' Proposal ................................................................... 21

        B.      Stipulation Regarding Exchanges During Trial..................................... 22

                1.      Exchanges of Exhibits to Be Used With Opening Arguments ................ 22

                2.      Exchange of Exhibits and Illustratives To Be Used With Witnesses
                        During Trial ................................................................................. 23

                3.      Identification of Order of Witnesses........................................... 25

4.      Presentation of Deposition Designations ................................................. 25

5.      Exchange of Uncontested Facts, Interrogatory Responses and Responses to Requests for Admissions to be Read During Trial ............................... 27

6.      Outside Attorneys' Eyes Only Information ............................................. 28

C.    Stipulations Regarding Jury Procedures ................................................................. 28

D.    Motions for Judgment As a Matter of Law ............................................................. 28

E.    Electronic Witness Binders .................................................................................... 29

F.    Set-up of Electronic Equipment ............................................................................. 29

**TABLE OF EXHIBITS**

Joint Exhibits

| Exhibit | Description |
|---|---|
| 1 | Plaintiffs' Statement of Issues of Facts that Remain to be Litigated |
| 2 | Defendants' Statement of Issues of Facts that Remain to be Litigated |
| 3 | Plaintiffs' Statement of Issues of Law that Remain to be Litigated |
| 4 | Defendants' Statement of Issues of Law that Remain to be Litigated |
| 5 | Joint Exhibit List and Objections |
| 6 | Plaintiffs' Trial Exhibit List (including Defendants' objections) |
| 7 | Defendants' Trial Exhibit List (including Plaintiffs' objections) |
| 8 | Objection Key |
| 9A | Plaintiffs' Witness List (including Defendants' objections) |
| 9B | Defendants' Witness List (including Plaintiffs' objections) |
| 10 | Plaintiffs' Deposition Designations (including objections and counters-designations) |
| 11 | Defendants' Deposition Designations (including objections and counters-designations) |
| 12 | Plaintiffs' Statement of Intended Proof |
| 13 | Defendants' Statement of Intended Proof |
| 14 | Plaintiffs' Motion in Limine No. 1, Response, Reply, and Exhibits |
| 15 | Defendants' Motion in Limine No. 1, Response, Reply, and Exhibits |
| 16 | Defendants' Motion in Limine No. 2, Response, Reply, and Exhibits |
| 17 | Defendants' Motion in Limine No. 3, Response, Reply, and Exhibits |

Plaintiffs' Exhibits

| | |
|---|---|
| 18 | Defendants' April 6, 2026 Redline of Plaintiffs' April 3, 2026 Draft Stipulation & Proposed Order Regarding Precluding Certain Evidence and Argument at Trial |
| 19 | *Natera, Inc. v. CareDx, Inc.*, 1-20-cv-00038, D.I. 208 (D. Del. Apr. 28, 2023) |

Plaintiffs 10x Genomics, Inc. and Prognosys Biosciences, Inc. ("Plaintiffs") and Defendants Curio Biosciences, Inc., Takara Bio USA, Inc., and Takara Bio USA Holdings, Inc. ("Defendants") (together, the "Parties") submit the following proposed Joint Pretrial Order. The Pretrial Conference is scheduled for May 11, 2026 at 4:30 p.m. A five-day jury trial is scheduled to begin on May 18, 2026.

## I.    NATURE OF THE CASE

1.    This is a patent infringement action in which Plaintiffs assert that Defendants have infringed and continue to infringe U.S. Patent Nos. 10,480,022 (the "022 Patent"), 10,662,468 (the "468 Patent"), 11,001,879 (the "879 Patent"), 11,549,138 (the "138 Patent"), and 11,761,030 (the "030 Patent") (collectively, the "Asserted Patents"). The asserted claims are: claims 2, 6, 7, 14, 15, 19, and 28 of the 022 Patent; claims 21 and 26 of the 468 Patent; claims 2, 5, 6, 12, 17, 21, 27, and 30 of the 879 Patent; claims 5, 20, and 29 of the 138 Patent; and claims 3, 6, 24, 26, and 30 of the 030 Patent.

2.    Defendants are accused of infringing the Asserted Patents directly by making, using, selling, importing into the United States, and exporting from the United States the Accused Instrumentalities, i.e., the Seeker and Trekker products. Defendants are also accused of indirectly infringing the Asserted Patents by inducing others to infringe and by contributing to the infringement by others. Plaintiffs assert that Defendants' infringement has been willful. *See* D.I. 1; Plaintiffs' Supplemental Infringement Contentions, served on July 25, 2025.

3.    Defendants deny Plaintiffs' infringement claims and deny that their conduct has been willful. Defendants counterclaim for declaratory judgment of non-infringement and invalidity of the Asserted Patents (Fifth to Fourteenth Counterclaims). D.I. 49, ¶¶ 197-236. Defendants also assert affirmative defenses of invalidity and non-infringement to Plaintiffs' Counts I-V. *See* Defendants' First and Second Affirmative Defenses, D.I. 49, ¶¶ 79-80. Plaintiffs

1

deny Defendants' counterclaims and defenses. D.I. 75. Plaintiffs further assert affirmative defenses to Defendants' declaratory judgment counterclaims, including failure to state a claim, infringement, validity, and no exceptional case. D.I. 75 at 24-25.

4.      The operative pleadings are Plaintiffs' Complaint (D.I. 1), Defendants' Answer and First Amended Counterclaims to Plaintiffs' Complaint (D.I. 49), and Plaintiffs' Answer and Affirmative Defenses to Defendants' First Amended Counterclaims (D.I. 75). Defendants' First and Third Counterclaims in D.I. 49 have been dismissed by the Court. D.I. 73.

5.      The following motions are pending: Defendants' Motion for Partial Summary Judgment (D.I. 255-258 (Opening); 265-270 (Response); 271-273 (Reply)).

## II.      JURISDICTION

6.      This Court has jurisdiction over Plaintiffs' Counts I-V pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7.      This Court has jurisdiction over Defendants' Counterclaims V-XIV pursuant to 28 U.S.C. §§ 2201-2202 (Declaratory Judgment Act); 35 U.S.C. § 1 (Patent Laws); and 28 U.S.C. § 1367 (Supplemental Jurisdiction).

8.      The Parties do not dispute subject matter jurisdiction, personal jurisdiction, or venue for purposes of this action.

## III.     LENGTH AND TYPE OF TRIAL

9.      This trial will be a jury trial. This case is set for a jury trial of five (5) days, starting on May 18, 2026. D.I. 25, 88. The trial will be timed.

10.     **Plaintiffs** request thirteen (13) hours per side because Defendants are intending to present testimony from seven live fact witnesses and two expert witnesses in their case, and are also refusing to narrow the scope of invalidity grounds, continuing to assert numerous grounds within five different invalidity theories (i.e., (i) failure to satisfy the patent eligibility requirements

of 35 U.S.C. § 101, (ii) anticipation under 35 U.S.C. § 102, (iii) obviousness under 35 U.S.C. § 103 based on a particular prior art combination, (iv) lack of enablement under 35 U.S.C. § 112, and (v) lack of written description under 35 U.S.C. § 112) despite Plaintiffs' proposal for mutual and timely case narrowing in advance of trial. *See* Ex. 9B; Section XIII(A). **Defendants** request eleven (11) hours per side and expect that the Parties will streamline their respective cases in advance of trial despite Plaintiffs' refusal to narrow their asserted claims in advance of the Pretrial Conference.

11. Time spent on jury selection and the jury instruction conference does not count against the allocation of trial time. Time will be counted whenever a party is arguing before the jury or the Court, including on evidentiary objections; questioning a witness; and presenting deposition testimony. If the Court determines that an evidentiary dispute was frivolous or brought in bad faith, the Court may charge the losing party with all the time dedicated to resolving the issue.

12. Opening statements are limited to forty-five (45) minutes per side. Closing statements are limited to one (1) hour per side. All time used on opening and closing statements counts against the overall allocation. The parties must reserve one (1) hour of their allotted time for closing statements.

13. The presentation at the jury trial will occur in the following order: (1) Plaintiffs will first present their patent infringement case; (2) Defendants will present responses to Plaintiffs' patent infringement case, including their non-infringement and invalidity cases; and (3) Plaintiffs will present their responses to Defendants' case, [**Plaintiffs**: including validity, infringement, and damages] [**Defendants**: limited to invalidity/validity]. The Parties will cooperate to ensure that witnesses called in each side's case need only appear once during the entire trial. To effect this,

cross examination of a witness can exceed the scope of the direct examination. Plaintiffs may recall their own witnesses in their rebuttal case (3) as appropriate.

14.     On each trial day, counsel are to be present and ready at 8:30 a.m. The trial day will run until approximately 4:30 p.m.

15.     The Courtroom Deputy will keep a running total of trial time used by counsel. The Court's calculated trial time is the official time for the trial.

### A.     Issues To Be Decided By The Court

16.     The Parties request that the Court conduct evidentiary hearings or order post-trial briefing and rule on equitable issues, including Plaintiffs' injunctive request and Defendants' reverse doctrine of equivalents defense, after the jury has rendered its verdict. The Court will determine whether it will take additional evidence to adjudicate these equitable issues and will determine the need for any proposed findings of fact and conclusion of law. **Plaintiffs** propose that the Court hear testimony of no more than thirty (30) minutes per side on Defendants' reverse doctrine of equivalents defense the day after the jury returns its verdict. **Defendants** propose that all equitable issues be addressed in an orderly fashion on a schedule decided by the Court.

## IV.     FACTS THAT ARE ADMITTED AND REQUIRE NO PROOF

17.     Per agreement of the Parties, the facts below are not contested for purposes of trial. These uncontested facts shall require no proof at trial and will become part of the evidentiary record at trial once introduced to the jury.

18.     Plaintiff 10x Genomics, Inc. ("10x") is a Delaware corporation with its principal place of business in Pleasanton, California.

19.     Plaintiff Prognosys Biosciences, Inc. ("Prognosys") is a Delaware corporation with its principal place of business in San Diego, CA.

20.     Defendant Curio Bioscience, Inc. ("Curio") is a Delaware corporation with its principal place of business in Palo Alto, California. Curio is a wholly owned subsidiary of Takara Bio USA Holdings, Inc.

21.     Defendant Takara Bio USA, Inc. is a Delaware corporation with its principal place of business in San Jose, California. Takara Bio USA, Inc. is a wholly owned subsidiary of Takara Bio USA Holdings, Inc.

22.     Defendant Takara Bio USA Holdings, Inc. is a Delaware corporation with its principal place of business in San Jose, California.

23.     Curio and Takara Bio USA Holdings, Inc. entered into an Agreement and Plan of Merger on January 14, 2025.

24.     The 022, 468, 879, 138, and 030 Patents are all titled "Spatially Encoded Biological Assays."

25.     The inventor listed on the face of each of the Asserted Patents is Mark Chee.

26.     The assignee listed on the face of each of the Asserted Patents is Prognosys Biosciences, Inc.

27.     10x is an exclusive licensee of the 022, 468, 879, 138, and 030 Patents.

28.     The 022 Patent was filed on February 14, 2019 and issued on November 19, 2019.

29.     The 468 Patent was filed on October 22, 2019 and issued on May 26, 2020.

30.     The 879 Patent was filed on January 8, 2021 and issued on May 11, 2021.

31.     The 138 Patent was filed on May 26, 2022 and issued on January 10, 2023.

32.     The 030 Patent was filed on December 5, 2022 and issued on September 19, 2023.

33.     The Asserted Patents each claim priority to provisional application No. 61/321,124, filed on April 5, 2010.

34.     WIPO International Publication No. WO 2009/091034 A1 ("Cantor") was published on July 23, 2009.

35.     European Patent Application No. EP 2 130 913 A1 ("Okano") was published on September 12, 2009.

36.     WIPO International Publication No. WO 2008/075086 A1 ("Southern") was published on June 26, 2008.

37.     10x makes, sells, and markets the Visium product line, including Visium, Visium FFPE, Visium HD, Visium HD 3', and Visium CytAssist products.

38.     Defendants do not have a license to the 022, 468, 879, 138, and 030 Patents.

39.     Defendants make the Seeker and Trekker products solely in the United States.

40.     Defendants sell and market the Seeker and Trekker products in the United States and worldwide.

41.     Defendants' first sale of the Seeker products occurred on or around June 8, 2022. Curio announced the commercial launch of the Seeker products on February 8, 2023.

42.     Defendants' first sale of the Trekker products occurred on or around February 28, 2024.

## V.     FACTS THAT REMAIN TO BE LITIGATED

43.     Plaintiffs' Statement of Issues of Facts That Remain To Be Litigated is attached as **Exhibit 1**.

44.     Defendants' Statement of Issues of Facts That Remain To Be Litigated is attached as **Exhibit 2**.

## VI.    ISSUES OF LAW THAT REMAIN TO BE LITIGATED

45.     Plaintiffs' Statement of Issues of Law That Remain To Be Litigated is attached as **Exhibit 3**.

46. Defendants' Statement of Issues of Law That Remain To Be Litigated is attached as **Exhibit 4**.

## VII.    EXHIBITS AND OBJECTIONS THERETO

47. The Parties agree that the demonstrative exhibits that the Parties intend to use at trial do not need to be included on their respective trial exhibit lists that are part of this Final Pretrial Order.

48. Plaintiffs' demonstrative exhibits will be identified with PDX numbers, starting with PDX 1.

49. Defendants' demonstrative exhibits will be identified with DDX numbers, starting at DDX 1.

50. The Parties' joint exhibit list and objections thereto is attached as **Exhibit 5**.

51. Plaintiffs' list of trial exhibits and Defendants' objections thereto is attached as **Exhibit 6**.

52. Defendants' list of trial exhibits and Plaintiffs' objections thereto is attached as **Exhibit 7**.

53. The Parties' objection key for exhibits and deposition designation objections is attached as **Exhibit 8**.

54. The pretrial order contains the maximum universe of exhibits to be used by any party (other than solely for impeachment) as well as all objections to the admission of such exhibits. Exhibits not listed will not be admitted unless good cause is shown.

55. The Parties are continuing to deduplicate the exhibit lists. To the extent the Parties do not resolve exhibit objections cooperatively, they will provide remaining objections to the Court according to the procedures described below in Section XIII(B).

56.     No exhibit will be admitted unless offered into evidence through a witness, who must at least be shown the exhibit. Exhibits may not be published, displayed, or otherwise shown to the jury until after they have been admitted into evidence. Once admitted, counsel may publish exhibits to the jury without requesting to do so. Exhibits not objected to will be received into evidence by the operation of the Final Pretrial Order without the need for additional foundation testimony, provided they are shown to a witness.  Experts may sponsor exhibits they rely upon.

57.     Any description of a document or other material on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the document or material. The listing of a document on a side's exhibit list or the Joint Exhibit List is not an admission that such document is relevant or admissible when offered by the opposing party for the purpose that the opposing party wishes to admit the document. Each party reserves the right to object to the admissibility of any evidence offered by the other party, at the time such evidence is offered, in view of the specific context in which such evidence is offered.

58.     If any party removes or otherwise withdraws an exhibit from its Exhibit List, another party may amend its Exhibit List to include that same exhibit. The Parties may make objections to such exhibit, other than an objection based on untimely listing. Each party reserves the right to use any exhibit identified by another party or parties. The Parties agree that the rules regarding exhibits in this section apply to exhibits for both the parties' cases in chief and rebuttal cases, but they do not limit a party's ability to use otherwise permissible but unlisted materials for impeachment. A party may not use materials, whether listed or unlisted, that are excluded by a Court's ruling on a motion *in limine.*

59.     The Parties will exchange final marked copies of their exhibits, with exhibit numbers, on April 17, 2026. D.I. 298. The final digital copy of each exhibit page will be endorsed

8

with a unique page identifier, including the exhibit prefix, exhibit number, page numbers of the electronic document. The exhibit sticker shall include the Case Number. The exhibit prefixes shall be: "JTX" for exhibits on the Joint Exhibit List; "PTX" for exhibits on Plaintiffs' Exhibit List, and "DTX" for exhibits on Defendants' Exhibit List. The page numbering shall begin at 1 for the first page of each exhibit and the numbering on each page should include the trial exhibit number and the physical page number separated by a decimal. For example, page 62 of Joint Exhibit 5 would be endorsed / paginated as either: "JTX-005.062" or "JTX-5.62."

60.     Three (3) days before the first day of trial (i.e., May 15, 2026), the Parties shall provide electronic versions of all trial exhibits on the exhibit lists to the Court via a flash drive. The exhibits shall be named with their exhibit numbers (e.g., JTX-001, PTX-001, and DTX-001).

61.     On the first day of trial, each party shall provide a completed AO Form 187 exhibit list to the Courtroom Deputy.

62.     **Plaintiffs** respectfully request that the Court address the following objection regarding exhibits at the pre-trial conference as well as objections identified in Section VIII: Defendants refuse to remove from their exhibit list documents that are only relevant to allegations that the Parties have stipulated to exclude from trial, i.e., that "10x is 'litigious,' that 10x engages in anticompetitive conduct, that 10x uses litigation to harm competitors, or that 10x litigations have harmed competitors." *Compare* D.I. 320 *with* Ex. 7 (Plaintiffs' Objections to Defendants' Exhibit List) (objection "MIL"). Exemplary exhibits include DTX-0019, DTX-0021-0023, DTX-0195 ("Sounding an Alarm over Spatial Biology" article), DTX-0263 (same), DTX-1118 (same). Defendants should (1) remove those exhibits from their exhibit list, having not identified any issues those exhibits are relevant to other than the matters Defendants stipulated not to introduce at trial, and (2) confirm to the Court that they will not attempt to introduce them at trial for any purpose.

9

There is no justification for taking valuable time at trial for objections to these exhibits when Defendants entered a stipulation that excludes them from trial.

63.    **Defendants** intend to comply with the Parties' stipulation and have told Plaintiffs as such. Exhibit objections should be addressed in accordance with the Court's practice at trial.

64.    Other than this objection, Plaintiffs are not asking the Court to review and rule on the objections to exhibits at the pretrial conference.

## VIII.    WITNESSES AND OBJECTIONS THERETO

### A.    Trial Witness List

65.    Plaintiffs' witness list and Defendants' objections are appended hereto in **Exhibit 9A**. Defendants' witness list and Plaintiffs' objections are appended hereto in **Exhibit 9B**. Exhibits 9A and 9B include witnesses: (a) who will be called; (b) who may be called; and (c) whose deposition may be used at trial.

66.    The Court will rule at trial on objections to expert testimony as outside the scope of prior expert disclosures, taking time from the parties' trial presentation to hear argument and decide such objections.

67.    Fact witnesses who will testify in Court, including rebuttal witnesses, will be excluded from the courtroom except during their own testimony, and they shall not review the transcripts of the trial testimony of other fact witnesses. [**Plaintiffs' proposal:** This provision does not apply to one designated corporate representative for Plaintiffs and one designated corporate representative for Defendants, who will be permitted to attend the entire trial, including opening statements (subject to exclusion as appropriate for certain highly confidential information for which the courtroom is sealed). Plaintiffs object to Defendants' proposal below because it seeks to allow Defendants' two will-call testifying fact witnesses—Messrs. Chaney and Farmer—to avoid the sequestration rule. Mr. Chaney, identified as Curio's corporate representative, is not even

10

currently employed by Curio or Takara.] [**Defendants' proposal:** This provision does not apply to one designated corporate representative for each Plaintiff and one designated corporate representative for each Defendant (Ari Chaney for Curio and Andrew Farmer for Takara), who will be permitted to attend the entire trial, including opening statements (subject to exclusion as appropriate for certain highly confidential information for which the courtroom is sealed). Mr. Chaney and Dr. Farmer are responsible for managing the litigation on behalf of Curio and Takara, respectively. Each will each only be testifying on a very limited set of issues related to Plaintiffs' expansive willful infringement allegations.] Additionally, retained expert witnesses who have submitted disclosures under Federal Rule of Civil Procedure 26(a)(2)(B) may attend the entire trial and/or review transcripts of openings and trial testimony.

### B.  Witnesses Appearing By Deposition

68.  The Parties provide designations, objections, and counter-designations here.  The pretrial order contains the maximum universe of deposition designations, counter-designations, and objections to admission of deposition testimony; none of the foregoing shall be supplemented without approval of all parties or leave of the Court, on good cause shown.

69.  [**Plaintiffs**: If a party calling the witness by deposition identifies only a subset of its affirmative designations identified in Exhibits 10-11 to this Pretrial Order, the counter-designating party may identify the withdrawn affirmative designations as counter-designations—but only to the extent those affirmative designations would otherwise be counter-designations relevant to the affirmatively designated testimony that has not been withdrawn. Likewise, if the counter-designating party identifies only a subset of its counter-designations, the party calling the witness may identify those withdrawn counter-designations as counter-counter-designations—but only to the extent those counter-designations would otherwise be counter-counter-designations relevant to the counter-designated testimony that has not been withdrawn. *See* Paragraphs 72-75

11

(Plaintiffs' objection regarding Defendants' improper counter-designations).] [**Defendants**: Each Party is entitled to offer testimony designated by any other Party (whether as a designation or counter-designation), even if not separately listed on its own deposition designation list. The Parties may use any testimony they have counter-designated in response to any affirmative designations introduced at trial by an opposing party. A party may designate testimony identified as affirmative testimony in this order as a counter-designation.]

70.     **Exhibit 10** includes a list, by page and line, of the testimony designated by Plaintiffs, Defendants' objections and counter-designations, and Plaintiffs' objections to Defendants' counter-designations. **Exhibit 11** includes a list, by page and line, of the testimony designated by Defendants, Plaintiffs' objections and counter-designations, and Defendants' objections to Plaintiffs' counter-designations. The Parties reserve the right to designate testimony of any witness identified by the opposing party as a live witness but subsequently withdrawn or otherwise not presented as a live witness at trial.

71.     To the extent the Parties do not resolve issues regarding narrowing of the designations and objections, they will provide the remaining objections to the Court according to the procedures described below in Section XIII(B).

72.     [**Plaintiffs' Position:** Plaintiffs intend to raise the following objection regarding deposition designations at the pre-trial conference:  Defendants' counter-designations are lists of designations in the order they appear in the transcript, with no connection to the affirmative designations they purportedly respond to. For example, Plaintiffs designated testimony from Jane Clarke confirming her name (Dep. at 12:8-10). In response, Defendants counter-designated testimony from at 56:24-57:3 concerning an unrelated topic—Clarke's understanding that "UCI" refers to UC Irvine. This problem pervades all of Defendants' counter-designations. Federal Rule

12

of Civil Procedure 32(a)(6) permits a party to counter-designate testimony "that in fairness should be considered with the part introduced." *See also* FRE 106.  No rule or precedent authorizes indiscriminate designation of transcript citations unconnected to the affirmatively designated testimony. *See Carroll v. Trump,* 2023 WL 3071966, at \*1 (S.D.N.Y. Apr. 25, 2023) ("Mr. Trump's argument that Rule 32(a)(6) authorizes a party to use 'any other parts' of a deposition of which parts are offered by its adversary is unsupported by the great weight of authority. Such an interpretation of the rule also would render its first part, which reflects the purported policy objective of the rule, superfluous." (footnotes omitted)).

73.     Plaintiffs complied with these rules in their own designations and provided Defendants with proper notice of their counter-designations. Plaintiffs also identified an example where Defendants' own counsel applied this same approach. *See, e.g.*, *Deere & Co. v. AGCO Corp. Precision Planting*, 1:18-cv-00827-CFC-JLH, D.I. 456-1 at 355-365.

74.     Defendants cite a single example from a bench trial in *Intercept Pharmaceuticals, Inc. v. Apotex*, Inc., No. 20-cv-1105 (MN), where Defendants' counsel applied the same approach. The opposing party objected, and at the pretrial conference, this Court declined to rule on the issue in the abstract, indicating it would address objections regarding counter-designations at trial if necessary. Final Pretrial Conference Tr. at 56:11-18. But Plaintiffs' objection here is not abstract. The problem pervades all of Defendants' counters because none of their designations are proper counter-designations. Waiting until trial to resolve this issue will prejudice Plaintiffs, who lack notice from Defendants about which testimony they deem responsive "in fairness"—notice that would allow Plaintiffs to adjust their affirmative designations accordingly. Defendants' approach has already imposed additional burdens: because their so-called counters are actually improper affirmative designations, Plaintiffs were forced to prepare counter-counter designations for

13

completeness. Meanwhile, Plaintiffs followed the rules and provided that very notice to Defendants. Defendants' refusal to follow the rules would force Plaintiffs to expend valuable trial time addressing all Defendants' counter-designations—compounding the prejudice.

75.    Finally, Defendants propose that the Court order that "[e]ach Party is entitled to offer testimony designated by any other Party (whether as a designation or counter-designation), even if not separately listed on its own deposition designation list." Plaintiffs object because a party cannot call its own witnesses by deposition and freely designate whatever testimony it wishes; if a party wants to call its own witnesses, it must do so live. A party may use the opposing side's designations only as proper counters to testimony the opposing party seeks to introduce. *See Carroll v. Trump*, 2023 WL 3071966, at *1. Defendants suggest that Plaintiffs have misunderstood Defendants' position, yet their explanation confirms that they intend to call by deposition witnesses affiliated with Defendants if Plaintiffs choose not to do so. The rules do not permit this. If Defendants intend to call their own witness—whether or not that witness appears on Plaintiffs' witness list—they must present that witness live at trial.]

76.    [**Defendants' Position:** Defendants disagree with this approach as it is not the Court's practice, as any disputes to witnesses should be brought the morning of their intended use. Defendants have provided counter-designations in accordance with the Parties' stipulated pretrial exchange schedule (D.I. 298) and applicable Federal and Delaware Rules. Defendants' counter-designations, which in fairness should be considered with Plaintiffs' affirmative designations, are listed chronologically, and Plaintiffs' complaint appears to be that they are not listed on the same line as each and every corresponding affirmative designation. The exchange schedule does not require this specific listing requirement that Plaintiffs now seek to impose, and Plaintiffs never suggested such a requirement in the parties' discussions leading up to the stipulated pretrial

14

exchange schedule. Indeed, it was Plaintiffs who proposed the parties' pretrial exchange schedule in the first instance—they could have specified the listing requirement they are now seeking, but did not do so. Instead, Plaintiffs waited until the parties had completed their counter-designations to impose their specific listing requirement on Defendants. This Court has declined to impose such a listing requirement for counter-designations previously, with the Court's pretrial order in *Intercept Pharmaceuticals, Inc. v. Apotex*, Inc., No. 20-cv-1105 (MN) being one example. Plaintiffs' lone reference to a case from the Southern District of New York does not compel this Court to deviate from conventional practice in this District.

77.    Conversely, Plaintiffs have violated the parties' stipulated pretrial exchange schedule by serving counter-counter-designations in response to Defendants' counter-designations. The Parties' stipulated pretrial exchange schedule does not allow for such counter-counter-designations, nor were counter-counter-designations proposed by Plaintiffs at any point leading up to the Parties' pretrial stipulation. Defendants have objected to Plaintiffs' counter-counter-designations accordingly. If the Court is inclined to hear deposition designation objections at the Pretrial Conference, Defendants request that the Court address Defendants' objections to Plaintiffs' counter-counter-designations.

78.    Plaintiffs' complaint about Defendants' proposal that "[e]ach Party is entitled to offer testimony designated by any other Party (whether as a designation or counter-designation), even if not separately listed on its own deposition designation list" misses the point. There is no dispute that the Parties intend to call their own witnesses live. The purpose of Defendants' proposed provision is to prevent prejudice to one Party if the other Party decides to withdraw a deposition witness at trial after previously representing that the witness would be called by deposition. In the event that a deposition witness is withdrawn, Defendants' proposed provision

15

would allow a Party relying on the other Party's representation that a deposition witness would be called to still present deposition testimony from that witness.]

79.     Other than this objection, Plaintiffs are not asking the Court to review and rule on the objections relating to depositions at the pretrial conference.

## IX.     STATEMENT OF INTENDED PROOF

80.     Plaintiffs' Statement of Intended Proof is attached as **Exhibit 12**.

81.     Defendants' Statement of Intended Proof is attached as **Exhibit 13.**

## X.     AMENDMENTS TO THE PLEADINGS

82.     The Parties do not seek to amend the pleadings at present.

## XI.     SETTLEMENT CERTIFICATION

83.     The Parties hereby certify that they have engaged in a good faith effort to explore resolution of the controversy by settlement.

## XII.     MOTIONS *IN LIMINE*

84.     Pursuant to the limits and procedures of the Scheduling Order (D.I. 25 at 11-12), briefing for the Parties' *in limine* motions are attached hereto as follows.

| Exhibit | Briefs |
|---|---|
| **Exhibit 14** | A: Plaintiffs' MIL 1 and Exhibits |
| | B: Opposition and Exhibits |
| | C: Reply and Exhibits |
| | |
| **Exhibit 15** | A: Defendants' MIL 1 and Exhibits |
| | B: Opposition and Exhibits |
| | C: Reply and Exhibits |
| | |
| **Exhibit 16** | A: Defendants' MIL 2 and Exhibits |
| | B: Opposition and Exhibits |
| | C: Reply and Exhibits |
| | |
| **Exhibit 17** | A: Defendants' MIL 3 and Exhibits |
| | B: Opposition and Exhibits |
| | C: Reply and Exhibits |

16

85.    [**Defendants' Position:** The Court should strike the improper reply in Plaintiffs' motion *in limine* No. 1. In the Opening in support of their MIL, Plaintiffs sought to exclude only ***three paragraphs*** (¶¶ 304, 308, and 358) from the Rebuttal Report of Curio's expert, Dr. Puglisi. Plaintiffs now vaguely suggest, for the first time, that the Court should exclude the "entire[ty] [of the] DOE and RDOE arguments regarding Seeker" and identify ***twenty-four paragraphs*** (¶¶ 303-318, 326-328, 358-360, 374) from Dr. Puglisi's Report, which do not even represent the entirety of Curio's DOE and RDOE arguments for Seeker. Plaintiffs should not be allowed to sandbag Defendants in this manner. In any event, Plaintiffs failed to identify any such evidence with specificity or meet their burden to demonstrate it would be inadmissible on any relevant ground. *See, e.g.*, *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013) (explaining that the "movant bears the burden of demonstrating that the evidence is inadmissable [*sic*] on ***any relevant ground***, and the court may deny a motion in limine when it lacks the ***necessary specificity*** with respect to the evidence to be excluded") (emphases added) (collecting cases). Indeed, Plaintiffs did not even attach as an exhibit many of the paragraphs they now seek to exclude to their Opening.

86.    Plaintiffs, tellingly, do not quote their Opening MIL below to argue the Court should exclude all of Dr. Puglisi's DOE and RDOE opinions. Instead, Plaintiffs incorrectly argue that Curio "knew" or should have been "[]aware" Plaintiffs were seeking to exclude these opinions, after Curio declined to enter a vague stipulation not to present evidence inconsistent with the Court's claim constructions, because Plaintiffs did not clarify the scope or effect of such a stipulation. Even now, Plaintiffs appear to contend it would have extended to both unspecified "DOE and RDOE opinions" and "all" (also unspecified) "non-infringement arguments." In any event, Plaintiffs cite no authority that they satisfied their burden to present ***the Court*** with the

17

evidence sought to be excluded with "*specificity*." *Id.* Plaintiffs' Opening MIL speaks for itself; Plaintiffs only discuss and cite paragraphs 304, 308, and 358 of Dr. Puglisi's Report.]

87.    [**Plaintiffs' Position:**  Plaintiffs object to Defendants' attempt to expand motion *in limine* briefing beyond the Court's limits by inserting a procedurally improper surreply brief into the joint pretrial order. *See* D.I. 25, ¶¶ 16, 17. Defendants' story—that Defendants were unaware that Plaintiffs sought to bar all of Defendants' non-infringement arguments for their Seeker product that are contrary to claim construction, including their DOE and RDOE opinions for Seeker—is false. Before filing the motion, Plaintiffs asked Defendants to stipulate to the full relief sought including specifically that "Defendants are precluded from presenting evidence or argument that is contrary to the Court's claim construction rulings, including but not limited to Defendants' doctrine of equivalents and reverse doctrine of equivalents opinions regarding Seeker, and any evidence or arguments that the asserted claims are limited to a target-specific probe-based approach." Defendants did not agree. Ex. 14 (MIL 1) at Ex. 3; *see also*, Ex. 18 (Defendants' redline of Plaintiffs' proposed stipulation). Thus, having complied with meet and confer obligations and having also exchanged unequivocal statements in writing, Plaintiffs proceeded with this motion, which Defendants knew covered Defendants' DOE and RDOE opinions for Seeker and not simply the quoted examples that were cited in support of the motion.  The opening paragraph of the Plaintiffs' motion *in limine* brief makes the same scope clear, and the remainder of the brief is also clear where Plaintiffs are referring to examples of Dr. Puglisi's opinions but that the entirety of his opinions of DOE and RDOE for Seeker are subject to the motion. *Compare* Ex. 14 (Opening MIL Br.) at ¶ 1 with *id.* at ¶ 3 ("For example, …").]

## XIII.  OTHER MATTERS

### A.    Proposals Regarding Issue Narrowing For Trial

88.    Disputed issues in this trial, including asserted claims and invalidity grounds, should be narrowed so that they can be feasibly tried in a five-day trial. The Parties disagree as to the timing and the scope of the narrowing.

#### 1.    Plaintiffs' Proposal

89.    Plaintiffs propose that on the day following the Court's order on summary judgment, Plaintiffs will identify no more than six (6) asserted claims. Each of the six asserted claims can be asserted against both Seeker and Trekker products. On the day following Plaintiffs' identification of no more than the six claims, Defendants will identify no more than three (3) specific invalidity grounds per asserted claim. Defendants' invalidity ground identification must be specific, e.g., each particular prior art combination counts as one ground, and each written description or enablement argument for one specific element of the claim (e.g., array, poly-T probes, "immobilized in a random pattern," or "biological molecules") counts as one ground.

90.    Defendants' proposal seeks to limit Plaintiffs to only three claims total per accused product.  Such limitation is unduly narrow and unsupported.  Plaintiffs' proposal also requires Defendants to specify their validity challenges with particularity, and proceed with not more than three per asserted claim. Defendants' current invalidity contentions are sprawling: their written description challenges alone include an unreasonable number of grounds as described in this exemplary list:

> 1. using spatially encoding sequences provided on individual features (e.g., beads or spots) of an oligonucleotide array,
>
> 2. array with a plurality of poly-T probes,
>
> 3. array with randomly deposited spatially-encoded probes,

19

4. biological molecule where that biological molecule was a protein, nucleic acid, lipid, carbohydrate, ion, or multicomponent complex of any of these;

5. a binding agent that is configured to interact with a biological molecule of a tissue sample wherein the binding agent associates with a cell nucleus while also interacting with a capture sequence of a single-cell workflow, or any other synthetic molecule,

6. an array of oligonucleotide sequences are photocleaved from the substrate, diffuse into cells of a tissue sample and associate with a cell nucleus, which is then used in conjunction with a single-cell platform for single-cell spatial mapping;

7. how to separate encoded probes that interacted with the biological targets from encoded probes that did not interact with biological targets;

8. how to map the assay results to locations on the biological sample;

9. how the encoded probes could be isolated from the tissue sample such that they could be sequenced using a known approach.

*91.*    Additionally, their enablement challenges include at least **seven theories** (i.e., array, infinite nucleic acid probes, biological molecule/probes, polyT probes, next generation sequencing, algorithm for mapping, and a ground related to the Trekker workflow); and their remaining theories include **two** Section 101 grounds, **three** obviousness combinations or references, and **one** anticipation ground. Given this volume, it would be impracticable for Defendants to present all of these grounds at trial for each of six asserted claims. Without the specificity required by Plaintiffs' proposal, Defendants could bundle numerous distinct arguments under a single "invalidity theory," thereby depriving Plaintiffs of meaningful notice of which grounds Defendants actually intend to pursue at trial. Defendants' argument that there is no precedent for Plaintiffs' counting of invalidity theories is incorrect. *See, e.g.,* Ex. 19, *Natera, Inc. v. CareDx, Inc.*, 1-20-cv-00038, D.I. 208 (D. Del. Apr. 28, 2023) (ordering narrowing of invalidity theories before expert reports, counting individual enablement and written description theories per distinct claim limitation as unique arguments in setting a limit of total arguments across all asserted claims) ("In the Court's view, an assertion that 'claim 1 is not enabled' constitutes a defense, while

20

an assertion that 'claim 1 is not enabled because of limitation x' constitutes an argument in support of that defense that will rely on particular pieces of evidence (evidence that might differ from the evidence that would support an assertion that 'claim 1 is not enabled because of limitation y').").

92.     Plaintiffs propose that Defendants provide the invalidity grounds one day after the asserted claims are identified. Defendants' proposal on the other hand would allow Defendants to withhold their invalidity grounds for four days until the Friday before trial starts. This delay is prejudicial to Plaintiffs' preparation of their validity case. Defendants can fully prepare their non-infringement case without the identification of the asserted claims because Defendants do not have any non-infringement positions that are solely directed to dependent claims. At this stage of the case Defendants should be aware of what they purport to be their strongest invalidity grounds for each claim, but they provide no justification for this unreasonable delay. There is no invalidity summary judgment motion pending and the Court has ruled on Defendants' motion for claim construction clarification. Additionally, many of Defendants' invalidity grounds are only directed to independent claims and are not impacted by Plaintiffs' claim selection because Plaintiffs are only asserting dependent claims.

### 2.     Defendants' Proposal

93.     Defendants propose that on May 11, 2026, Plaintiffs will narrow to six (6) asserted claims. Plaintiffs will identify no more than three (3) claims per set of accused products, specifically no more than three (3) claims for Seeker, and no more than three (3) claims for Trekker. On May 15, 2026, Defendants will identify no more than three (3) invalidity theories per claim, where each of the following counts as a single invalidity theory: (i) failure to satisfy the patent eligibility requirements of 35 U.S.C. § 101, (ii) anticipation under 35 U.S.C. § 102, (iii) obviousness under 35 U.S.C. § 103 based on a particular prior art combination, (iv) lack of enablement under 35 U.S.C. § 112, or (v) lack of written description under 35 U.S.C. § 112.

21

94.     Plaintiffs complain that they would be prejudiced if Defendants have multiple days to narrow in response to Plaintiffs' narrowing, but any prejudice would be the result of Plaintiffs' refusal to narrow earlier. In February, Defendants requested that the Parties start narrowing their cases on March 25, 2026, but Plaintiffs refused.

95.     Plaintiffs' position seeks to unduly restrict Defendants from presenting their invalidity case at trial and there is no precedent for Plaintiffs' proposed limitations on invalidity theories. Plaintiffs' proposal inappropriately divides each of § 101, written description, and enablement into numerous discrete theories, some of which do not even reflect the claim language, before limiting Defendants to only 3 of these thinly sliced discrete theories per claim. For example, Plaintiffs' proposal seeks to count a contention that an individual claim is not enabled as "at least seven" different invalidity theories. In effect, the "specificity" required by Plaintiffs' proposal is designed to hamstring Defendants' ability to present adequate invalidity defenses at trial. Even in the case *Natera, Inc. v. CareDx, Inc.* cited by Plaintiffs, the Court counted § 112 arguments applied to multiple claims as only one argument (out of a total of 36 arguments). Here, Plaintiffs propose that one claim limitation-specific invalidity ground be counted each time it is applied to a different claim.

### B.     Stipulation Regarding Exchanges During Trial

96.     The Parties propose the following procedures to aid trial in the present action:

### 1.     Exchanges of Exhibits to Be Used With Opening Arguments

97.     The Parties shall exchange illustratives, exhibits, and deposition testimony that they intend to use for opening statements no later than 2:00 p.m. on May 17, 2026. For any video or animation to be used, the side seeking to use illustrative exhibits will provide such illustrative exhibits in an electronic form that enables the receiving side to play the video or animation as it is intended to be used in court. If a party intends to present any illustratives or exhibits as enlarged

22

physical print-outs, displays, or posters, the party shall provide notice that it intends to do so and make them available for inspection no later than 3:00 p.m. that same day. The Parties shall exchange any objections by 5:00 p.m. that evening. The Parties shall meet by 6:30 p.m. to resolve any objections. Any objections to their use that cannot be resolved shall be raised with the Court on Monday morning before trial begins.

98.     The Parties will not exchange illustratives for closing statements.

99.     On the days of the opening and closing statements, before the statements begin, the Parties will provide three (3) copies of the illustratives for the opening and closing statements to the Court.

### 2.     Exchange of Exhibits and Illustratives To Be Used With Witnesses During Trial

100.    Two (2) days before the first day of trial (i.e., May 16, 2026), the Parties shall make available for inspection by 12:00 p.m. any physical exhibits to be used at trial, labeled with an exhibit number, and state whether such physical trial exhibits will be admitted into evidence or used as illustratives. For purposes of clarity, such physical trial exhibits or illustratives do not include document exhibits or graphical illustratives, which are subject to the disclosure provisions in this section.

101.    By 7:00 p.m. the night before a party intends to call a witness to testify live, the side offering the witness will identify trial exhibits that the side intends to use for examination and provide color, PDF copies of illustrative exhibits to be used with the witness. For any video or animation to be used, the side seeking to use illustrative exhibits will provide such illustrative exhibits in an electronic form that enables the receiving side to play the video or animation as it is intended to be used in court. If a party intends to present any illustratives or exhibits as enlarged physical print-outs, displays, or posters, the party shall provide notice that it intends to do so and

23

make them available for inspection by 5:00 p.m. the day before the party intends to call the witness with whom such illustratives or exhibits are to be used. The sides need not identify exhibits or illustrative exhibits for use in cross-examination.

102.    By 9:00 p.m. the evening before a party intends to call a witness to testify live, the opposing side will identify any objections to the trial exhibits and illustrative exhibits.

103.    The Parties shall meet and confer on any objections by 9:30 p.m. that evening.

104.    Any unresolved issues will be presented to the Court the morning of the proposed use of the disputed trial exhibits and/or illustrative exhibits (including exhibits and illustratives used for the opening statements). The objecting party shall email the Court and opposing counsel by 7:00 am that morning, a brief description of the issue, which will include each party's position stated in no more than three sentences, and the objected-to exhibits and illustratives (attached as PDFs in the email). The objecting party will also provide two hard copies of the objected-to exhibits and illustratives to the Court that morning when the Party arrives in the courtroom.

105.    The notice provisions in this section do not apply to the illustrative exhibits created in the courtroom, or to the enlargement, highlighting, ballooning, or excerpting of trial exhibits created in the courtroom.[1] For illustrative exhibits previously used during trial, notice must still be provided before the illustrative exhibit is used with a later witness on direct examination, but the parties will work to address objections if notice cannot be given in accordance with the notice provisions in this section (e.g., if a new illustrative exhibit is created the same day it is intended for use with a later witness, the notice will be provided promptly after the illustrative exhibit is created in court and before the witness takes the stand).

---

[1] This does not refer to the enlargement, highlighting, ballooning, or excerpting of trial exhibits that are pre-made, and for example, loaded into trial director.  Such illustrative exhibits have to be disclosed under the provisions above.

24

### 3.    Identification of Order of Witnesses

106.    Each side will identify all live trial witnesses in the order that the side expects to call them by 7:00 p.m. two (2) calendar days before the witness will be called (e.g., notice must be given by 7:00 p.m. on Monday for witnesses to be called on Wednesday).

107.    A side shall provide reasonable notice if for any reason it does not intend to call a witness that it had previously indicated would appear live as a "will call" witness. In that event, the other side may designate and offer deposition testimony from such witness (subject to the Federal Rules of Evidence). Counter-designations may also be provided. If such designations cannot be completed by the times agreed to below, the sides shall work in good faith to set deadlines for the disclosure of such designations, counter-designations, and objections.

### 4.    Presentation of Deposition Designations

108.    All counter-designations will be played, unless parties agree the transcript will be read, together with the affirmative designations in the order that the witness provided the testimony.

109.    The side offering the witness will prepare the video clips/transcript to be played/read presenting all portions of the designated testimony in sequence. To that end, the following procedure will apply.

110.    By 12:00 p.m. three calendar days before a witness is called by deposition, the side offering the witness will identify those portions of the transcript that will be presented to the jury and any exhibits that will be admitted through the testimony.

111.    By 6:00 p.m. three calendar days before the witness is called by deposition, the responsive side will identify any objections and counter-designate portions of the transcript that will be presented to the jury and identify any objections to the testimony.

112.    By 8:00 p.m. three calendar days before the witness is called by deposition, the side offering the witness will identify objections to the counter-designations.

25

113.    The Parties shall meet and confer on any objections by 9:30 p.m. three calendar days before the witness is called by deposition.

114.    If there are objections that remain to be resolved, the party calling the witness by deposition shall, no later than two (2) calendar days before the witness is to be called at trial, submit, on behalf of all Parties: (i) A copy of the entire deposition testimony of the witness at issue, clearly highlighting the designations, counter-designations, and pending objections; and (ii) a cover letter clearly identifying the pending objections as well as a brief indication (i.e., no more than one sentence per objection) of the basis for the objection and the offering party's response to it. Failure to comply with these procedures, absent an agreement by the Parties and approval by the Court, will result in waiver of the use of the deposition testimony or waiver of objection to the use of the deposition testimony.

115.    By 5:00 p.m. the evening before the witness is called by deposition, the side offering the witness will provide a copy of the video or transcript containing all Parties' designations, consistent with any objections resolved by the Court. All irrelevant and redundant material, including colloquy between counsel and objections, will be eliminated when the deposition is read or viewed at trial.

116.    The Parties shall provide the Court with a per-side time breakdown of the testimony presented to the jury by deposition designations.

117.    When the witness is called to testify by deposition at trial, the party calling the witness shall provide the Court with two (2) copies of the transcript of the designations and counter-designations that will be played. An additional copy shall be provided to the court reporter. The party calling the witness is allowed to make a short transition statement before the witness is called to testify by deposition. The transition statement is limited to stating the name and position

26

of the witness. The Parties will be charged for all time that elapses from the time the witness is called until the next witness is called, according to the proportions to be provided by the Parties.

118.    The above procedures regarding deposition do not apply to portions of deposition transcripts and/or video used for impeachment or cross-examination of a witness.

### 5.    Exchange of Uncontested Facts, Interrogatory Responses and Responses to Requests for Admissions to be Read During Trial

119.    Any party may read any uncontested facts listed in Section IV, interrogatory response served by the other side or response to a request for admission served by the other side to the jury or the Court, and will be charged for the time used to do so.

120.    By 7:00 p.m. one (1) calendar day prior to each day of trial, the offering party will provide by email a list of uncontested facts, responses to requests for admission, or interrogatory responses it intends to read into the record, if any. For avoidance of doubt, any requests for admission or interrogatories intended to be read into the record shall be listed on the offering party's trial exhibit list. To the extent the offering party does not intend to read the response to a request for admission or an interrogatory response into the record in its entirety, it must specifically identify the part(s) it intends to read into the record.  Any objections to a request for admission or interrogatory response to be read into the record shall be provided no later than 9:00 p.m. one (1) calendar day before the intended use, including objections that the response to a request for admission or an interrogatory response is not being read into the record in its entirety. The Parties shall then meet and confer on the objections by 9:30 p.m. If good faith efforts to resolve the objections fail, the party offering the material shall bring its objections to the Court's attention in accordance with the procedures set forth above with respect to trial exhibits. Any interrogatory response or response to a request for admission that is read must omit objections. This procedure

does not apply to the use of uncontested facts, interrogatory responses, and responses to requests for admission during a witness examination. *See* § XIII(B)(2).

### 6.    Outside Attorneys' Eyes Only Information

121.    Any party may request that particular exhibits marked "HIGHLY CONFIDENTIAL — OUTSIDE ATTORNEYS' EYES ONLY INFORMATION" under the Protective Order entered in this case be displayed on monitors visible to the Court, the jury, and the Parties, but not otherwise be displayed in the courtroom during trial and not be filed publicly. Such requests should be made the morning before the exhibit will be used, and must be supported by good cause.

### C.    Stipulations Regarding Jury Procedures

122.    The jurors shall be permitted to take handwritten notes on paper provided in a three-ring binder ("juror notebook") during the trial presentations. The three-ring binder should contain a copy of all the Asserted Patents, the Court's claim constructions, photos of all witnesses, and blank sheets for juror notes. The jurors are permitted to bring these juror notebooks into the deliberation room.

123.    Upon the end of all parties' presentation of evidence, the Parties will compile one (1) set of binders for the jury containing copies of all trial exhibits in evidence. This set of binders shall be distributed to the jurors before they commence deliberation.

### D.    Motions for Judgment As a Matter of Law

124.    The Parties propose that any motions for judgment as a matter of law may be made orally or in writing, immediately at an appropriate point during trial before the jury begins deliberations, and that the jury should be out of the courtroom when such motions are made.

### E.      Electronic Witness Binders

125.    By 7:00 am on each trial day, the Parties shall email the Court share-file links of electronic witness binders for witnesses that each party intends to call or cross-examine on that day live or by deposition. Each electronic witness binder shall be a single folder labeled with the witness name and examination type (e.g., John Doe – Direct, Jane Doe – Cross, Bill John – Deposition, etc.), and shall include exhibits and illustratives used for that witness. If the share-file link includes any cross-examination binders, the party will not include the opposing counsel in the email to the Court.

### F.      Set-up of Electronic Equipment

126.    The Parties request that the Court grant them access to the Courtroom on Friday, May 15, 2026, the business day before trial begins, to allow them to set up electronic and computer devices to be used during the trial.

**SO ORDERED** this _____ day of _____, 2026.

_____
THE HONORABLE MARYELLEN NOREIKA
UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 24, 2026, copies of the foregoing were

served upon the following parties as indicated below:

| | |
|---|---|
| Brian E. Farnan (Bar No. 4089)<br>Michael J. Farnan (Bar No. 5165)<br>FARNAN LLP<br>919 N. Market Street, 12th Floor<br>Wilmington, DE 19801<br><br>Kevin B. Collins<br>Jeffrey B. Elikan<br>Eric R. Sonnenschein<br>Douglas A. Behrens<br>Andrew D. Lazerow<br>Matthew Kudzin<br>Priscilla Dodson<br>Laura M. Martin<br>Allyson Corigliano<br>Robert T. McMullen<br>Adam Smith<br>COVINGTON & BURLING LLP<br>One CityCenter<br>850 Tenth Street, NW<br>Washington, DC 20001-4956<br><br>Madison Arent<br>COVINGTON & BURLING LLP<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018-1405<br>Telephone: (212) 841-1000<br><br>Ian M. Hurst<br>Covington & Burling LLP<br>1999 Avenue of the Stars<br>Los Angeles, CA 90067-4643<br>Telephone: (424) 332-4800<br><br>Yiye Fu<br>Covington & Burling LLP<br>3000 El Camino Real<br>5 Palo Alto Square, 10th Floor<br>Palo Alto, CA 94306-2112 | **Via E-mail**<br>bfarnan@farnanlaw.com<br>mfarnan@farnanlaw.com<br>Cov-Curio-10x@cov.com |

| **Counsel for Defendants** | |
|---|---|

/s/ Alexandra M. Ewing
Alexandra M. Ewing (#6407)